**Case No. 21-15355**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

RENALDO NAVARRO,

*Plaintiff-Appellant,*

v.

MENZIES AVIATION, INC., d/b/a Menzies,

*Defendant-Appellee.*

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*Case No. 3:19-cv-08157-VC · The Honorable Vince Chhabria, District Judge*

## APPELLANT'S OPENING BRIEF

ARLO G. URIARTE
LIBERATION LAW GROUP
2760 Mission Street
San Francisco, California 94110
(415) 695-1000 Telephone
(415) 695-1006 Facsimile
arlo@liberationlawgroup.com

*Attorneys for Appellant,*
*Renaldo Navarro*

 COUNSEL PRESS · (213) 680-2300     PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ v

JURISDICTIONAL STATEMENT ............................................................ 1

INTRODUCTION .................................................................................... 2

ISSUES TO BE DECIDED ....................................................................... 4

STATEMENT OF THE CASE .................................................................. 6

    I.     RELEVANT FACTS – DISCRIMINATION &
           RETALIATION ......................................................................... 6

         A.   Navarro Was a Skilled and Experienced Supervisor
            Recognized for Maintaining a Harmonious Work
            Environment Among Fuelers in Furtherance of Menzies'
            Business Objectives ..................................................... 6

         B.   Menzies Distributed Neither the Employment Handbooks
            nor the Code of Conduct to the Fuelers or the Fueling
            Supervisors ................................................................... 7

         C.   Menzies' Decision to Promote Andrew Dodge to Fueling
            Supervisor Demonstrates Menzies's Preferential
            Treatment for A White Supervisor ............................... 8

         D.   Between 2017 and 2018 Dodge Repeatedly Violated
            Menzies's Policies and California Law Resulting in
            Numerous Complaints to Navarro, the Union, and
            Menzies' Management .................................................. 9

            1.   Dodge Repeatedly Slept on the Job and Caused
                 Break Violations ............................................... 9

            2.   Menzies Received Complaints of Harassment and
                 Abuse By Dodge ............................................... 10

            3.   Navarro Escalated Complaints About Dodge,
                 Including Harassment, to Management ......................... 12

E.      Menzies Ignored Complaints of Dodge's Abuse of Power, Harassment, and Denying Meal Breaks. As A Result, Fuelers Authored a Petition to Add Dodge's Unchecked Misconduct and Unprofessional Behavior.............13

F.      Dodge Precipitates the Investigation and is Told to Submit a Statement about Navarro ...........................................14

G.     Menzies Suspends Navarro Immediately After Submitting The Petition for Supporting the Fuelers in Their Complaints Against Dodge .............................................14

H.     Menzies' Immediate Focus on Navarro Demonstrates a Lack of Intent to Discover the Underlying Intent of the Petition Leads to A Dishonest Investigation ...........................15

I.       Menzies Terminated Navarro for Purported Harassment of Fuelers. Raul Vargas' Knee Jerk Reaction to Terminate Navarro Was Wholly Retaliatory to Protect Dodge, Push the Fuelers Back and Teach the Filipino Fuelers a Lesson.  An Examination of His Actions Illicit This Conclusion ......................................................................17

J.       As a Result of Menzies' Ongoing Failure to Hold Dodge Accountable, Fuelers Submitted a Second Petition Concerning the Same Issues. At the Time, Navarro was Uninvolved and Terminated from the Workplace ...................18

K.     Termination of Navarro is a Tragedy - A lifelong employee Who Had Menzies Best Interest - Kicked Out for Furthering a Harmonious Workplace That Should not include Intimidation nor Harassment.  Navarro has not recovered from the Injustice ......................................................19

II.     PROCEDURAL BACKGROUND & DISCOVERY .........................20

A.     Navarro's Complaint Provides Sufficient Notice to Menzies that Navarro was complaining about being Retaliated Against Because of His Race & National Origin ........................................................................20

B.    Navarro's Initial Disclosures Identifies Vasquez and Canlas as Potential Witnesses and Contains Documents Related to Vasquez's Knowledge of Navarro's Race and National Origin Allegations ......................................................23

C.    Discovery Conducted By the Parties:  One Deposition By Menzies; Two Special Interrogatories on the Nature of the Discrimination Claim; Navarro deposed four witnesses and consistently inquired regarding discrimination of other Filipino Fuelers ................................24

    1.    Menzies Conducts One Deposition Only ......................25

    2.    Deposition of Menzies' Four Witnesses.........................26

SUMMARY OF THE ARGUMENT ....................................................28

STANDARD OF REVIEW ..................................................................30

ARGUMENT .......................................................................................31

I.    THE DISTRICT COURT ERRED BY EXCLUDING SOME OF THE EVIDENCE PROFERRED BY NAVARRO IN ITS OPPOSITION TO SUMMARY JUDGMENT MOTION.................31

    A.    Navarro's Complaint Complied with the Notice Pleading Requirement ............................................................35

    B.    Navarro's Discovery Provided Additional Notice of His Claims .....................................................................38

    C.    The Evidence Submitted in Opposition to Summary Judgment Was Not New ...........................................39

II.    THERE ARE TRIABLE ISSUES OF MATERIAL FACT – NAVARRO SHOULD BE ALLOWED TO GO TO TRIAL ON HIS CLAIMS.................................................................40

    A.    Navarro Establishes a *Prima Facie* Case of Discrimination Because Dodge is a Similarly Situated Non-Filipino Supervisor Who Was Treated More Favorably ................................................................40

B.     Menzies' Inadequate Investigation Was a Deficient Basis To Form A Good-Faith Belief that Navarro Engaged in Harassment ............................................................................44

C.     Navarro Can Establish Substantial Evidence of Pretext...........48

D.     Navarro Establishes a *Prima Facie* Case of Retaliation Because He Engaged in Protected Activity By Lending Support and Repeatedly Notifying Management of Filipino Fuelers Complaints of Dodge's Harassment Leading Menzies To Silence Him By Terminating His Employment ...............................................................................49

      1.     Navarro's Involvement With the Petition Is The Culmination of A Several Reports Made By Navarro And Other Filipino Fuelers Regarding Dodge's Unlawful Harassment And Constitutes Protected Activity ...........................................................50

      2.     Navarro Is Protected Under FEHA Retaliation Because He Was a Prospective Witness to Dodge's Unlawful Harassment And Menzies' Failure to Take Corrective Action ..................................................52

E.     Navarro Established A Claim of Wrongful Termination in Violation of Public Policy Because Menzies Discharged Navarro For Challenging Unlawful Working Conditions ....................................................................................53

F.     Navarro's IIED Claim Is An Exception To Exclusive Remedy Rule ...........................................................................55

      1.     Menzies Engaged In A Campaign to Terminate Navarro and Retaliate – Misconduct That Exceeded The Normal Risks Of The Employment Relationship ...................................................................56

III.     IT WAS ABUSE OF DISCRETION FOR THE DISTRICT COURT NOT TO REOPEN DISCOVERY .......................................57

CONCLUSION ................................................................................................ 60

CERTIFICATE OF COMPLIANCE .............................................................. 61

STATEMENT OF RELATED CASES ............................................................ 62

CERTIFICATE OF SERVICE ....................................................................... 63

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)....................................................................30

*Annett v. Univ. of Kansas,*
93 F. Supp. 2d 1135 (D. Kan. 2000) ...........................................46

*Austin v. Univ. of Oregon,*
925 F.3d 1133 (9th Cir. 2019) ...............................................35, 36

*Bagdadi v. Nazar,*
84 F.3d 1194 (9th Cir. 1996) .......................................................30

*Bodett v. CoxCom, Inc.,*
366 F.3d 736 (9th Cir.2004) ........................................................41

*Castro-Ramirez v. Dependable Highway Express, Inc.,*
2 Cal.App.5th 1028 (2016) ..........................................................52

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)....................................................................40

*Charles J. Vacanti, M.D., Inc. v. SCIF,*
(2001) 14 P.3d 234 .....................................................................56

*City of Moorpark v. Superior Court of Ventura County (Dillon),*
(1998) 18 Cal.4th 1143 ...............................................................56

*Cole v. Fair Oaks Fire Protection Dist.,*
43 Cal.3d 148 (1987) ..................................................................57

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271 (9th Cir. 2000) .....................................................37

*Costa v. Desert Palace, Inc.,*
299 F.3d 838 (9th Cir. 2002) (en banc), aff'd,
539 U.S. 90 (2003)......................................................................35

*Flait v. North American Watch Corp.*,
    3 Cal.App.4th 467 (1992) ................................................................51

*Gantt v Sentry Insurance*,
    (1992)1 Cal.4th 1083 ....................................................................54

*Garcia-Paz v. Swift Textiles, Inc.,*
    873 F. Supp. 547 (D. Kan. 1995)....................................................50

*Garrett v. San Francisco*
    (9th Cir. 1987) 818 F2d 1515 ........................................................59

*Green v. Ralee Engineering Co.*,
    (1998) 19 Cal.4th 66 ......................................................................54

*Gupta v. Trustees of California State Univ.*,
    40 Cal.App.5th 510 (2019) ............................................................42

*Harris v. City of Santa Monica,*
    56 Cal.4th 203 (2013) ....................................................................48

*Hawn v. Executive Jet Management, Inc.*,
    615 F.3d 1151 (9th Cir.2010) ........................................................41

*Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*,
    966 F. Supp. 2d 971 (N.D. Cal. 2013)..............................41, 47, 48

*Lemos v. Cty. of Sonoma,*
    5 F.4th 979 (9th Cir. 2021) ............................................................30

*Light v. Department of Parks and Recreation,*
    14 Cal.App.5th 75 (2017) ..............................................................57

*McDonald v. Santa Fe Trail Transp. Co.*,
    427 U.S. 273 (1976)......................................................................36

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)..............................................35, 36, 40, 42

*Miller v. Dep't of Corr.*,
    36 Cal.4th 446 (2005) ....................................................................51

*Mixon v. Fair Employment and Housing Com.*,
  92 Cal.App.3d, 1306 (1987) .......................................................48

*Narayan v. EGL, Inc.*,
  616 F.3d 895 (9th Cir. 2010) .....................................................30

*Nazir v. United Airlines, Inc.*,
  178 Cal.App.4th 243 (2009) .......................................................49

*Nelson v. City of Davis*,
  571 F.3d 924 (9th Cir. 2009) .....................................................30

*Nicholson v. Hyannis Air Serv., Inc.*,
  580 F.3d 1116 (9th Cir.2009) .....................................................41

*Pickern v. Pier 1* Imports (U.S.), Inc.,
  457 F.3d 963 (9th Cir. 2006) .....................................................30

*Reeves v. Safeway Stores*,
  121 Cal.App.4th 95 (2004) .........................................................49

*Rivera-Torres v. Rey-Hernandez*,
  502 F.3d 7 (1st Cir. 2007)..........................................................58

*Rope v. Auto-Chlor System of Washington, Inc.*,
  (2013) 220 Cal.App.4th 635 .......................................................55

*Sandell v. Taylor-Listug, Inc.*,
  (2010) 188 Cal.App.4th 297 ......................................................41

*Shoemaker v. Myers,*
  (1990) 52 Cal.3d 1 ..............................................................55, 56

*Steele v. Youthful Offender Parole Bd.*,
  162 Cal.App.4th 1241 (2008)...............................................52, 53

*Sundby v. Marquee Funding Grp., Inc.*,
  No. 19-CV-00390-GPC-AHG, 2020 WL 1866097
  (S.D. Cal. Apr. 14, 2020).........................................................58

*Swierkiewicz v. Sorema N. A.,*
  534 U.S. 506 (2002).............................................................35, 36

*Tameny v. Atlantic Richfield Co.,*
    (1980) 27 Cal.3d 167 ..........................................................................54

*Texas Partners v. Conrock Co.,*
    (9th Cir. 1982) 685 F2d 1116 ...........................................................58

*United States v. Kitsap Physicians Serv.,*
    314 F.3d 995 (9th Cir.2002) ..............................................................31

*Updike v. Multnomah Cty.,*
    870 F.3d 939 (9th Cir. 2017) ............................................................36

*Vasquez v. County of Los Angeles,*
    349 F.3d 634 (9th Cir.2003) ..............................................................41

*Vasquez v. Franklin Management Real Estate Fund, Inc.,*
    (2013) 222 Cal.App.4th 819 ..............................................................55

*Wasco Products, Inc. v. Southwall Technologies, Inc.,*
    435 F.3d 989 (9th Cir. 2006) ............................................................39

*Wirtz v. Kansas Farm Bureau Services, Inc.,*
    (D.Kan.2003) 274 F.Supp.2d 1198.....................................................51

*Yanowitz v. L'Oreal USA, Inc.,*
    36 Cal.4th 1028 (2005)......................................................49, 50, 51

*Yau v. Allen,*
    (2014) 229 Cal.App.4th 144 ..............................................................54

*Young v. Libbey-Owens Ford Co.,*
    (1985) 168 Cal.App.3d 1037 .............................................................56

## COURT RULES

Federal Rules of Appellate Procedure 4(a)(1) ........................................................... 1

Federal Rules of Civil Procedure 8 ........................................................... 36

Federal Rules of Civil Procedure 56 ........................................................... 31, 40

Federal Rules of Civil Procedure 56(e) ........................................................... 40

Federal Rules of Evidence 803 ........................................................... 46

Federal Rules of Evidence 803(6)(B) ........................................................... 46

## STATUTES

28 U.S.C. § 1291 ........................................................... 1

# JURISDICTIONAL STATEMENT

The Jurisdiction of the court is based on 28 U.S.C. § 1291. This is an appeal from a final order granting summary judgment 1-ER-3. The appellant originally filed a state court employment-related case that was removed under diversity jurisdiction. The case involves the California Fair Employment and Housing Act as well as related tort causes of action. On February 8, 2021, the District Court entered final judgment disposing of all of Appellant's claims.1-ER-2. Appellant timely filed his notice of appeal. 4-ER-645. F.R.A.P. 4(a)(1).

## INTRODUCTION

The District Court denied Appellant Renaldo Navarro his day in Court. Menzies was granted Summary Judgment on all of Navarro's claims. To reach that result, the District Court refused to consider evidence that Navarro provided in his opposition to Summary Judgment. Even without the disputed evidence, genuine issues of material fact exist at least to some of his claims, but the District Court dismissed those anyway. The District Court abused its discretion when it denied to exercise its discretion to reopen discovery so that the matter could be decided on its merits.

As a loyal and effective Fueling Supervisor for over thirteen years, Navarro initially lent a helping hand to an inexperienced white supervisor named Andrew Dodge. However, in 2017, Navarro began to receive reports from Filipino Fuelers that Dodge was an ineffective supervisor. His ineptitude resulted in missed breaks and overworked fuelers. Dodge's conduct included sleeping on the job and worsening to discrimination or unprofessional behavior. Dictated by reason and fidelity to the company, Navarro together with other Fuelers reported the abuse to management to no avail.

Over a period of time, the fuelers became more verbal in their concern for Dodge's performance failures but, in return, Dodge became more intent on wielding power over a majority Filipino workforce through threats and intimidation—such as

shining bright lights from his truck at Fuelers working on the tarmac and even engaging into physical confrontation.

Faithful to his Fuelers, while concerned, at the same time, with the impact that Dodge's attitude and mismanagement had on Menzies business objective, Navarro spoke to Dodge and the upper management about the complaints. Sadly, Menzies management minimized the complaints and turned a blind eye instead by effectively condoning Dodge's discriminatory behaviors which only further escalated the problem. In the end, as Menzies ignored the complaints, Navarro's involvement as a supervisor became more vital for the Fuelers.

The Fuelers initiated a petition to implore Menzies management—and to find support, they asked Navarro to sign and submit the petition to management which the latter did. Menzies, in response, terminated Navarro based on a pre-determined investigation with no legitimate reason. Instead, the decision reflects discriminatory and retaliatory animus designed to push back on the need to properly investigate the petition made by the Filipino fuelers.  In short, Menzies used Navarro's termination as an example and intimidated the Fuelers from further escalating their concerns. So far, Menzies has been successful.  Their two petitions have been ignored. Menzies preference to protect the Caucasian supervisor despite their valid concerns sent a clear message to the predominantly Filipino and Asian fuelers, that if they want to continue working as fuelers they must accept the disparate treatment.

## ISSUES TO BE DECIDED

1.      Did the District Court Err in Not Considering the Declarations Provided by Appellant Navarro in Opposition to Summary Judgment Motion?

2.      Are there genuine issues of material facts supporting Appellant Navarro's claim that he is similarly situated to supervisor Andrew Dodge?

3.      Whether genuine issues of material fact exist regarding whether Menzies' investigation of Appellant Navarro was based on faulty assumptions, inadequate and therefore done in bad faith designed only to retaliate and terminate Navarro?

4.      Whether Appellant has established by substantial evidence that genuine issues of material facts exist regarding the pretext offered by Menzies?

5.      Whether there are genuine issues of material facts from which a jury could find that Navarro's termination amounts to tortious retaliation for raising concerns against Dodge's failure to provide meal breaks at a minimum, at worst, for raising and assisting in bringing forth the fueler's discrimination concerns?

6.      Whether the events that led to Navarro's termination "shocks the conscience", wrongful and therefore not barred by the Workers Compensation exclusive remedy rule?

7.     If the District Court properly found new facts and allegations, was it abuse of discretion for the District Court not to either reopen discovery or deny summary judgment without prejudice and give Menzies the option to request to reopen discovery or proceed to trial.

## STATEMENT OF THE CASE

## I.    RELEVANT FACTS – DISCRIMINATION & RETALIATION

### A.    Navarro Was a Skilled and Experienced Supervisor Recognized for Maintaining a Harmonious Work Environment Among Fuelers in Furtherance of Menzies' Business Objectives

Plaintiff Renaldo Navarro started working as Fueler for ASIG Aviation in 2005. ASIG is the predecessor company Menzies acquired. Navarro's Excerpt of Record 3-ER-504. During his employment, Appellant was promoted as a Fueling Supervisor and assigned additional job responsibilities. *Id*. As a supervisor, Navarro was responsible for managing Fueler's workload by overseeing fueling operation, assigning Fuelers to service flights and scheduling take their breaks. 3-ER-414-415, 506, 4-ER-578.

Fueling Supervisors are responsible for communicating with airline representatives and overseeing the safety of the operation. 4-ER-579. Critically, they are responsible for ensuring that Fuelers are working safely, for resolving any safety concerns raised by Fuelers, for ensuring that they follow procedures, and for addressing any equipment problems or any other issues raised. 4-ER-580. Additionally, Fueling Supervisors are also responsible for giving fuelers breaks and meal periods in accordance with the labor laws and the CBA. 2-ER-262. Central to Fueling Supervisors job responsibilities is managing fuelers' daily airline fueling

shift assignments and figuring out the necessary equipment they need to ensure timely airplane fueling to avoid flight delays. 4-ER-582-584.

Navarro was a reputable, well-respected, and even-handed supervisor. In fact, Union member Fuelers often turned to the Navarro to address workplace issues and to act as liaison between Union members and management. 3-ER-478, 491. Also, Navarro was appreciated for his work in keeping flight schedules and maintaining harmonious work environment for Fuelers. 3-ER-486, 495. Even Andrew Dodge acknowledged Navarro to be "a great supervisor"—in his description of Navarro, Dodge said, "There are no questions asked. He was there for a long time, and, you know, he's–he did his job." 3-ER-391.

Treating his job with respect and pride, Navarro said that his self-perception is that of a professional who provides vital services for the good of the airline industry and this country that he loves. 3-ER-472.

### B. Menzies Distributed Neither the Employment Handbooks nor the Code of Conduct to the Fuelers or the Fueling Supervisors

Menzies alleged that the Code of Conduct and the Employment Handbook should have alerted Navarro of prohibited intimidation, abuse, and harassment, which justifies his termination. 3-ER-413-433.

However, at the time Menzies took over ASIG operations at San Francisco International Airport ("SFO") in February 2017, Menzies revised its employment handbook and did not provide the Fuelers and Fueling Supervisors any copies and

proper training. 3-ER-298, 481, 487, 491, 473. In addition, as confirmed by HR Manager Tracy Aguilera, it was the standard practice to review in the Human Resources office the newly implemented Employment Handbook, including the Code of Conduct section, with each employee, and thereafter have every employee sign an acknowledgment form. 3-ER-298-300. However, Aguilera could neither confirm whether Navarro was informed of the newly implemented Code of Conduct nor verify whether Navarro signed an acknowledgment form to authenticate his receipt of the Employee Handbook and Code of Conduct. Aguilera 3-ER-300.

Consistently, Menzies production of documents to Navarro did not contain Navarro's signature acknowledging his receipt. In fact, all acknowledgment forms produced by the Menzies' in Navarro's personnel file have a blank signature line. 3-ER-469.

### C. Menzies' Decision to Promote Andrew Dodge to Fueling Supervisor Demonstrates Menzies's Preferential Treatment for A White Supervisor

Hired in February 2016, Andrew Dodge was surprisingly promoted to Fueling Supervisor within one year by Menzies' General Manager Renil Lal. 3-ER-379-380. Ironically, Dodge had less seniority than many of the Filipino fuelers, who were regarded as more qualified. 3-ER-485.

According to Canlas and Navarro, at least three other Fuelers were better equipped to be supervisors than Dodge. *Id.,* 3-ER-473. Despite that, Navarro and

other Fuelers willingly assisted Dodge to succeed as a Fueling Supervisor during the latter's first months as Fueling Supervisor. 3-ER-472.

**D. Between 2017 and 2018 Dodge Repeatedly Violated Menzies's Policies and California Law Resulting in Numerous Complaints to Navarro, the Union, and Menzies' Management**

Navarro, together with the Union Steward, and the Fuelers repeatedly communicated their complaints about Dodge to Menzies' management. 3-ER-472. Navarro testified that around a year before the petition, he reported the Fuelers' complaints regarding Dodge to Menzies' management, including Renil Lal, John Qually, Nicco Bernadino, and Tracy Aguilera. 2-ER-215-216.

**1. Dodge Repeatedly Slept on the Job and Caused Break Violations**

Manager Qually testified that Plaintiff Navarro did make a report about Dodge sleeping on the job and that "it was brought to the higher ups" including Renil Lal. 4-ER-585. In fact, multiple witnesses, including Fuelers and airline operators, noticed Dodge sleeping during his shift. On one occasion, Navarro received complaints from the Fuelers that Dodge was seen sleeping in his truck on the tarmac—an act that evidently creates a serious safety concern. This incident was captured in photos submitted to Menzies. 4-ER-592.

Likewise, Dodge also caused flight delays that affected the operation and mismanaged shift schedules, resulting in the Fuelers missing meal breaks. 3-ER-485, 486; 3-ER-491, 495, 499. That is despite the fact that Dodge was aware that

his job as a supervisor requires him to provide meal and rest breaks to his employees in accordance with California and federal law. 3-ER-384-384.

Appropriately, the Union raised these complaints to the management. 3-ER-479. Multiple fuelers also reported Dodge to Navarro along with photos of Dodge's conduct.

### 2. Menzies Received Complaints of Harassment and Abuse By Dodge

While Menzies denies receiving any complaints regarding Dodge's harassing or abusive conduct as a supervisor, this assertion is contradicted by the evidentiary record. Navarro alleges in the Complaint that he complained to Menzies about how they displayed favoritism for Dodge over Filipino fueling supervisors. Complaint ¶ 28, 4-ER-627. The Complaint further states that Navarro complained several times about favoritism to Defendant, but Menzies never instituted "corrective action". *Id*. at ¶ 30.

Employees and Navarro testified that Dodge engaged in abusive, hostile, and threatening conduct toward the Fuelers. In addition to Navarro's complaints, the Fuelers made multiple complaints to the Union regarding Dodge. 3-ER-478. Shop Steward Rafael Vasquez declared that,

> Before August 2018, between 2017 and 2018, the Fuelers made multiple complaints to the Union regarding an abusive supervisor named Andrew Dodge. The complaints included verbal abuse, threats, and even physical confrontations with some of the fuelers. These complaints were communicated and discussed to management through

scheduled meetings every week to two weeks for over a year. The shop stewards would communicate these to management attendees: Renil Lal, John Qually, Nicco Bernadino, and Raul Vargas, who would often attend. They knew that especially the Filipino fuelers were being harassed and discriminated by Dodge.

*Id.* ¶ 3.

Dodge was promoted to a position of power when Trump, a leader who was himself vocal in matters of preferential treatment towards one's own race, was elected as President in 2016/2017. Interestingly from that point on, Dodge engaged in a "really strange behavior towards the Filipino Fuelers." 3-ER-478.

As Shop Steward Rafael Vasquez explained, Fuelers complained that Dodge flashed the lights from the company truck on Filipino Fuelers, acting as if he was an ICE Agent. 3-ER-478. Likewise, Canlas in his testimony provided an example that Dodge would use his flashlight to watch over Filipino Fuelers. 3-ER-485, 3-ER-472. Canlas added that the Fuelers believed that Dodge was subjecting them to discrimination. 3-ER-485.

Also, Mark Ilagan reported a specific incident toward Dodge where he believed that Dodge harassed him for the use of a company truck. He went on to say that this abuse of authority by Dodge was often targeted toward Filipino Fuelers. 3-ER-497-499, 3-ER-472-473. Accordingly, Ilagan reported this to Navarro, who was then able to diffuse the situation and reported it to management. 3-ER-473.

Further, Vasquez confirmed in a written letter dated November 18, 2018, that "I have spoken to the Menzies' Aviation Fueling Director Raul Vargas on three

separate occasions regarding Andrew Dodge, who continuously abuse his authority and at times harass Fuelers under his charge." 3-ER-459. Aguilera testified that Dodge never received a reprimand of any kind. 2-ER-110.

### 3. Navarro Escalated Complaints About Dodge, Including Harassment, to Management

Navarro, as required by his duties as a supervisor, escalated complaints that the Fuelers brought to him regarding Dodge's harassment and informed Renil Lal, John Qually, Nicco Bernardino, Tracy Aguilera. 2-ER-215-217. 3-ER-473.

Despite initial support from the Fuelers and Navarro in Dodge's early years as supervisor, Dodge's ineptitude lead to a fast deterioration of working conditions for Fuelers. In fact, Qually testified that he knew and acknowledged the complaints made against Dodge on the break violations and acknowledged that the Fuelers were shorthanded and overworked with too many flights. 2-ER-283-284.

Menzies' denial on received harassment complaints from Navarro are not supported by available evidence. Union Steward Rafael Vasquez declared that between August and November 2018, he spoke with Raul Vargas about Dodge's discrimination and harassment of fuelers. 3-ER-481. Mr. Vargas indicated that reports of harassment are important—however conveniently ignored when it came to Dodge. 3-ER-340. Despite the petition from the fuelers, the underlying concerns were never investigated. 3-ER-340-344. HR department had no issues with Dodge despite the petition. 2-ER-106. Dodge says he never got investigated on the

petitions. 3-ER-397. Dodge does admit that Navarro brought up complaints by fuelers against him regarding breaks. 3-ER-392-393.

**E.     Menzies Ignored Complaints of Dodge's Abuse of Power, Harassment, and Denying Meal Breaks. As A Result, Fuelers Authored a Petition to Add Dodge's Unchecked Misconduct and Unprofessional Behavior**

In response to the escalating problems and ongoing violations of Menzies' policies under Dodge's supervision, the Fuelers initiated a petition and gathered signatures from Fuelers and—to intently gain support—from two Fueling Supervisors, including Navarro, in their further effort to convince Menzies' management to hold Dodge equally accountable to workplace policies and California labor laws. 3-ER-438.

To counter Menzies' representation of the facts, Navarro did not initiate or author the petition. *Id.*; 3-ER-507-509. Notably, it was Fueler Jezen Canlas who initiated the petition and gathered signatures, 3-ER-485; 3-ER-507-509; 3-ER-479, and who eventually requested Navarro to affix his signature in the petition. 3-ER-508. Navarro, in addition, did not ask anybody to sign the petition. 3-ER-486; 2-ER-215.

The other Fueling Supervisor who signed the petition was July Macapagal, 3-ER-491, but interestingly, he was never placed by Menzies under any sort of investigation. *Id.*

**F.  Dodge Precipitates the Investigation and is Told to Submit a Statement about Navarro**

Counter to Menzies' assertion, Dodge did not testify that he received reports from the Fuelers ***that Navarro*** was pressuring them to sign a petition, but merely heard that a petition against him was going around. 3-ER-539. On the contrary, Dodge testified that he never saw the petition. 3-ER-540.

On August 16, 2018, at the request of management, Dodge wrote a statement complaining about Navarro and mentioned that Navarro is about to turn in the petition against him. 3-ER-541.  Along with the statement, Dodge submitted the text messages from Navarro.

In Menzies' rush to pin the whole matter on Navarro, meanings that were neither true nor intended were placed into Navarro's words—and as a result, context of the petition was lost. 3-ER-474.

**G.  Menzies Suspends Navarro Immediately After Submitting The Petition for Supporting the Fuelers in Their Complaints Against Dodge**

Following the requests of the Fuelers on August 22, 2018, Navarro submitted the petition in a meeting with Menzies' management which included Director Raul Vargas. 3-ER-513-514. 3-ER-486, 3-ER-473.

Navarro delivered the petition himself to management, specifically to Vargas. 3-ER-473. While Navarro signed the petition, he did not force others to sign. 3-ER-

473. Unexpectedly, after submitting the petition at about 4 to 5 p.m., Navarro was suspended the next morning, on August 23, 2018. *Id.*

It is clear from the evidence at this point that Menzies had already decided to focus its attention on Navarro and noticeably ignored the underlying complaints found in the petition. Vargas testified that after he received the petition and reviewed the contents, he talked to Aguilera "to have the investigation..." into "how the petition was put together." 3-ER-561. 3-ER-473. Although Vargas had in his possession the signed petition of the twenty-six Fuelers complaining of Dodge's unprofessional conduct and denial of Fuelers meal and rest periods, he testified that he did not instruct Aguilera to investigate anything further than "how the petition was created." 3-ER-561, 562.

### H. Menzies' Immediate Focus on Navarro Demonstrates a Lack of Intent to Discover the Underlying Intent of the Petition Leads to A Dishonest Investigation

Aguilera testified that Safety and Security Manager Kevin Blumberg was directed to begin an investigation to find out "what was going on." 3-ER-305. However, Menzies' decided to focus only on Navarro. While it is accurate that Menzies suspended Navarro based on Dodge's statement, it is even more true that Menzies took no action to discipline or suspend Dodge as a matter of course to the many complaints against him.

Navarro was not provided an opportunity to give his side of the events. Indeed, Navarro met with Vargas and Blumberg. However, "the whole meeting lasted about 3-5 minutes. Aside from this interaction, there were no other meetings, phones calls, or interviews about the petition or the working conditions created by Dodge." 3-ER-474. Surprisingly, in this meeting, the "investigator" Kevin Blumberg explained that signing the petition and siding with the Fuelers was not appropriate. Thus, Blumberg told him to make a statement that he will not do this again. 3-ER-473.

 Aguilera correspondingly admitted that, on August 29, 2018, Blumberg provided the results of his investigation but further testified that no investigation findings exist other than Blumberg's August 29, 2018, email that concerned Navarro. 3-ER-554-555. Blumberg's email, however, which summarizes his findings, indicates that his investigation only focused on Navarro and his alleged participation and solicitation of signatures from employees against Dodge. 3-ER-449. Director of Operations Vargas likewise testified that, aside from Blumberg's email, there were no other written documents reflecting the outcome of their investigation, 3-ER-563-564, and admits that portion of the petition that complained about breaks and delays were, unreasonably, not investigated. 3-ER-558, 563-564.

Vargas further testified that, from Blumberg's investigation, Menzies concluded that Navarro wrote the petition. 3-ER-562-563. According to him, this conclusion was drawn from Navarro's text messages to Dodge, i.e., even if

Navarro's texts simply state, "I'm holding on to the petition, I haven't submitted it." 3-ER-563. However, when further pressed, Vargas stated that they came to this conclusion based on the statements submitted by employees, but then backs off and acknowledged that the statements "—doesn't say about Navarro writing the petition. It says about Navarro forcing the employees to sign the petition." 3- ER-564.

When questioned how the second petition is relevant to this conclusion, Vargas' excuse is that he spoke to HR about Dodge already and that he had only been the Director of SFO for three months at that point—a fact that he used to justify that he did not have much context with regards to what went on during the last year. 3-ER-569, 3-ER-570.

## I. Menzies Terminated Navarro for Purported Harassment of Fuelers. Raul Vargas' Knee Jerk Reaction to Terminate Navarro Was Wholly Retaliatory to Protect Dodge, Push the Fuelers Back and Teach the Filipino Fuelers a Lesson. An Examination of His Actions Illicit This Conclusion

According to Aguilera, Navarro was terminated for **unprofessional behavior** by a supervisor. 3-ER-555.

When asked to clarify what harassing conduct Navarro engaged in that served as a basis for his termination, Vargas testified that forcing employees to sign the petition constituted harassment because "when you have—you take advantage of your rank, that is harassment because of how the other people feel." *Id.* However, the statements on which Vargas admits relying upon to find harassment, only report

that Navarro's involvement in the petition to sign made them feel uncomfortable. 3-ER-443. In addition, Vargas was unable to confirm the number of employees who were questioned and reported feeling intimidated. ER-565, 3-ER-566. On the contrary, he could only identify that the investigation merely relied on three statements out of the twenty-six people who signed the petition. Despite such proportion, Vargas seemed to argue that because of these statements, the validity of the whole petition becomes questionable due to employees maybe being forced to sign. 3-ER-567, 3-ER-568.

In the end, Raul Vargas, Director of Operations, still recommended termination based on the self-serving investigation findings that Navarro solicited signatures and harassed employees. 3-ER-450.

**J.  As a Result of Menzies' Ongoing Failure to Hold Dodge Accountable, Fuelers Submitted a Second Petition Concerning the Same Issues. At the Time, Navarro was Uninvolved and Terminated from the Workplace**

Following Navarro's termination, Rafael Vasquez took it upon himself to submit a second petition against Dodge. 3-ER-480. Vasquez explains that his reason for writing the second petition was because the Filipino Fuelers were getting harassed and subjected to abuse by Dodge; and that "It had been going on for over a year already." *Id* .at ¶16.

The second petition was signed by two individuals, Jayson Manalang and Wesley Faatalale, who claimed in declarations submitted with Menzies MSJ that

Navarro pressured them to sign the first petition. 3-ER-437, 455. However, it should be noted that Navarro was already removed from the workplace at the time the second petition occurred and was in no position to pressure Manalang and Faatalale. Thus, if they felt pressured, then why sign the second petition?

Again, Dodge testified that he never saw the petition. 3-ER-540. In addition, Menzies management never discussed the petition with Dodge. 3-ER-539.

### K. Termination of Navarro is a Tragedy - A lifelong employee Who Had Menzies Best Interest - Kicked Out for Furthering a Harmonious Workplace That Should not include Intimidation nor Harassment. Navarro has not recovered from the Injustice

Navarro has struggled since his termination. He disclosed that the events leading to his termination are so painful that they were beyond enough to ask himself if he really did something wrong. According to him, he keeps getting in his head trying to find an explanation. He had Menzies' interest in mind all along. To Navarro, he signed the petition in furtherance of Menzies' interest and yet, by aiding the fuelers to get their message across, his life has been damaged and that his sleep and appetite continue to be affected to this day—and so he has sought medical assistance. Navarro continues to worry about financial abilities, worrying how to pay for his home and how to help his family, here and in the Philippines. Thus, he has jumped from one lesser job to another just to make ends meet. Even then, his mind continues to be bothered by such injustice. He keeps shaking his head looking back to 2005 through 2018, to all those years serving SFO, to the travelers, to the

airline industry, to Menzies… and what, they turned his life over, to protect someone who was a bad employee—with 2 years of service?  3-ER-474-475.

## II.  **PROCEDURAL BACKGROUND & DISCOVERY**

The complaint in this matter was filed in the San Francisco County Superior Court on October 23, 2019. Menzies removed the matter to the United States District Court on December 16, 2019.  The parties in agreed and participated in mediation August 2020.

On July 15, 2020, a second case management order was issued. It vacated without resetting the pre-trial conference scheduled for 11/30/2020 and the trial set for 12/7/2020 due to concerns brought about by the COVID-19 pandemic.[1]  The motion for Summary Judgment was held on December 17, 2020.

### A.  **Navarro's Complaint Provides Sufficient Notice to Menzies that Navarro was complaining about being Retaliated Against Because of His Race & National Origin**

Navarro filed his state court Complaint on October 23, 2019. 4-ER-623. It contains four causes of action: (1) Race and National Origin Discrimination; (2) Retaliation; (3) Wrongful Termination Against Public Policy; and (4) Intentional Infliction of Emotional Distress.

The Complaint narrates that Navarro is Filipino from the Philippines.  That he

---

[1] This matter was about one year old – during COVID - when Summary Judgment was heard.

had been working for Menzies for thirteen years. He supervises about 12 – 15 fuelers at San Francisco International Airport. His supervisors were Qually, Renil Lai, Jeff Cook and Raul Vargas. He worked the graveyard shift from 11pm to 7am. He would receive status reports upon arriving to work about the fuelers available to him. One of those swing supervisors was Andrew Dodge. Navarro states in his Complaint that he received a lot of complaints against Dodge's unprofessional behavior. Additionally, he would receive complaints about Dodge not providing meals and rest breaks to the fuelers. That Dodge was unreliable and not there to help fuelers during their shifts. Navarro specifically provides that he complained to his supervisors, including Renil Lai and Qually, but that he was ignored. Complaint ¶¶ 6, 13-21, 4-ER-624-625.

The facts section continues to tell us of a petition that by August 14, 2018, the fuelers asked Navarro to sign. The petition was a formal complaint to Menzies about Dodge. Three days after the petition was signed, it was showed to Raul Vargas. Another six days later, the complaint states, Vargas suspended Navarro. Navarro was asked to explain why he signed. He stated that he too experienced problems with Dodge. Only Navarro was suspended for signing the petition. 4-ER-626-627 at ¶¶ 22-27.

Appellant alleges that Menzies displayed favoritism for Dodge over Filipino fueling supervisors., 4-ER-627 at ¶ 28. The Complaint further states that Navarro

- 21 -

complained several times about favoritism to Defendant, but Menzies never instituted "corrective action". 4-ER-627. at ¶ 30. Navarro unequivocally states that he was suspended, retaliated against, and terminated by Menzies because of his Filipino race and Philippines is his national origin. *Id*. His Right to Sue Notice, attached to the Complaint, similarly states that Menzies took adverse action against Navarro and that the company discriminated and retaliated against him. Menzies' favoritism based on race and national origin is also described in the Right to Sue Notice. 4-ER-635-638.

The cause of action includes FEHA discrimination, for race and national origin, stating that Menzies failed to take reasonable, immediate, and appropriate corrective action to stop discrimination despite their actual and constructive knowledge of the discriminatory acts. 4-ER-628 at ¶36. In the FEHA retaliation cause of action Navarro alleges that Menzies was aware of the discrimination because he complained. 4-ER-629 at ¶¶44-46.

Navarro includes two tort causes of action. In his wrongful termination against public policy claim, he states that he was exercising his right to complain about poor working conditions. "Furthermore," he states that it is against public policy to discriminated and retaliated against. That he complained many times against Dodge, but that Menzies ignored the complaints then "eventually used them to suspend and terminated" Navarro. 4-ER-630-631at ¶¶52-54.

**B.** **Navarro's Initial Disclosures Identifies Vasquez and Canlas as Potential Witnesses and Contains Documents Related to Vasquez's Knowledge of Navarro's Race and National Origin Allegations**

Initial Disclosures were exchanged by the Parties in March 2020. 2-ER-18. Therein, Navarro provided Menzies witness information, particularly the contact information for the witnesses who provided declarations in question here, Jezen Canlas and Rafael Vazquez. Clearly, the purpose of this was to alert Menzies that these witnesses had relevant information regarding Navarro's allegations. Yet Menzies strategically chose not to depose them.

Additionally, through the Initial Disclosures process, Navarro provided documents to Menzies. One of these documents, Bate stamp 0009, is a letter authored by Rafael Vazquez dated November 18, 2018. 2-ER-21. This letter states that he spoke to Raul Vargas on three separate occasions. Vargas is Menzies' Director of Aviation Fueling and the person who ultimately decided to terminate Navarro. In the aforementioned letter, Vasquez writes:

> "I have spoken to…Raul Vargas on three separate occasions regarding Andrew Dodge, who continuous to abuse his authority and at times harass Fuelers under his charge."

Also, Navarro's Initial Disclosures document production included copies of text messages received by Navarro from Vazquez mirroring the language of Vasquez's letter.

**C.** **Discovery Conducted By the Parties: One Deposition By Menzies; Two Special Interrogatories on the Nature of the Discrimination Claim; Navarro deposed four witnesses and consistently inquired regarding discrimination of other Filipino Fuelers**

Menzies served ten (10) Special Interrogatory questions on July 7, 2020. Only two of the questions concerned substantive allegations in the Complaint. Number one asks for a list of witness related to the allegations in the complaint. Navarro provided names of eleven witnesses, Jezen Canlas and Rafael Vazquez, among them. The response indicated that both witnesses had information about the two petitions, why they authored the petitions, Menzies' discrimination against Navarro, and the retaliation that Navarro suffered when he was suspended and terminated. 2-ER-22.

Aside from these two questions, no further questions were posed with regard to Navarro's substantive claims of discrimination, favoritism, etc. In other words, Menzies never asked for Navarro to state all facts to support his claims. 2-ER-22.

Navarro served discovery requests on July 14, 2020. Request for Production of Documents requested documents regarding complaints by Navarro to Menzies (#14); complaints made by any of Menzies former or present employees regarding discrimination during Navarro's tenure (#15). Complaints by former and current employees against Dodge (#19); Investigations conducted following complaints by current and former employees against Dodge (#20); petitions against Dodge (#21); disciplinary actions, charges, and lawsuits of any kind against Dodge (#22). 2-ER-31.

- 24 -

Special Interrogatories were served as well, and among the questions included (##8-16) were complaints against Dodge, investigations of such complaints, including by any of Menzies present or former employees about Dodge. 2-ER-40.

### 1. Menzies Conducts One Deposition Only

Counsel for Menzies was selective in the questions he presented. There were neither questions about Navarro being treated differently nor questions about fuelers being treated differently. Counsel's questions on reason for his termination substantially begins in page 88 when Navarro is asked about the reason provided to him by Menzies regarding his termination. Finally, on page 90, Navarro was asked if race played a role in his suspension. Navarro said yes. When asked as to what the belief stems from, Navarro indicates that maybe it is because he is Asian, and Dodge was white. When asked for evidence, Navarro states that in addition to his race, in response to the problems he and others brought up to management, no actions were taken, while it was he who was terminated. When asked as to who told him that race was a factor, Navarro illustrates different treatment with regard to flight delays caused by Dodge compared to flight delays caused by "us." Counsel for Menzies then cautions Navarro that it is not about what Navarro thinks or feels, or what he believes, but instead who told him. Navarro answers then, that he has a lot of Asian coworkers, when they commit mistakes, they are terminated. Navarro then relents and says this is what he feels. Counsel for Menzies does not follow up on the

disparate treatment of Asian coworkers. In fact, Navarro was never asked whether he thought Dodge discriminated against Filipino fuelers. 2-ER52-69.

## 2. Deposition of Menzies' Four Witnesses

Navarro's counsel deposed four witnesses listed by Menzies. Andrew Dodge, John Qually, Tracy Aguilera, and Raul Vargas.

In Andrew Dodge's deposition, Navarro's counsel directly asks Dodge about Vazquez's allegations that Andrew Dodge harassed fuelers, pointing to the November 18, 2018, letter from Vasquez. Dodge denied that he ever harassed or abused his authority. Dodge was asked whether any fuelers complained about harassment against him. "No" was the answer. 2-ER-87-89.

During Qually's deposition, it seemed that either his memory of events from two years ago has been severely affected, or he meant to say "no" or "do not remember" to questions of past events – so that no further questioning could be instigated. He denied any involvement in the termination, suspension and investigation related to Navarro, despite being his direct supervisor. 2-ER-93-95. He denied any knowledge as to the reason for the termination nor the policies and procedures Navarro was accused of violating. He denies hearing any complaints from fuelers. He remembers a discussion with Vasquez about Dodge before Navarro's termination but not the subject matter at all. He also denies complaints of

harassment and abuse of authority leveled against Dodge by other fuelers. 2-ER-99-101.

Tracy Aguilera (a Caucasian HR Professional) indicated that as for the quick promotion of Andrew Dodge to supervisor, she did not remember if other people were vying for the promotion. 2-ER-106-107. She acknowledged that on August 27, 2018, Raul Vargas received the Vasquez second petition from Vasquez himself. 2-ER-108. 2-ER-109. She does not recall any reprimands handed to Dodge. 2-ER-110. The Vasquez November 18, 2018, letter was also discussed with Ms. Aguilera. Even though Aguilera intimates that Menzies has zero tolerance for harassment, she claims that she neither remembers if complaints of harassment from Vazquez regarding harassment of other fuelers were investigated, nor is she otherwise made aware of any investigation results, even though she intimates that Menzies has zero tolerance for harassment. 2-ER-111-112.

Raul Vargas is the Director of Operations, and the highest decision maker that instructed the termination of Navarro. Vargas admits to interacting with Vasquez. 2-ER-116. He denied receiving complaints against Dodge. 2-ER-117. When pressed as to the allegations in the petition itself, Vargas admits that he did not talk to any fuelers about the way Dodge supervised. 2-ER-118. Mr. Vargas was also asked about the different treatment or "covering up" language in the petition for the mistakes of Dodge—and while he believes it was important to investigate such, none

was made. 2-ER119, 2-ER-120. Mr. Vargas does admit meeting with Vazquez but denies talking to him about Andrew Dodge and admits to having him in the union meetings. Vargas was pressed about complaints against Dodge at the union meetings and talking to Vazquez about Dodge, but unfortunately according to Vargas, he cannot recall. 2-ER-122-125. Mr. Vargas does admit that no investigation was conducted with regard to the second petition. 2-ER-126. Mr. Vargas admits he never tried to find out if Navarro's side of the story was evaluated. He did not try to find out. 2-ER-127-128. Even Vargas' counsel asked him whether he heard about any complaints of harassment against other employees. 2-ER-129.

## SUMMARY OF THE ARGUMENT

I.      The District Court granted summary judgment for Menzies despite evidence showing that there are genuine issues of material fact. A review of the record makes clear that the declarations excluded do not pertain to new claims or allegations by Navarro. Instead, it is clear that Navarro's complaint complied with the notice pleading requirement, that his discovery provided Menzies additional notice of the claims and witnesses it needs to defend itself, and nothing about the evidence submitted can be characterized as new.

Menzies chose in their litigation strategy not to depose witnesses nor engage in substantive written discovery. Navarro should not be punished because it had to use declarations to provide admissible evidence for its not deposed witnesses.

- 28 -

II.     Navarro and Dodge are both supervisors, Navarro is Filipino and Asian.  Dodge is Caucasian.  Dodge was clearly treated more favorably than Navarro.  Dodge was never investigated.  Dodge was a frequent focus of complaints and unprofessional behavior.  Dodge was subject to two petitions.  The Union and fuelers he supervised reported harassment to management.  Dodge was never reprimanded.  Navarro on the other hand was suspended and terminated despite being a long term employee well respected by his peers.

Menzies cannot stand behind their inadequate investigation.  Navarro provided substantial evidence of pretext.  Navarro was terminated because of his complaints of discrimination and harassment – or because Menzies wanted to silence a witness.

Navarro has presented evidence that there is a genuine issue of material fact as to whether he was terminated in retaliation for complaining about meal breaks being missed by Filipino fuelers because of Dodge.

Navarro's claim for intentional infliction of emotional distress is not barred by workers compensation because he was targeted for termination to silence Filipino fuelers.

III.     Finally, given the District Court's concerns, COVID, and that the matter was only one year old, it was abuse of discretion for the District Court not

- 29 -

to reopen discovery or deny Summary Judgment without prejudice and provide

Menzies with the option to request reopening discovery or proceed to trial.

## STANDARD OF REVIEW

The Court "review[s] de novo a district court's determination of whether a

Navarro's complaint complied with the notice pleading requirements of Fed.R.Civ.P.

8." *Pickern v. Pier 1 Imports* (*U.S.*), Inc., 457 F.3d 963, 968 (9th Cir. 2006).

The inquiry is whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986).

We review de novo the district court's grant of summary judgment. *Bagdadi v.

Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). We must determine, "viewing the

evidence in the light most favorable to the nonmoving party, whether genuine issues

of material fact exist." *Id*. We will affirm only if no "reasonable jury viewing the

summary judgment record could find by a preponderance of the evidence that the

Plaintiff is entitled to a favorable verdict." *Narayan v. EGL, Inc*., 616 F.3d 895, 899

(9th Cir. 2010). "[C]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from facts are jury functions, not those of a judge."

*Id*. (quoting *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009)).  *Lemos v.

Cty. of Sonoma*, 5 F.4th 979, 982 (9th Cir. 2021).

A district court's order denying additional discovery is reviewed for abuse of

discretion. See *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir.2002).

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY EXCLUDING SOME OF THE EVIDENCE PROFERRED BY NAVARRO IN ITS OPPOSITION TO SUMMARY JUDGMENT MOTION

The District Court limited the evidence it considered in granting Summary Judgment. Its reasoning was that it considered Navarro's own declaration and that of the declaration of witnesses he offered to support his claims as new allegations and new evidence.

Navarro's position is that it provided declarations precisely under Fed. Rule of Civ. Proc. 56, these are pieces of evidence, affidavits, he is burdened to produce to overcome Summary Judgment. That Defendant did not follow the invitation to seek evidence should not be a prejudice he suffers. Defendant chose not to depose anyone other than Navarro. Defendant chose not to serve discovery on these witnesses. Defendant chose not to ask Navarro more substantive questions during his deposition.

Allegations the District Court believed should have been in the complaint are:

(i)     Navarro and the fuelers had repeatedly complained to Menzies management that Dodge was racially harassing the Filipino fuelers;

(ii)     Menzies had disregarded those complaints;

(iii)    Menzies sided with the white harasser by firing the Filipino supervisor.

The above according to the District appears for the first time in the declarations provided by Navarro in the form of signed statements from himself and two witnesses.  The District Court balked that these allegations were not in the complaint, not in the initial disclosures, not in the depositions taken by Navarro lawyer, in Navarro deposition, or any other filings prior to MSJ motion.

Such is not accurate.

Complaint ¶ 28: Navarro alleges that Menzies displayed favoritism for Dodge over Filipino fueling supervisors.  4-ER-627.

Complaint ¶ 30:  The Complaint further states that Navarro complained several times about this to Defendant, but Menzies never instituted corrective action. Navarro unequivocally states that he was suspended, retaliated against, and terminated by Menzies because of his Filipino race and Philippines national origin. His Right to Sue Notice, attached to the Complaint, similarly states that Menzies took adverse action against Navarro and that the company discriminated and retaliated against him. Menzies' favoritism based on race and national origin is also described in the Right to Sue Notice:  Respondent displayed favoritism for a Caucasian supervisor over the Filipino supervisors like the complainant. Respondent suspended, retaliated, and terminated complainant because of his race and national origin.  4-ER-624.

Further, Navarro must emphasize his position that Menzies was not sandbagged or blindsided by new or different claims regarding Dodge's alleged race-based harassment of Filipino fuelers. This is true for two principal reasons. First, the Dodge allegations are consistent with Navarro's original claims because he has always complained of race/national origin discrimination and retaliation; and second, Defendant had ample opportunity to conduct discovery that could have revealed the allegations in question. Menzies had this ample opportunity because: (1) Navarro identified Vasquez and Canlas as relevant witnesses in his Initial Disclosures; (2) Navarro produced a letter authored by Vasquez stating in relevant part, "I have spoken to…Raul Vargas on three separate occasions regarding Andrew Dodge, who continuous to abuse his authority and at times harass Fuelers under his charge;" (3) Defendant failed to ask a general contention interrogatory, something akin to "state all facts supporting your claim of race/national origin discrimination;" and (4) when Defendant asked generally in a special interrogatory, "Please state with particularity the knowledge that each alleged witness to the COMPLAINT has that is in any way relevant to the allegations contained in the COMPLAINT," Navarro identified Vasquez and Canlas and stated they possessed knowledge regarding "Defendant's discrimination committed against Navarro on the basis of his race and national origin for favoring Andrew Dodge, a Caucasian, over Navarro, a Filipino."

Menzies chose not to explore these avenues, so Navarro should not be prevented from doing so even if the evidence was presented in opposing summary judgment.

Defendant was effectively alerted that Vasquez and Canlas had or may have had the kind of information in question here and chose to take a minimalist approach. In other words, Menzies elected to not depose these witnesses, to not ask more targeted questions through written discovery, or to take any other conceivable, similar steps. Ostensibly, Menzies made a strategical choice to develop the factual record as little as possible so that Navarro would have less summary judgment opposition evidence. To say that Menzies was not aware that there were allegations that it ignored the fuelers' complaint cannot be true as the complaint makes a point in saying that their two petitions were ignored.

The District Court believed that Navarro did not allege that Menzies sided with Dodge when it fired Navarro, but he said as much during his deposition. 2-ER-52-69. His complaint states that Menzies favored Dodge over him many times because of his race and national origin. 4-ER-635-638 at ¶¶ 22-30. The depositions of Menzies witnesses centered on the idea that it was odd and unfair that it was Navarro being fired when the two petitions complained of Dodge, and nothing was done to Dodge, no investigations, despite numerous complaints and two petitions.

### A.   Navarro's Complaint Complied with the Notice Pleading Requirement

The United States Supreme Court, Justice Thomas, held that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under *McDonnell Douglas*, but must contain only a short and plain statement of the claim showing that the pleader is entitled to relief. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). The Ninth Circuit in *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136–37 (9th Cir. 2019) held that "Despite the parties' extensive briefing, we need look no further than the Supreme Court's guidance in *Swierkiewicz* to divine that Rule 8(a)2 provides the appropriate standard for reviewing a Rule 12(b)(6) motion to dismiss under Title IX. *Swierkiewicz*, 534 U.S. at 510–11, 122 S.Ct. 992.

In *Swierkiewicz*, the Supreme Court reiterated that "[t]he prima facie case under McDonnell Douglas ... is an evidentiary standard, not a pleading requirement." 534 U.S. at 510, 122 S.Ct. 992. Under the familiar *McDonnell Douglas* evidentiary presumption, once a plaintiff pleads a prima facie case of discrimination, the burden of proof shifts to the non-moving party to show non-discriminatory intent. See *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The framework "is a tool to assist plaintiffs at the summary judgment stage so that they may reach trial." *Costa v. Desert Palace, Inc*., 299 F.3d 838, 855 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The Court has never indicated that the

requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. *Austin at 1137.* The Supreme Court rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings." *Swierkiewicz*, 534 U.S. at 511, 122 S.Ct. 992 (alteration in original) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). The Court went on to explain, "[c]onsequently, the ordinary rules for assessing the sufficiency of a complaint apply[:] .... The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Id*. at 511, 514, 122 S.Ct. 992.

In *Updike v. Multnomah Cty.*, 870 F.3d 939, 953 (9th Cir. 2017) the district court concluded that Updike's failure to provide the County with adequate notice of additional allegations warranted summary judgment on Updike's ADA and § 504 claims on these allegations. The Ninth Circuit disagreed.

Updike complied with the notice pleading requirement of Federal Rule of Civil Procedure 8. Updike alleged sufficient facts that the County did not accommodate his requests for an auxiliary aid to make telephone calls or for an ASL interpreter while in custody, such that the County should have been "on notice of the evidence it need[ed] to adduce in order to defend against [Updike's] allegations."

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Coupled with Updike's deposition testimony, the County was put on notice of the evidence it would need to defend against Updike's ADA and Rehabilitation Act claims. See *id.*

Navarro's complaint included discrimination and retaliation allegations. The complaint was clear that Navarro believed Menzies displayed favoritism for Dodge over Filipino fueling supervisors. 4-ER-627 at ¶ 28. The Complaint further states that Navarro complained several times about this to Defendant, but Menzies never instituted corrective action. *Id.* at ¶ 30. Navarro unequivocally states that he was suspended, retaliated against, and terminated by Menzies because of his Filipino race and Philippines national origin. *Id.* His Right to Sue Notice, attached to the Complaint, similarly states that Menzies took adverse action against Navarro and that the company discriminated and retaliated against him. Menzies' favoritism based on race and national origin is also described in the Right to Sue Notice.

The Complaint by itself gave notice to Defendant that Navarro was pursuing race and national origin claims. That Navarro was suspended, terminated, and retaliated against because of his race and national origin. Navarro provided the background upon which such disparate decisions were made, including the favoritism displayed towards a Caucasian supervisor, despite petitions and claims against that supervisor.

**B.**    **Navarro's Discovery Provided Additional Notice of His Claims**

In discovery, Navarro provided names of eleven witnesses, Jezen Canlas and Rafael Vazquez, among them. Both witnesses were described to have knowledge of the petitions and Defendant's race and national origin discrimination.  Both witnesses were described as having information on the suspension, termination, and retaliation.

Navarro's counsel deposed four witnesses listed by Menzies.

Menzies was put on notice as to Navarro's claims, yet it chose not to follow the evidence.  It made this strategic decision.  Navarro should not be precluded from overcoming Summary Judgment because Menzies chose the minimalist approach. Initial Disclosures provided Menzies witness information, particularly the contact information for the witnesses who provided declarations the District Court did not consider, Jezen Canlas and Rafael Vazquez. Clearly, the purpose of this was to alert Menzies about these witnesses who had relevant information regarding Navarro's allegations. Yet Menzies chose not to depose them.

Additionally, through the Initial Disclosures process, Navarro provided documents to Menzies. One of these documents, Bate stamp 0009, is a letter

authored by Rafael Vazquez dated November 18, 2018.[2] 2-ER-21. This letter states that he spoke to Raul Vargas on three separate occasions regarding Andrew Dodge, "who continuous to abuse his authority and at times harass Fuelers under his charge."

Menzies served very limited written discovery. Menzies never asked for Navarro to state all facts to support his claims. 2-ER-22.

### C. The Evidence Submitted in Opposition to Summary Judgment Was Not New

In limiting Navarro's evidence, the District Court cited *Wasco Products, Inc. v. Southwall Technologies, Inc*., 435 F.3d 989, 992 (9th Cir. 2006). In Wasco the Court of Appeals, Wallace, Senior Circuit Judge, held that the buyer was required to plead civil conspiracy in order to raise that issue as a ground for tolling limitations period. The Court in Wasco emphasized that new allegations were not sufficient "to allege the most basic and fundamental element of a civil conspiracy. Wasco therefore may not toll the statute of limitations based on its allegations of civil conspiracy, which appear for the first time in its response to the summary judgment motion." *Id*. at 992.

Navarro was not attempting to allege a new cause of action, nor a civil conspiracy, instead it was only providing evidence to carry its burden under the

---

[2] It is true that the letter was dated several weeks after Navarro's termination, but the letter speaks of three separate times Mr. Rafael Vazquez spoke to the general manager of Menzies. Also, that the letter was provided to Menzies as part of Navarro's claims is important to note.

*McDonnell Douglas* burden shifting scheme. Here, Navarro did not raise any new cause of action in his opposition to the Summary Judgment. Instead, the District Court balked at evidence being presented to support his claims asserted in the complaint. 1-ER-3. But this is exactly what Fed. Rule of Civ. Proc. 56 contemplates. That the non-moving party provide declarations that established genuine disputes of materials facts. Menzies decided not to depose the witnesses Navarro identified. The District Court was surprised by so many facts stemming from the declarations. Navarro was surprised Menzies did not depose his witnesses.[3]

## II. THERE ARE TRIABLE ISSUES OF MATERIAL FACT – NAVARRO SHOULD BE ALLOWED TO GO TO TRIAL ON HIS CLAIMS

### A. Navarro Establishes a *Prima Facie* Case of Discrimination Because Dodge is a Similarly Situated Non-Filipino Supervisor Who Was Treated More Favorably

California has adopted the three-stage burden-shifting test for discrimination claims set forth in *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973). "This so-called McDonnell Douglas test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved

---

[3] We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir.2003). When disciplinary action is involved, a "legitimate comparator" would be another employee who allegedly engaged "in problematic conduct of comparable seriousness," but was treated differently. *Id.*; *Bodett v. CoxCom, Inc*., 366 F.3d 736, 744 (9th Cir.2004); *Hawn v. Executive Jet Management, Inc*., 615 F.3d 1151, 1156 (9th Cir.2010); *Nicholson v. Hyannis Air Serv., Inc*., 580 F.3d 1116, 1125 (9th Cir.2009) ("The employees need not be identical," but "they must be similar in all material respects."). *Kodwavi v. Intercontinental Hotels Grp. Res., Inc*., 966 F. Supp. 2d 971, 983 (N.D. Cal. 2013).

Navarro belongs to a protected class (Filipino national origin) and he was terminated, and he can establish that he was performing his job satisfactorily and that others outside his protected class were treated more favorably. *St. Mary's Honor Center,* 509 U.S. 506, 113 S.Ct. 2742. Both Navarro and Dodge are fueling supervisors. They both supervise fuelers, many of whom are Filipino fuelers. Navarro was terminated for "code of conduct" violation. 2-ER-137. According to Aguilera, Navarro was terminated for unprofessional behavior by a supervisor. 3-

ER-555. The petitions submitted against Dodge complain about "unprofessional behavior" by Dodge. 3-ER-437. Yet no investigation was conducted against Dodge. According to the complaint and his deposition, Navarro complained several times against Dodge but to no avail. Navarro testifies in his deposition that when Filipino fuelers and supervisors make mistakes, they are terminated, but despite numerous complaints against Dodge, there were no consequences, much less an investigation. The Complaint further states that Navarro complained several times about favoritism to Defendant, but Menzies never instituted "corrective action". 4-ER-627 at ¶ 30.

Navarro testified that he believes he was subjected to discrimination because Menzies took no action against Dodge, a White supervisor, but fired Navarro instead for reporting valid problems to management concerning Dodge's misconduct. 2-ER-237. Such comparator evidence is probative of pretext. Evidence that an employer treated "similarly situated employees outside the Plaintiff's protected class more favorably is probative of the employer's discriminatory or retaliatory intent. *Guz*, supra, 24 Cal.4th at 366, internal quotations removed; *McDonnell Douglas Corp.*, supra, 411 U.S. at 804 (holding that evidence that white employees who engaged in comparable conduct were retained or rehired while the plaintiff, who is black, was laid off); and see *Gupta v. Trustees of California State Univ.*, 40 Cal.App.5th 510, 519 (2019).

Menzies does not dispute that it received information concerning Dodge's conduct and mismanagement that warranted corrective action. Yet, the petition itself reported Dodge for engaging in unprofessional behavior, which is the very same reason, as Aguilera testified, and the basis for Navarro's termination. 3-ER-555. On the contrary, Menzies demonstrated different treatment when it claims that it only counseled Dodge—a response that pales in comparison to the termination decision handed down to Navarro—and i.e., on top of the fact that Menzies ignored and took no action in response to numerous reports through 2017 to 2018 of Dodge's violations of workplace policies, code of conduct and California labor laws. 3-ER-479, 2-ER-110-112.

Menzies' position is that it terminated Navarro because they concluded that Navarro solicited signatures and intimidated employees. 3-ER-449. MENZIES 000197. However, as Vargas testified, "One person, just one person complaining about supervisor harassment is enough to take action." 2-ER119-120. While Menzies claims that it only received complaints regarding Dodge's harassment after Navarro was terminated, this assertion is contradicted by testimony of several Fuelers who report complaining to management on numerous occasions for over a year prior to Navarro's termination regarding Dodge's abusive and harassing conduct toward Fuelers. Navarro's complaint indicates that he complained several times to management about Dodge. 4-ER625-627 at ¶¶ 13-21 and 30. Likewise,

Navarro testified that he has observed discriminatory terminations of Asian coworkers, whereas White employees, including Dodge, faced no repercussions for violating company policies. 2-ER-237. 3-ER-472, 3-ER-539. Other Fuelers also testified that Menzies perpetuated a harassing and discriminatory treatment toward Filipino employees by Dodge, Aguilera, and Menzies management. 3-ER-478; 3-ER-485; 3-ER-472-473, 3-ER-499. The petition themselves allege Dodge engaging in unprofessional behavior. At the very least, a genuine, material dispute of fact exists as to whether Menzies' received complaints of discrimination, harassment against Dodge. According to Aguilera any type of harassment demands an investigation, but we know that Dodge was not investigated for such. 2-ER-110-112; 3-ER-539.

**B.** **Menzies' Inadequate Investigation Was a Deficient Basis To Form A Good-Faith Belief that Navarro Engaged in Harassment**

Menzies argues that all that is required of an employer is a good-faith belief that Navarro engaged in the terminable conduct and that Navarro's denials that he did so are insufficient to overcome an employer's honest belief that served as a non-discriminatory reason for termination. To this end, Menzies contests that decision-makers Vargas and Aguilera, honestly believed that (1) Navarro pressured employees to sign the petition and (2) this conduct amounted to harassment and intimidation in a violation of its Code of Conduct.

However, Navarro advances specific evidence—beyond his own denials—demonstrating that Vargas and Aguilera's basis for believing that Navarro harassed Fuelers was based on a pre-determined investigation and not in good-faith.

Counter to Menzies' claim that it investigated "the entire scenario surrounding the petition, including what Dodge had reported about Fuelers being pressured by Navarro to sign it," its assertion is not supported by the record. MSJ MPA, 5:6-7. In reality, Menzies only investigated Dodge's statement concerning Navarro and never investigated the petition's underlying reports that Dodge was acting unprofessionally and denying meal breaks to Fuelers. Further, Menzies claims that its investigation was also prompted by a Union complaint is unsubstantiated and subject to genuine dispute. 3-ER-479.

In an attempt to dilute Dodge's role in sparking an investigation, Menzies claims that it first learned of the petition after Aguilera received a call from Union representative, Charles Owinche, reporting that members were being pressured to sign a petition. However, Aguilera testified that she never received a return call from Owinche in response to her request for a copy of the petition and who was being forced to sign. 3-ER-550. Effectively, this lead went unsubstantiated, and was never tied to Navarro. Further, Union Steward Vasquez testified that he knows Owinche and spoke to him about the petition. Vasquez testified that Menzies' claim that it received such a complaint from Owinche "does not make sense" because the Union

office, including Owinche, was actively seeking signatures on the petition, including support from supervisors, like Navarro. 3-ER-479-480.

Despite Menzies attempt to obfuscate the timeline, the record clearly shows that once Dodge verbally reported concerns regarding Navarro, Menzies acted promptly to initiate an investigation by first asking Dodge to write a statement summarizing his concerns. 3-ER-435. Consistently, Safety and Security Manager Kevin Blumberg was thereafter tasked with investigating. 3-ER-479, 3-ER-550-551.

Blumberg did not attempt to talk with the Union regarding the petition. 3-ER-450. His email summarizing the evidence collected and findings of his investigation confirms that he only relied on the statements of Fuelers Isaiah Banks and Charles Lawrence stating Navarro made them ***uncomfortable*** by signing the petition, on his conversation with Navarro, and on Dodges statements and texts.[4] 3-ER-551, 553, 555. His email findings make no mention of findings with respect to the petition's

---

[4]   Further, the Fueler statements submitted by Menzies and gathered in their investigation constitute inadmissible hearsay and do not qualify as an exception under Federal Rules of Evidence 803, including RFE 803(6)(B), Business Records Exception to prove they underlying content actually occurred because they were not made as part of a regularly conducted business activity of Menzies. ; *Annett v. Univ. of Kansas*, 93 F. Supp. 2d 1135 (D. Kan. 2000) (holding that a letter containing statements made by Native American state university professor to the university was not made as part of professor's duties to produce records for the university and was not admissible to prove that the adverse action occurred to support professor's discrimination claims under Title VII). Menzies submitted a third statement by Mario Caballero Salazar authenticated by Aguilera. 2-ER-157. However, her email dated August 27, 2018, only refers to two statements. 3-ER-450.

underlying complaints concerning Dodge. *Id.*  In relation to this, Aguilera and Vargas testified that no other written conclusions regarding the investigation exist concerning the underlying reports about Dodge. 3-ER-554-555.

Menzies chose not to interview numerous individuals who deny that Navarro asked or pressured fuelers to sign. Accordingly, the petition was signed by twenty-four Fuelers—seventeen of whom are Filipino while two are Filipino supervisors—and yet, Menzies did not interview any of those signatories. 3-ER-473; 3-ER-450.

Moreover, the testimonies by Union representative Rafael Vasquez and member Jezen Canlas confirm that they started the petition and asked other Fuelers to sign, not Navarro. Such interviews would be critical to determining whether Navarro's conduct amounted to terminable harassment in violation of Menzies' Code of Conduct, particularly because the written statements collected make no mention of harassment or abuse by Navarro—but merely that their signature on the petition made two of them uncomfortable.

For Menzies to establish that its decision makers held a good faith belief that Navarro engaged in terminable conduct, the basis for that conclusion must be honest and impartial. The case *Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*, 966 F. Supp. 2d 971, 984 (N.D. Cal. 2013) held that the employer demonstrated a good-faith, honest basis for terminating plaintiff based on "a thorough investigation, speaking to ***scores of witnesses***, and reviewing Plaintiff's entire personnel file."

Here, Menzies' investigation ignored key witnesses, presumably because they would support Navarro, and came to the conclusory finding that Navarro's conduct amounted to harassment. Evidently, Menzies' investigation does not satisfy the good-faith standard articulated by the court in *Kodwavi.* Therefore, Menzies fails to establish that it held a legitimate, non-discriminatory reason to terminate Navarro.

### C. Navarro Can Establish Substantial Evidence of Pretext

Even assuming that Menzies believed that Navarro asked employees to sign the petition—and if that further formed a good-faith belief that Navarro violated Menzies' Code of Conduct—Navarro can establish substantial evidence that Menzies' purported reason is pre-text to mask a discriminatory motive. [5]

Finally, Menzies' investigation into Navarro's conduct was conclusory and did not interview additional Fuelers or the Union Representative responsible for starting the petition. When an employer's investigation of an employee is used to

---

[5] Even assuming that Menzies believed that Plaintiff improperly pressured employees to sign the petition was a factor in their decision to terminate his employment, Plaintiff can still prevail upon showing that discrimination was the ***substantial motivating factor.*** Under FEHA, Plaintiff is only required to show that discrimination was a ***substantial motivating factor*** behind the adverse action to affix employer liability, even if other factors would have led the employer to make the same decision at the same time. See *Harris v. City of Santa Monica,* 56 Cal.4th 203, 229 (2013). A complainant need not prove that discriminatory animus was the sole motivation behind a challenged action. *Mixon v. Fair Employment and Housing Com*., 92 Cal.App.3d, 1306, 1319 (1987). *Id.* In so doing, California courts recognize that discrimination need not be a "but for" cause in the employment decision to find liability. See *Harris, supra,* 56 Cal.4th at 232.

justify the employee's termination and the employer's failure to interview witnesses for potentially exculpatory information, it is evidence that the termination was a pretext. *Reeves v. Safeway Stores*, 121 Cal.App.4th 95, 120–121; *Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243, 280 (2009). [6]

> **D.** **Navarro Establishes a *Prima Facie* Case of Retaliation Because He Engaged in Protected Activity By Lending Support and Repeatedly Notifying Management of Filipino Fuelers Complaints of Dodge's Harassment Leading Menzies To Silence Him By Terminating His Employment**

To prove a prima facie case of retaliation under the Fair Employment and Housing Act, Navarro must show that 1) they engaged in a "protected activity," 2) the employer subjected the employee to an adverse employment action, and 3) there was a causal link between the protected activity and the employer's action. See *Yanowitz v. L'Oreal USA, Inc.* 36 Cal.4th 1028, 1042 (2005). Of course, an employee need not explicitly and directly inform his or her employer that he or she believes the employer's conduct was discriminatory or otherwise forbidden by FEHA. *Id.* at p. 1046. "The relevant question . . . is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer

---

[6] Menzies may have inadvertently forgotten to use the Errata sheet provided by Plaintiff and posted or included by the deposition officer as part of the certified transcript. The errata sheet was included on Sept. 2, 2020. A copy of the Errata sheet is found in 3-ER-518. There are substantive changes to the cited testimony by Menzies.

has acted or is acting in an unlawful discriminatory manner." *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1047 (2005) *quoting Garcia-Paz v. Swift Textiles, Inc., 873 F. Supp. 547, 560 (D. Kan. 1995).*

> **1.  Navarro's Involvement With the Petition Is The Culmination of A Several Reports Made By Navarro And Other Filipino Fuelers Regarding Dodge's Unlawful Harassment And Constitutes Protected Activity**

Menzies' attempts to skirt liability by claiming that the complaints they received regarding Dodge concerned only operational issues and did not contain reports of harassment or abuse. Menzies's narrow focus on the words of the petition itself, concerning Dodge's unprofessional behavior and denying Fuelers meal and rest breaks, conveniently ignores the repeated reports by Navarro and the Union prior to the petition complaining of Dodge's misconduct and harassment of Filipino Fuelers to Menzies management.[7] This claim is unsupported by the evidentiary record and constitutes a fact subject to genuine dispute. Indeed, the petition was the culmination of these efforts that went largely ignored by Menzies. 3-ER-485. Such narrow focus of protected activity is not supported by California law. Rather, to prevail in establishing protected activity under FEHA, "an employee is not required

---

[7] Interesting that Aguilera attributes Navarro's actions as "unprofessional behavior" leading to his termination. While Vargas connotes "harassment" in describing actions by Navarro making fuelers sign the petition against Dodge. Then finally, the termination notice states "code of conduct" as the reason for Navarro's termination.

to use legal terms or buzzwords when opposing discrimination. The court will find opposing activity if the employee's comments, ***when read in their totality***, oppose discrimination." *Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1047 (2005) *quoting Wirtz v. Kansas Farm Bureau Services, Inc*. (D.Kan.2003) 274 F.Supp.2d 1198, 1212, fn. Omitted. This enactment aids enforcement of the FEHA and promotes communication and informal dispute resolution in the workplace. *Miller v. Dep't of Corr.*, 36 Cal.4th 446, 472 (2005) (quoting *Flait v. North American Watch Corp.*, 3 Cal.App.4th 467, 476–477 (1992)).

Navarro testified that he reported to Renil Lal and John Qually about the way Dodge treated Filipino fuelers. 3-ER-473. Other Fuelers also testified that Navarro's involvement was one of many reports to management regarding Dodge's mistreatment of Filipino Fuelers. Thus, Menzies' claim that the only complaint of harassment regarding Dodge was a letter received from Union Steward Rafael Vasquez after Navarro's termination is erroneous and is even contradicted by the content of Vasquez's letter itself. The November 18, 2018 letter states that Vasquez reported Dodge's harassment and abuse to Raul Vargas ***on three prior occasions.*** This is echoed in the testimony of other Fuelers. Likewise, Union members testified that they attended regular meetings with management which they reported Dodge's harassing and abusive conduct toward Filipino Fuelers. 3-ER-479; 3-ER-486.

Here, the evidentiary record, of which Navarro was an integral part,

demonstrates **a long history of complaints** to management regarding Dodge. In addition, Employees' belief that they are complaining about prohibited conduct "may be inferred from the ***nature and content of their repeated complaints.***" Thus, to put it simply, the issue of a Navarro's subjective, good faith belief involves questions of credibility and ordinarily cannot be resolved on summary judgment." *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal.App.5th 1028, 1047 (2016) (quotations omitted).

>    **2.    Navarro Is Protected Under FEHA Retaliation Because He Was a Prospective Witness to Dodge's Unlawful Harassment And Menzies' Failure to Take Corrective Action**

California courts have found that FEHA prohibits "[e]mployer retaliation against employees who are believed to be ***prospective*** complainants or witnesses for complainants" because the absence of such protection would "undermine[] this legislative purpose just as effectively as retaliation after the filing of a complaint. *Steele v. Youthful Offender Parole Bd.*, 162 Cal.App.4th 1241, 1255 (2008).

Menzies was aware that Navarro observed Dodge engaging in harassing conduct and abuse toward Filipino Fuelers—as Navarro previously reported as much to Menzies and sought corrective action. Further, Navarro, as a supervisor, was in a central position both to (1) the number and variety of complaints raised against Dodge and to (2) Menzies' repeated failure to correct or prevent further incidents of harassment from occurring, as well as to the fact that (3) Navarro also felt

discriminated against in contrast to Menzies' favoritism toward Dodge. Against this backdrop, Navarro was a central player both in witnessing harassment and unsafe working conditions. As the court in *Steele* articulates, preemptive retaliation against a prospective witness to discrimination is unlawful and prohibited under FEHA.

Menzies rush to terminate Navarro before investigating Dodge's conduct and refusal to interview Navarro with respect to his own observation about Dodge's conduct suggests a quick hack job aimed at silencing a central witness to a year-long period of unchecked harassment of Filipino Fuelers. Indeed, Navarro testified that after he was suspended, he was never allowed to explain either his side of the story for signing the petition or his reason for siding with fuelers, evidently demonstrating Menzies' intent to silence Navarro. 3-ER-474.[8]

### E. Navarro Established A Claim of Wrongful Termination in Violation of Public Policy Because Menzies Discharged Navarro For Challenging Unlawful Working Conditions

Navarro's wrongful discharge claim rests on his assistance and assertion of important state rights—the right of employees for meal breaks and the right of employees to be free from discrimination and harassment—but in assisting the efforts of the fuelers asserting such rights, he was terminated.

---

[8] The District Court indicated that at most the jury could find that Menzies meant to punish Navarro in part for signing a petition. In signing the petition Navarro joins a group of employees complaining and bearing witness against Dodge.

[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions. *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170. "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Allen* (2014) 229 Cal.App.4th 144, 154.

"[T]he cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance." *Gantt v Sentry Insurance* (1992)1 Cal.4th1083, 1090–1091, internal citations and footnote omitted, overruled on other grounds in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6. "[T]ermination of an employee most clearly violates public policy when it contravenes the provision of a statute forbidding termination for a specified reason…." [A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity." *Green, supra, 19 Cal.4th at p. 87*, internal citation omitted. "FEHA's policy prohibiting disability discrimination in employment is sufficiently substantial and fundamental to support a claim for

wrongful termination in violation of public policy." *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 660. "California's minimum wage law represents a fundamental policy for purposes of a claim for wrongful termination or constructive discharge in violation of public policy." *Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 831−832.

Here, for over a year, Navarro was attempting to put into focus the illegal activities that Andrew Dodge engaged in. The straw that broke Menzies' back, and therefore schemed to terminate him, was his support of the Fuelers in the efforts to enforce meal break rights and to put an end to the "unprofessional behavior" of Dodge. When the petition put the actions of Andrew Dodge towards the fuelers into focus, which upon investigation included harassment, abuse of power and discrimination, instead of performing their duties under the law, Menzies schemed against Navarro to shield Dodge, pushed the fuelers back and eventually made the problem go away.[9]

### F. Navarro's IIED Claim Is An Exception To Exclusive Remedy Rule

Workers' compensation is not the exclusive remedy when an employer's conduct is outside of the compensation bargain. *Shoemaker v. Myers* (1990) 52

---

[9] The District Court indicated that "against the weight of the evidence" no reasonable jury could find that the substance of the petition was the real reason for his termination. This is another way of admitting that there are genuine issues of material fact.

Cal.3d 1, 7; *City of Moorpark v. Superior Court of Ventura County (Dillon)* (1998) 18 Cal.4th 1143, 1157–60. Those situations exist when the employer steps out of its proper role or engages in conduct of questionable relationship to the employment. *Shoemaker at 503*. In those cases, an employee may pursue a civil claim against the employer.

In assessing whether an exception to the exclusive remedy rule exists for a cause of action, courts first determine whether the alleged acts are of the kind reasonably contemplated by the compensation bargain. The California Supreme Court has stated, "[T]he critical issue is whether the alleged acts, bereft of their motivation, can ever be viewed as a normal aspect of the employer relationship or claims process. Where the tortious act is not closely connected to a normal employer or insurer action, it is not subject to exclusivity." *Charles J. Vacanti, M.D., Inc. v. SCIF* (2001) 14 P.3d 234, 244. One court stated, "Workers' compensation awards may fall short of making the tort victim 'whole' and provide no deterrent effect on an intentionally wrongdoing tortfeasor." *Young v. Libbey-Owens Ford Co.* (1985) 168 Cal.App.3d 1037, 1044.

### 1. Menzies Engaged In A Campaign to Terminate Navarro and Retaliate – Misconduct That Exceeded The Normal Risks Of The Employment Relationship

The California Court of Appeal held that an employee may pursue a claim for intentional infliction of emotional distress in the employment context when the

conduct at issue violates the FEHA. The Plaintiff alleged that her supervisor engaged in sexual harassment, discrimination based on sex, sexual orientation, marital status and retaliation over her friendship with a co-worker the supervisor believed to be a lesbian. *Light v. Department of Parks and Recreation*, 14 Cal.App.5th 75 (2017).

Here, Navarro suffered severe emotional distress as a victim of a scheme to remove him in order to protect Dodge while pushing away the Filipino fuelers who complained of abusive working conditions. The actions of Menzies in ignoring the underlying claim and intentionally making up that Navarro was pressuring fuelers goes beyond the normal employment decisions. Navarro alleges retaliation and discrimination for assisting the fuelers in bettering their working conditions. Such despicable conduct by Menzies if proven is simply beyond the compensation bargain contemplated by Workers Compensation. *Cole v. Fair Oaks Fire Protection Dist*., 43 Cal.3d 148 (1987).

## III. IT WAS ABUSE OF DISCRETION FOR THE DISTRICT COURT NOT TO REOPEN DISCOVERY

The District Court here was unsure if it had the discretion to reopen discovery allowing Menzies to respond to the "new allegations". It stated that even if it had such discretion, it was not exercising such because it would cause further delay.

The cited delay – because of the passage of time, seems less of a concern because Navarro was only terminated in 2018, the case was one year old when Summary Judgment was granted, and witnesses needed have provided testimony and are therefore available. There is no indication in the record otherwise.

The District Court said it did not know why Plaintiff nor his counsel disclosed the "new allegations" but that it was unfair for Menzies to now respond to them. Menzies according to the Court was not on notice of the allegations until after close of discovery – therefore, it had no opportunity to explore them in discovery nor investigate them internally.

Probably, the most significant reason to hesitate in granting summary judgment is that the posture of the case (e.g., discovery, party's present access to proof) indicates the ruling might be premature. *Texas Partners v. Conrock Co*. (9th Cir. 1982) 685 F2d 1116. In a more recent District Court case, *Sundby v. Marquee Funding Grp., Inc*., No. 19-CV-00390-GPC-AHG, 2020 WL 1866097, at *3 (S.D. Cal. Apr. 14, 2020), the District Court there indicated that "delaying the hearing and briefing as to Plaintiff's motion serves several important objectives. First, insofar as the depositions may yield information material to summary judgment in this matter, the Court cannot fairly adjudicate Plaintiff's motion without permitting for additional time to conduct, review, and incorporate the depositions. See *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 10 (1st Cir. 2007) ("When a party confronted by a motion

- 58 -

for summary judgment legitimately needs additional time to marshal the facts necessary to mount an opposition, the rule provides a useful safety valve ... Deployed appropriately, the rule ... safeguards against judges swinging the summary judgment axe too hastily.") (quotations omitted and punctuation simplified).

To say that Menzies was deprived of the opportunity to investigate these allegations internally is not supported by the evidence. The Vasquez letter was with them since November 2018. The substance of the two petitions were not investigated internally. The very reason the fuelers escalated to two petitions was because their concerns were not being listened to. What causes a workforce to sign petitions?

It is Navarro's position that Menzies had ample opportunity to explore these issues in discovery, it decided not to. Evidence of this, is their decision to not depose witnesses nor engage in substantive written discovery. At best, Menzies may have been surprised by the testimony of the fact witnesses it did not depose. From its perspective, Menzies may have, at best, failed to anticipate such new and unanticipated issues. *Garrett v. San Francisco* (9th Cir. 1987) 818 F2d 1515, 1518-1519. Taking into consideration all of the factors at play, including COVID, one better outcome may have been to reopen discovery so that Menzies can depose Navarro's declarants. Another would be to deny summary judgment without

prejudice, allowing Menzies to decide whether it wanted to reopen discovery or proceed to trial.

## CONCLUSION

Human endeavors are fraught with mistakes and missteps. None of us is free from such. This advocate, along with his client, are fallible just like the rest of us. Long as the road may be, we all hope that the spirit of justice keeps us strong enough in our drudging pace forward. Navarro and his fellow fuelers had the best of intentions for Menzies. We respectfully request that this Court reverse the error of granting Summary Judgment and give Navarro an opportunity to present his case.

Date: August 29, 2021                    Liberation Law Group, PC


                                         /s/ Arlo Uriarte
                                        Arlo Uriarte
                                        *Attorneys for Appellant,*
                                        *Renaldo Navarro*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Circuit Rule 32-1(a) and Federal Rules of Appellate Procedure 32(a)(5)(A). This brief uses a proportional typeface and 14-point font, and contains 13,253 words.

Date: August 29, 2021                Liberation Law Group, PC


 /s/ Arlo Uriarte
Arlo Uriarte
*Attorneys for Appellant,*
*Renaldo Navarro*

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


 /s/ Kirstin E. Largent