No. 21-15355

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

## RENALDO NAVARRO,

### Plaintiff-Appellant,

### vs.

## MENZIES AVIATION, INC., d/b/a Menzies,
### Defendant-Appellee.

---

Appeal from a Decision of the United States District Court for the Northern District of California, Case No. 3:19-cv-08157-VC The Honorable Vince Chhabria, District Judge

———————

### ANSWERING BRIEF OF DEFENDANT-APPELLEE MENZIES AVIATION, INC., DBA MENZIES

Christopher G. Ward
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3500
Los Angeles, California 90071-2421
(213) 972-4500

*Attorneys for Defendant-Appellee MENZIES AVIATION, INC., DBA Menzies*

———————

### Oral Argument Requested

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Defendant-Appellant Menzies Aviation, Inc. hereby states that Menzies Aviation, Inc. is the 100% parent company of wholly-owned operating entities Menzies Aviation (USA), Inc., Aircraft Service International, Inc., Aeroground, Inc. and Simplicity Ground Services, LLC.  Counsel further states that Menzies Aviation, Inc. is itself wholly owned by John Menzies plc, which is publicly traded on the London Stock Exchange.  There are no other publicly-held corporations of companies owning 10% or more of Menzies Aviation, Inc.

Dated:  September 28, 2021

Respectfully submitted,

FOLEY & LARDNER LLP

s/ Christopher G. Ward

Christopher G. Ward
*Attorneys for Defendant-Appellee MENZIES AVIATION, INC., DBA Menzies*

1

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................................. 1

JURISDICTIONAL STATEMENT ......................................................................1

I. The District Court's Subject Matter Jurisdiction ......................................1

II. This Court's Subject Matter Jurisdiction ...................................................1

III. Relevant Dates Governing This Appeal........................................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................3

PRIMARY AUTHORITY PER CIRCUIT RULE 28-2.7 ...................................6

STATEMENT OF THE CASE ................................................................................11

I. Factual Summary .......................................................................................11

    A. Navarro Understood The Importance Of Following Policy
And Demonstrating Proper Leadership .......................................11

    B. After Menzies Acquired ASIG, Navarro Became Subject
To Menzies' Conduct Policies And Expectations.......................12

    C. Menzies Coached Andrew Dodge On Operational
Improvements In Response To Complaints By Navarro ..........13

    D. Navarro Butted Heads With Dodge, Resulting In Union
Complaints Of Fuelers Being Pressured To Sign A
Petition .............................................................................................14

    E. After Dodge Reported Navarro's Actions, Menzies
Suspended Navarro To Allow For An Investigation.................16

    F. Multiple Sources Of Information Informed Menzies That
Navarro Had Pressured Fuelers To Sign The Petition ...............17

    G. Menzies Terminated Navarro For The Sole Reason That It
Cannot Allow Management To Harass Subordinates ................19

    H. Further Petitions Parroted The Same Information, With
Fuelers Continuing To Deny Mistreatment By Dodge ..............21

II.  PROCEDURAL BACKGROUND.............................................................22

    A.  Navarro First Filed An NLRB Charge Against Menzies,
        Allowing His Civil Contentions To Grow Stale ..........................22

    B.  Navarro's Complaint Omitted Any Mention Of The
        Allegations First Raised At Summary Judgment ......................23

    C.  Navarro's Written Discovery Responses Gave No Notice
        Of Alleged Harassment By Dodge Against Filipino
        Fuelers .......................................................................................24

    D.  Navarro Maintained His Consistent Story At Deposition,
        And Never Attempted To Investigate Allegations Of
        Harassment Against Dodge Through His Own Discovery .......26

    E.  Navarro Opposed Summary Judgment Relying Almost
        Entirely Upon New Allegations And Inadmissible
        Evidence....................................................................................28

    F.  After Requesting Supplemental Briefing, The District
        Court Granted Summary Judgment After Declining To
        Consider Navarro's New Material Or To Reopen
        Discovery ..................................................................................30

SUMMARY OF THE ARGUMENT......................................................34

ARGUMENT........................................................................................36

I.  The Court Should Strike Navarro's Brief For Non-Compliance
    With The Federal Rules Of Appellate Procedure And Ninth
    Circuit Rules .................................................................................36

II.  Standards Of Review...................................................................39

III.  The District Court Followed This Court's Authority And Acted
     Well Within Its Discretion By Refusing To Consider Navarro's
     New Material And Declining To Reopen Discovery ...........................42

    A.  The Material Upon Which Navarro Relied At Summary
        Judgment Was Clearly "New" And Therefore Improper..........43

    B.  Navarro Cannot Avoid The Consequences Of His
        Sandbagging By Impugning Menzies' Discovery ......................47

4840-5095-5514.5

C.      The District Court Correctly Exercised Its Discretion,
         Particularly Given Navarro's Failure To Avail Himself Of
         Mechanisms Available For Additional Discovery ......................50

IV.  The Material Properly Part Of The Record Makes Clear
      Navarro Could Not Satisfy His Prima Facie Burdens No
      Overcome Menzies' Legitimate Reasons For His Action As To
      Any Of His Claims...........................................................................53
         A.      Even On De Novo Review, This Court Evaluates
                  Summary Judgment From The Material Properly Part Of
                  The Record And Can Affirm On Any Basis Supported By
                  That Record .......................................................................53
         B.      Navarro Failed To Make A Prima Facie Discrimination
                  Claim And Offered Nothing To Show Menzies'
                  Legitimate Reasons For His Termination Were Pretextual .......56
                  1.      Lacking Evidence Of Disparate Treatment Of
                          Similarly Situated Individuals, Navarro Offered No
                          Prima Facie Basis To Even Question Menzies'
                          Good-Faith Actions..................................................59
                  2.      Navarro's Mere Speculation Created No Material
                          Disputes As To Menzies' Reasons For Termination.........61
         C.      Navarro Never Engaged In Protected Activity, And Even
                  If He Had, He Offered Nothing Legitimate To Challenge
                  Menzies' Reasons For Termination As Pretextual .....................62
                  1.      Navarro Did Not Engage In Protected Activity, But
                          Rather Acted In Violation Of Federal Labor Law .............63
                  2.      Navarro Offered Nothing To Show Pretext To
                          Salvage His Retaliation And Wrongful Termination
                          Claims ....................................................................65
         D.      Navarro's Intentional Infliction of Emotional Distress
                  Claim Is Preempted And He Cannot Show Any
                  Outrageous Conduct..........................................................65

CONCLUSION .........................................................................................67

CERTIFICATE OF COMPLIANCE WITH RULE 32-1(e) ................................1

CERTIFICATE OF SERVICE ...................................................................1

iii

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abiola v. ESA Mgmt., LLC*,
  No. 13-cv-03496-JCS, 2014 U.S. Dist. LEXIS 26918 (N.D. Cal.
  Mar. 3, 2014) ................................................................................................66

*Allergia, Inc. v. Bouboulis*,
  No. 14-CV-1566 JLS (RBB), 2017 U.S. Dist. LEXIS 90844 (S.D. Cal.
  June 13, 2017) ..............................................................................................51

*Aragon v. Republic Silver State Disposal*,
  292 F.3d 654 (9th Cir. 2002) ..............................................................57, 58, 61

*Bracke v. City. of L.A.*,
  60 F. App'x 120 (9th Cir. 2003) ....................................................................66

*Burrell v. City of Santa Clara*,
  No. 11-CV-04569-LHK, 2013 U.S. Dist. LEXIS 70555 (N.D. Cal.
  May 17, 2013) ...............................................................................................51

*Campidoglio LLC v. Wells Fargo & Co.*,
  870 F.3d 963 (9th Cir. 2007) ...................................................................41, 65

*Castelli v. Douglas Aircraft Co.*,
  752 F.2d 1480 (9th Cir. 1985) .......................................................................63

*Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*,
  626 F.3d 483 (9th Cir. 2010) .........................................................................39

*Cole v. Fair Oaks Fire Prot. Dist.*
  43 Cal. 3d 148 (1987) ...................................................................................66

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) .........................................................43, 48, 49, 50

4840-5095-5514.5

*Collier v. Windsor Fire Prot. Dist. Bd. of Dirs.*,
No. C 08-2582 PJH, 2011 U.S. Dist. LEXIS 115649 (N.D. Cal. Oct. 6,
2011) ............................................................................................................60

*Cucuzza v. City of Santa Clara*,
104 Cal. App. 4th 1031 (2002) ..................................................56, 58

*Dela Rosa v. Scottsdale Mem'l Hospital Sys., Inc.*,
136 F.3d 1241 (9th Cir. 1998) ..........................................................39

*Dixon v. Cty. of Sonoma*,
No. 18-cv-07137-EMC, 2020 U.S. Dist. LEXIS 191434 (N.D. Cal.
July  , 2020) ..................................................................................51

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d. 600 (9th Cir. 2002) ..........................................................40

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) ..........................................................56, 59

*Harman v. Apfel*,
211 F.3d 1172 (9th Cir. 2000) ..........................................................41

*Hernandez v. Creative Concepts, Inc.*,
295 F.R.D. 500 (D. Nev. 2013) ..........................................................51

*Horn v. Cushman & Wakefield W., Inc.*,
72 Cal. App. 4th 798 (1999) ..........................................................58

*Incalza v. Fendi N. Am., Inc.*,
479 F.3d 1005 (9th Cir. 2007) ..........................................................57

*Jones v. Royal Admin. Servs., Inc.*,
887 F.3d 443 (9th Cir. 2018) ..........................................................41

*Kirshner v. Uniden Corp. of Am.*,
842 F.2d 1074 (9th Cir. 1988) ..........................................42, 54, 55

*Livitsanos v. Superior Court*,
2 Cal. 4th 744 (1992) ..........................................................66

vii

*McDonnell Douglas Corp. v. Green*
411 US 792 (1973) ................................................................56

*McGinest v. GTE Serv. Corp.,*
360 F.3d 1103 (9th Cir. 2004) .....................................56, 57

*Menzies Aviation, Inc.,*
47 NMB 10 (2019) ....................................... 22, 23, 24, 25, 26, 27

*Morgan v. Regents of Univ. of Cal.,*
88 Cal. App. 4th 52 (2001) ..........................................56, 58

*Mueller v. City. of L.A.,*
176 Cal. App. 4th 809 (2009) ............................................66

*Nealy v. City of Santa Monica,*
234 Cal. App. 4th 359 (2015) ......................................56, 59

*Nilsson v. City of Mesa,*
503 F.3d 947 (9th Cir. 2007) ............................................62

*Panatronic USA v. AT&T Corp.,*
287 F.3d 840 (9th Cir. 2002) ......................................40, 43

*Partridge v. Reich,*
141 F.3d 920 (9th Cir. 1998) ......................................42, 54

*Patel v. City of Long Beach,*
564 F. App'x 881 (9th Cir. 2014) ......................................50

*Pickern v. Pier 1 Imps. (U.S.), Inc.,*
457 F.3d 963 (9th Cir. 2006) ..................................48, 50, 52

*Quiroz v. Horel,*
85 F. Supp. 3d 1115 (N.D. Cal. 2015) ................................51

*Roby v. McKesson Corp.,*
47 Cal. 4th 686 (2009) ..........................................62, 63

*Shoemaker v. Myers,*
52 Cal. 3d 1 (1990) ......................................................66

viii

*Stevens v. Sec. Pac. Nat. Bank*,
  538 F.2d 1387 (9th Cir. 1976) ..........................................................39

*Stever v. U.S. Bancorp*,
  680 F. App'x. 491 (9th Cir. 2017) ....................................................43

*Stewart v. Leland Stanford Junior Univ.*,
  No. C 05-04131 JW, 2006 U.S. Dist. LEXIS 20137 (N.D. Cal. Apr. 5,
  2006) ..................................................................................................64

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
  330 F.3d 1110 (9th Cir. 2003) .....................................................41, 53

*Tribble v. Raytheon Co.*,
  No. CV 07-3058-JFW, 2009 U.S. Dist. LEXIS 142388 (C.D. Cal.
  Sep. 3, 009) .......................................................................................51

*U.S. v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) ..........................................................42

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ..........................................................57

*Ward v. Clark Cty.*,
  285 F. App'x 412 (9th Cir. 2008) ......................................................50

*Wasco Prods. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006) ............................................................50

## Statutes

9 U.S.C. § 1291 ...........................................................................................1, 2

28 U.S.C. §§ 1332(a) and (b) .........................................................................1

29 U.S.C. § 159 ............................................................................................63

California Worker's Compensation Act ...........................................5, 33, 36, 66

4840-5095-5514.5

## **Other Authorities**

Ninth Circuit Rule 28.............................................................................37

Ninth Circuit Rule 28-2.2 ...............................................................38, 40

Ninth Circuit Rule 28-2.5 ..................................................................38

Fed. R. App. P. 28(a)(4)(C) ..................................................................2

Fed. R. App. Proc. 28 .........................................................................37

Fed. R. App. 4(a) ...................................................................................2

Fed. R. Civ. P. 8..................................................................................48

Fed. R. Civ. P. 56(d)...........................................................................52

Federal Rule of Civil Procedure 8(a) ..................................................6

Federal Rule of Civil Procedure 15(a)(2) ...........................................6

Federal Rule of Civil Procedure 15(d)...........................................6, 52

Federal Rule of Civil Procedure 56.........................7, 12, 13, 16, 17, 53

4840-5095-5514.5

## JURISDICTIONAL STATEMENT

### I.  The District Court's Subject Matter Jurisdiction

The District Court had jurisdiction under the provisions of 28 U.S.C. §§ 1332(a) and (b) because: (i) the amount in controversy exceeds $75,000; (ii) there exists diversity of citizenship between Plaintiff-Appellant Renaldo Navarro, a California resident, and Defendant-Appellee Menzies Aviation, Inc. d/b/a Menzies ( "Menzies"), which is incorporated in Delaware and headquartered in Texas.  [SER-5-10.]

Menzies removed this matter from the Superior Court of the State of California, County of San Francisco, on December 16, 2019 to the United States District Court for the Northern District of California in response to Navarro's Complaint filed on October 23, 2019. [4-ER-623; SER-5-10.]

### II.  This Court's Subject Matter Jurisdiction

The United States Court of Appeals for the Ninth Circuit has subject matter jurisdiction pursuant to 9 U.S.C. § 1291.  Section 1291 authorizes the taking of an appeal from any final decisional of the district courts of the United States in the Circuit.   On October 15, 2020, Menzies filed a Motion for Summary Judgment, or in the Alternative Partial Summary Judgment (the "Motion") seeking summary judgment of all Navarro's claims.  [SER-

1

21-45.]  On February 8, 2021, the District Court granted the Motion in its entirety and issued judgment in favor of Menzies.  [1-ER-2-7.]  Pursuant to 9 U.S.C. § 1291, that final order on the Motion is properly appealable.

### III.    Relevant Dates Governing This Appeal

Pursuant to Fed. R. App. P. 28(a)(4)(C) and Circuit Rule 28-2.2.(c), Menzies states the following information:

(i)     Date of entry of judgment or order appealed from: February 8, 2021

(ii)    Date of filing Navarro's Notice of Appeal: February 26, 2021

(iii)   Rule under which Navarro's appeal is timely: Fed. R. App. 4(a), which requires a notice of appeal be filed within 30 days after the entry of judgment or order appealed from.

4840-5095-5514.5

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

A.     Whether this Court should strike Navarro's Opening Brief in its entirety when Navarro failed to comply with multiple mandatory provisions of the Federal Rules of Appellate Procedure and this Court's Circuit Rules prescribing the content and format for an appellant's brief?

B.     Whether the District Court acted within its substantial discretion by declining to consider new allegations raised by Navarro for the first time in opposition to summary judgment when the District Court correctly identified that Navarro had never put Menzies on fair notice of such new contentions in the Complaint, during discovery, or at any other time prior to submitting his summary judgment opposition materials?

C.     Whether the District Court acted within its substantial discretion by refusing to reopen discovery on the new allegations raised by Navarro for the first time in opposition to summary judgment when this Court's consistent authority directs district courts to rule on summary judgment without considering such improperly submitted new material and where the District Court found Menzies would be substantially prejudiced by reopening discovery years after Navarro's termination?

3

D.     Whether this Court should even consider the new material submitted by Navarro as a proper part of the record on appeal when the District Court concluded the material had never been put at issue in the case prior to summary judgment and therefore should not be considered part of the record on summary judgment?

E.     Whether the District Court correctly determined Navarro failed to state a *prima facie* case of race and/or national origin discrimination when he failed to identify a similarly situated non-Filipino employee treated more favorably by Menzies?

F.     Whether the District Court correctly determined that even if Navarro had stated a *prima facie* case of discrimination, he could not overcome Menzies' honest and legitimate belief that he engaged in misconduct when he had no evidence, other than his own speculation, to call into question Menzies' motives for its actions and therefore could not satisfy his burden to show pretext by substantial evidence?

G.     Whether Navarro satisfied his *prima facie* burden on his retaliation claim to show he engaged in protected activity when the alleged activity at issue was in fact a violation of federal labor policy prohibiting

4

direct dealing with unionized employees and put Menzies at risk of unfair labor practice allegations?

      H.    Whether, even if Navarro had engaged in protected activity, the District Court correctly determined Navarro could not overcome Menzies' honest and legitimate belief that he engaged in misconduct when he had no evidence, other than his own speculation, to call into question Menzies' motives for its actions and therefore could not satisfy his burden to show pretext by substantial evidence?

      I.    Whether the District Court correctly granted summary judgment on Navarro's intentional infliction of emotional distress claim when it indicated that such a claim would be preempted by the California Worker's Compensation Act and where Navarro came nowhere close to showing extreme and outrageous conduct by Menzies?

4840-5095-5514.5

## <u>PRIMARY AUTHORITY PER CIRCUIT RULE 28-2.7</u>

Pertinent authority, excepting the Federal Rules of Appellate

Procedure and the Ninth Circuit Rules include:

Federal Rule of Civil Procedure 8(a):

> (a) Claim for Relief. A pleading that states a claim
> for relief must contain:
>
> > (1) a short and plain statement of the grounds
> > for the court's jurisdiction, unless the court
> > already has jurisdiction and the claim needs
> > no new jurisdictional support;
> >
> > (2) a short and plain statement of the claim
> > showing that the pleader is entitled to relief;
> > and
> >
> > (3) a demand for the relief sought, which may
> > include relief in the alternative or different
> > types of relief.

Federal Rule of Civil Procedure 15(a)(2):

> (a) Amendments Before Trial.
>
> > (2) *Other Amendments.* In all other cases, a
> > party may amend its pleading only with the
> > opposing party's written consent or the court's
> > leave. The court should freely give leave
> > when justice so requires.

Federal Rule of Civil Procedure 15(d):

> (d) Supplemental Pleadings. On motion and
> reasonable notice, the court may, on just terms,
> permit a party to serve a supplemental pleading

setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Federal Rule of Civil Procedure 56:

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

4840-5095-5514.5

purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

8

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;

> (2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

> (4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

> (1) grant summary judgment for a nonmovant;

> (2) grant the motion on grounds not raised by a party;or

> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief

— that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

10

## STATEMENT OF THE CASE

I. **Factual Summary**

A. **Navarro Understood The Importance Of Following Policy And Demonstrating Proper Leadership**

In September 2005, Navarro began working for Aircraft Service International, Inc. ("ASIG") as a Fueler providing ground service to commercial passenger airlines at San Francisco International Airport ("SFO"). [2-ER-200.] A local of the Service Employees International Union (the "Union") represents these SFO Fuelers, and therefore represented Navarro for a period of time. [2-ER-158.] BBA Aviation ("BBA") previously owned ASIG, and during BBA's ownership, ASIG promoted Navarro to Fueling Supervisor, giving him additional responsibilities that included working effectively with Fuelers and managing their workload. [2-ER-158; 2-ER-202-04.] The Supervisor duties also included basic shift oversight of fueling operations, assigning Fuelers to service flights and when to take breaks, and "maintaining harmony among coworkers and resolving grievances." [3-ER-414; 2-ER-259-60; 3-ER_380-83.]

As a supervisor, Navarro understood he held a leadership and management role. [2-ER-205.] He also agrees it was important to: (i) follow and reinforce company policies; (ii) set a positive example for non-

11

supervisors; (iii) support other members of management before rank-and-file employees; (iv) work effectively with other supervisors and not undermine their authority; (v) avoid involving rank-and-file employees in his personal grievances or pressuring them to get involved in disputes; and (vi) explain documents before asking employees to sign such materials. [2-ER-205-11.]

### B. After Menzies Acquired ASIG, Navarro Became Subject To Menzies' Conduct Policies And Expectations

On February 1, 2017, Menzies acquired the ASIG business, and in connection with this change, all ASIG employees – including Navarro – became subject to Menzies' policies and conduct standards. [2-ER-158; 2-ER-202-03; 3-ER-296; 3-ER-297-98; 3-ER-299-300.] These expectations included prohibitions against "the use of abusive, malicious, and/or threatening … conduct toward any coworker … that causes or tends to cause a threatening, hostile or intimidating work environment." [3-ER-416-27.] Menzies also expects that "We all have a right to work free from intimidation and harassment and in an environment where we feel safe and comfortable." [3-ER-428-33.] It further expects "all employees to treat each other with courtesy, dignity and respect." [*Id.*]

12

**C.    Menzies Coached Andrew Dodge On Operational Improvements In Response To Complaints By Navarro**

In February 2016, ASIG hired Andrew Dodge as a Fueler, and he earned a promotion to supervisor about one year later.  [3-ER-379-80; 3-ER-394-95.]  However, after becoming supervisor, Dodge had growth opportunities that resulted in him fielding questions about when Fuelers would receive breaks.  [3-ER-395.]  And while some Fuelers had concerns with Dodge's operations-management abilities, the only complaints Menzies received about Dodge came either from Navarro, with pictures of Dodge purportedly asleep on the job, or merely relating to Fuelers missing meal and rest breaks.  [2-ER-181; 2-ER-184; 2-ER-263-64; 2-ER-275-76; 2-ER-285; 3-ER-312-313; 3-ER-345; 3-ER-367-68.]  **None** of these complaints arose from the purported harassment described in Navarro's Opening Brief and first raised in this matter in opposition to summary judgment (*see infra*). [*Id.*]

Menzies took action in response, which included Dodge's managers speaking to him about these concerns, performing quality assurance checks on his work, and giving Dodge guidance and direction on how to improve. [2-ER-264; 2-ER-283-84; 3-ER-314; 3-ER-341-42; 3-ER-349-50; 3-ER-350-31; 3-

ER-397; 3-ER-392-93; 3-ER-404; 3-ER-405.]  As for Navarro's allegations

about sleeping on the job, Dodge disclosed to Menzies that he suffers from

sleep apnea and often napped after his shift before driving home.  [2-ER-

265; 2-ER-267-77; 3-ER-386-87; 3-ER-388.]  Menzies also determined that the

pictures of Dodge sleeping occurred during off-hours in non-working

areas, such that there was no behavioral concern for the instances about

which Navarro had complained.[1]  [2-ER-277-78; 3-ER-317-19; 3-ER-342-43;

3-ER-343-44; 3-ER-389-90.]  Once again, **__none__** of the complaints or other

information provided to Menzies throughout this process included

allegations of harassment or mistreatment by Dodge of the Fuelers; rather,

they all pertained to operational issues only.  [2-ER-172; 2-ER-181; 2-ER-

184; 2-ER-188; 2-ER-285; 3-ER-406-07.]

### D.    Navarro Butted Heads With Dodge, Resulting In Union Complaints Of Fuelers Being Pressured To Sign A Petition

Dodge frequently worked the afternoon "swing" shift before handing

off to Navarro, who typically worked the graveyard shift.  [2-ER-212; 3-ER-

---

[1] If anything, Menzies had an obligation to reasonably accommodate
Dodge, and because there was no issue with his sleeping during off-hours,
Menzies' handling of Plaintiff's complaints about Dodge's disability was
completely appropriate.

4840-5095-5514.5

378; 3-ER-380-82; 3-ER-391.] Dodge also sometimes worked the graveyard shift to cover days off or call offs. [3-ER-391.]

While Dodge was complimentary of Navarro's work, Navarro felt Dodge was "doing bad things to him" and complained to Menzies, though such complaints occurred long before the relevant timeframe for this matter. [2-ER-205-06; 2-ER-207; 2-ER-208; 2-ER-209; 2-ER-213-14; 2-ER-215; 2-ER-216; 3-ER-391.] A supervisor colleague who witnessed the friction between the two thought that while both behaved childishly, Navarro "had it out for Dodge and was regularly taking actions that undermined Dodge." [2-ER-169-70.] Navarro admits telling Dodge he was doing a poor job apportioning work, providing Fuelers breaks, and was causing delays. [2-ER-225; 2-ER-226-27.]

Menzies first learned of a petition circulating about Dodge when the Union informed Human Resources Manager Tracy Aguilera that Fuelers were complaining about being forced to sign a petition. [3-ER-302-04; 3-ER-329-30; 3-ER-331-32; 3-ER-333.] Fuelers were also reporting directly to Dodge that Navarro was pressuring them to sign a petition complaining about him. [3-ER-395-96; 3-ER-400-01; 3-ER-402-03.]

15

### E. After Dodge Reported Navarro's Actions, Menzies Suspended Navarro To Allow For An Investigation

On August 16, 2018, Dodge reported to his managers what Fuelers were sharing regarding being forced to sign a petition by Navarro. [3-ER-397.] To commence an investigation, his managers asked Dodge to summarize his concerns in writing, which Dodge did detailing how he felt Navarro was mistreating him. [3-ER-398; 3-ER-400-01; 3-ER-434-36.] Dodge included with his written submission a screen shot of a text message Navarro authored appearing to threaten Dodge with a petition. [2-ER-221; 2-ER-227-28; 3-ER-434-36.]

At the time Dodge made this complaint, Navarro had not yet provided the petition to Menzies but later did. [2-ER-229.] It complained about the way Dodge ran the operation, contending fuelers were not taking breaks because of the way Dodge sets up flights and that Dodge blamed fuelers for flight delays. [3-ER-437-40.] The petition contained no mention of the sort of allegations against Dodge described in Navarro's Opening Brief and first raised in this matter in opposition to summary judgment (*see infra*). [*Id.*; SER-46-77.] Navarro had signed that petition. [2-ER-213; 2-ER-217; 3-ER-437-40.]

16

Menzies investigated the circumstances surrounding the petition, including what Dodge had reported about Fuelers being pressured by Navarro to sign it. [3-ER-304-05; 3-ER-308.] In connection with that investigation, Duty Manager John Qually informed Navarro on August 23, 2018 that Menzies was suspending him and attempted to deliver a document memorializing the suspension, which Navarro refused to sign. [2-ER-274; 2-ER-280-81; 3-ER-441-42.] Following that interaction, Qually submitted a written statement reporting that Navarro had said that "As far as the petition he said that all the guys that signed it are all adults and can read what it's all about before signing it and making it sound like they did so of their own free will." [2-ER-279-81; 2-ER-281-82; 3-ER-441-42.] Qually also reported that Navarro said he hoped Menzies would terminate him "so he can go to his Lawyer and file a suit against the company for being biased or harassment and get 2 years pay like he did with [a previous employer]." [*Id.*]

## F. Multiple Sources Of Information Informed Menzies That Navarro Had Pressured Fuelers To Sign The Petition

After receiving Dodge's complaint and the petition, Menzies' SFO Director of Operations Raul Vargas directed Safety Supervisor Kevin

17

Blumberg to investigate all the circumstances surrounding the petition and Dodge's report. [3-ER-332-33; 3-ER-334; 3-ER-335; 3-ER-359.] As part of his investigation, Blumberg instructed Navarro to submit a statement explaining his side of the story, which Navarro did. [2-ER-231-32; 2-ER-243; 2-ER-244; 3-ER-443-44.] **<u>Nowhere in that statement did Navarro contend Dodge harassed other Fuelers</u>**; rather, it referred to the same pictures Menzies had determined did not show Dodge sleeping on the job. [3-ER-443-44.]

During the investigation, three employees provided written statements describing pressure to sign the petition, with one such employee specifically identifying Navarro as the perpetrator. [3-ER-305; 3-ER-335; 3-ER-337; 3-ER-354-55; 3-ER-445-48.] Another supervisor also reported that Navarro asked him to sign the petition and specifically told Menzies he felt pressured to do so.[2] [2-ER-169-70; 3-ER-357-59.] Navarro admits he has no factual basis to dispute whether any of this information

---

[2] That same supervisor never requested any other employees sign the petition because in his capacity as a supervisor, he believed it would be inappropriate to do so. [2-ER-169.]

4840-5095-5514.5

was provided to Menzies. [2-ER-223.] In addition, multiple Fuelers confirm under oath that they felt either pressured or misled by Navarro to sign the petition, with some stating Navarro approached them multiple times after they refused to sign and they witnessed Navarro doing the same to other Fuelers. [2-ER-172; 2-ER-175; 2-ER-178; 2-ER-186; 2-ER-274; 3-ER-352-53.] Still other Fuelers confirm that Navarro gave them a signature page to execute without explaining its purpose, adding they would not have signed it had they known it related to a petition against Dodge. [2-ER-175; 2-ER-186; 2-ER-274; 3-ER-352-53.]

### G. Menzies Terminated Navarro For The Sole Reason That It Cannot Allow Management To Harass Subordinates

As Menzies' investigation was developing this information, Aguilera initially recommended against termination of Navarro. [3-ER-346-47; 3-ER-356.] However, both Blumberg and Vargas challenged that recommendation, with Vargas feeling anything short of termination was not proper because of what he viewed as the severity of the conduct involved. [3-ER-309-11; 3-ER-352; 3-ER-362-63.] After they discussed the full scope of the situation and the investigation findings, Aguilera's opinion changed and she agreed termination was appropriate. [3-ER-309-

11; 3-ER-352; 3-ER-365; 3-ER-365-67.] Vargas, as the decision-maker, then instructed Aguilera to proceed with Navarro's termination. [3-ER-449-54.]

The sole reason for Vargas's decision was his belief that Navarro harassed Fuelers by pressuring at least some of them to sign the petition. [3-ER-301-02; 3-ER-336; 3-ER-338-39; 3-ER-339-40; 3-ER-449-54.] Though some signed voluntarily, Vargas felt even one situation of a supervisor pressuring rank-and-file employees to be inappropriate, necessitating termination as a corrective measure. [3-ER-347-48; 3-ER-352; 3-ER-356; 3-ER-360-61; 3-ER-363-64.] Vargas captured this reasoning clearly in writing, stating that because Menzies had concluded that Navarro "as a member of the management team, was soliciting signatures and intimidating Employees to sign a petition … We cannot allow our management team to harass our people in any way." [3-ER-448-54.] Aguilera then informed Navarro of the decision. [2-ER-233-34.] Navarro claims the reason she provided is that as a member of management, he should not have signed a petition against another manager. [2-ER-234.] Navarro admits both that no other reason was given to him, and that he has no tangible evidence – only speculation – that either his race or national origin played any role in the suspension and termination decisions. [2-ER-234; 2-ER-240-41.]

20

**H.      Further Petitions Parroted The Same Information, With Fuelers Continuing To Deny Mistreatment By Dodge**

At some point *after* Navarro's termination, Menzies received a second petition regarding Dodge repeating the substance of the previous petition investigated by Menzies and resulting in Navarro's termination.  [3-ER-455-58.]  As with the first petition, the specific allegations focused on operational issues such as delays and missed breaks and contained no allegation of actual harassment by Dodge.  [*Compare* 3-ER-437-40 and 3-ER-455-58.]  Thereafter, Union shop steward Rafael Vargas appears to have prepared a letter noting the submission of two prior petitions involving Dodge, although Menzies has no copy of that letter in any of its own files.[3] [2-ER-158; 3-ER-459-60.]  It was this letter – lacking any signatory support or indicia of personal knowledge – that first articulated purported "harassment" by Dodge, but continuing to base such contentions on flight delays and missed breaks.  [3-ER-459-60.]  Vasquez also worked on a

---

[3] Menzies only learned about these documents when it obtained copies from Plaintiff's production made with his Rule 26(a) Initial Disclosures.  [2-ER-158; 2-ER-164.]

different part of the operation from Dodge, raising questions about his

personal knowledge.  [3-ER-396-97.]

Once again then, the materials – even those that Menzies never

received –pertain to the same complaints addressed in the first petition

which Menzies had already investigated.  [3-ER-315-16; 3-ER-455-58; 3-ER-

459-60.]  And as noted, multiple Fuelers – including those who wanted to

sign the petition out of concern for operational problems – disclaimed any

contention that Dodge engaged in any of the type of harassing,

intimidating or other similar behavior that prompted Vargas to terminate

Navarro's employment.  [2-ER-172; 2-ER-181; 2-ER-184; 2-ER-188.]

## II.  **PROCEDURAL BACKGROUND**

### A.  **Navarro First Filed An NLRB Charge Against Menzies, Allowing His Civil Contentions To Grow Stale**

Navarro's first salvo against Menzies was not this civil action, but

rather an unfair labor practice charge filed against Menzies with the

National Labor Relations Board ("NLRB") on November 13, 2018.  *See*

*Menzies Aviation, Inc.*, 47 NMB 10, 10 (2019).  Navarro alleged in that NLRB

charge only that Menzies terminated him for his involvement in the

petition, making no mention of any race or national origin discrimination allegations nor any accusations whatsoever against Dodge. *Id*.

## B. Navarro's Complaint Omitted Any Mention Of The Allegations First Raised At Summary Judgment

Only after his clams had sat for more than a year before the determination that the NLRB lacked jurisdiction did Navarro actually bring this civil suit on October 23, 2019. [*See* 4-ER-623-38; *Menzies Aviation, Inc.*, 47 NMB at 10.] Navarro's Complaint advances four causes of action alleging (i) race and national origin discrimination, (ii) retaliation, (iii) wrongful termination in violation of public policy, and (iv) intentional infliction of emotional distress ("IIED"). [4-ER-623-38.]

Similar to the petitions and other information received by Menzies during Navarro's employment, Navarro's Complaint contained nothing putting Menzies on fair notice of the allegations first raised in opposition to summary judgment. [*See* 4-ER-623-38.] Specifically in his pleading, Navarro alleges that the complaints against Dodge which form the basis for the petition were operational only, <u>contending that</u>:

> It was common for DODGE to not respond to calls from fuelers because he frequently slept while on-duty. PLAINTIFF received many complaints from his fuelers about DODGE's unprofessional

> behavior. DODGE frustrated fuelers because he was unreliable about giving them meal and rest period opportunities, and he was often unavailable to help them troubleshoot problems with flights.
>
> DEFENDANTS did not address DODGE's behavior after PLAINTIFF complaint. PLAINTIFF complained to DEFENDANTS about DODGE about DODGE repeatedly in 2017. PLAINTIFF issued most of these complaints to RENIL and QUALLEY, but he was ignored.
>
> ….[O]n several occasions, [NAVARRO] called DODGE but he did not reply to the cellphone because he was sleeping while on-duty.

[4-ER-626.] Navarro's Complaint alleges no incident of racial or national origin discrimination by Dodge toward anyone; at most it remarks that "DEFENDANTS displayed favoritism for DODGE as a Caucasian supervisor over the Filipino's [sic] supervisors like [NAVARRO]." [*Id.*]

## C. Navarro's Written Discovery Responses Gave No Notice Of Alleged Harassment By Dodge Against Filipino Fuelers

Following removal to the District Court, the parties exchanged initial disclosures, discovery requests, and documents. [2-ER-18-20; 2-ER-22-45.] Although the COVID-19 pandemic began while this case was pending, the parties continued with both written and oral discovery. [*See id.*; *see generally*, 2-ER-46-129; 2-ER-190 – 3-ER-412.] In response to the pandemic, the District Court amended the discovery and summary judgment

24

schedule for the case, and vacated the originally set trial date.  [4-ER-600; 4-ER-608; 4-ER-615.]  However, at no time prior to the close of discovery or even in opposition to summary judgment did Navarro move for or otherwise request additional time for discovery or otherwise contend he had not had sufficient opportunity to conduct discovery in this action.  [*See generally*, 4-ER-653-63.]

As part of written discovery, Navarro served initial disclosures on Menzies in March 2020, identifying twelve individuals as witnesses likely to have discoverable information.  [2-ER-18-20.]  Navarro's description of the information that such witnesses might have is notably vague: "[t]hey are likely to have discoverable information concerning the allegations made *by Plaintiff in his complaint*, including but not limited to matters related to: *Plaintiff's termination, Plaintiff's emotional distress due to his termination, and Plaintiff's general day-to-day working conditions*."  [*Id.*]  Such language gave no indication to Menzies that it should investigate any type of alleged discriminatory or harassing conduct by Dodge directed against Navarro or any other Fueler.  [*Id.*]

Navarro and his counsel continued to represent that there were no allegations of discrimination or harassment by Dodge against Fuelers

25

generally thereafter.  The first special interrogatory Menzies propounded directed Navarro to identify all potential witnesses, and the second directed him to "state *with particularity* the knowledge that each alleged witness … has *that is in any way relevant* to the allegations contained in the Complaint."  [2-ER-23-26.]  In response, Navarro made clear that the only available information was regarding alleged discrimination *against him by Menzies* – not any conduct by Dodge directed either at him or other Fuelers.  [*Id.*]  He specifically stated for each named alleged witness that the information those identified was regarding "discrimination committed against Plaintiff [Navarro]."  [2-ER-24.]  As with his Initial Disclosures, he gave no indication at all that any witness had any supposed information about general discrimination or harassing conduct by Dodge directed either at him or anyone else.  [2-ER-23-26.]

### D. Navarro Maintained His Consistent Story At Deposition, And Never Attempted To Investigate Allegations Of Harassment Against Dodge Through His Own Discovery

Navarro and counsel maintained this limited characterization of Navarro's claims during the multiple depositions taken in this action.  [*See generally*, 2-ER-46-129; 2-ER-190 – 3-ER-412.]  During his own deposition, Navarro stated in response to repeated questions probing why he believed

26

his race and/or national origin played a role in his termination with comments like: "First of all, I'm Asian. He's white. Second, all the problems, we have brought it up to management. And then why is it that myself, who is taking action in behalf of the others, I am the one being terminated and not himself?" [2-ER-237.] At no point during this lengthy line of questioning did Navarro identify any specific behavior by Dodge, let alone the contentions that surfaced in opposition to summary judgment (*see infra*). [2-ER-234-41.] Rather, he could only articulate his contentions about discriminatory motives with his admittedly speculative beliefs such as "I have a lot of Asian coworkers that when they commit a mistake, they are already terminated," untethered to any specific facts at all, let alone assertions about Dodge's behavior. [2-ER-238.]

Navarro's own strategy in pursuing discovery also reflects the reality that both his opposition to summary judgment (and now his principal arguments on appeal) depend upon contentions for which he never gave Menzies fair notice. [2-ER-31-45; SER-15-20.] **None** of the written discovery propounded by Plaintiff ever suggested exploration by Navarro into discriminatory or harassing conduct directed by Dodge at either Navarro or other employees. [*Id*.] None of the documents Navarro

produced gave Menzies any greater level of notice. [2-ER-138; 3-ER-455-64; 4-ER-592; SE-7-10.] Indeed, even a letter allegedly written by Vasquez regarding Dodge *months after Navarro's termination* does not allege any broad-based discrimination against Navarro or other Filipino Fuelers. [3-ER-459-64.] Rather, the letter merely states that Dodge "continuous [sic] to abuse his authority and at times harass Fuelers under his charge."[4] And despite deposing five different Menzies witnesses and inquiring extensively about Dodge's performance issues and complaints about him, Plaintiff's counsel *never inquired* about the types of allegedly overt behavior by Dodge or reports of the same to Menzies Navarro later asked the District Court to consider, and now asks this Court to endorse his sandbagging strategy. [SER-101-184.]

## E. Navarro Opposed Summary Judgment Relying Almost Entirely Upon New Allegations And Inadmissible Evidence

After the close of discovery, Menzies moved for summary judgment, or in the alternative, summary adjudication, on all of Navarro's claims.

---

[4] This letter was never provided to Menzies, but only sent via text message and then supplied to Navarro several months after Navarro's termination. [3-ER-459-64.]

[SER-21-45.] Its motion articulated both Navarro's lack of evidence of race or national origin discrimination or protected activity, Menzies' good-faith reasons for termination that Navarro could not prove were pretextual, and that Navarro's claims were neither outrageous nor sufficient to overcome Workers' Compensation Act preemption. [*Id.*]

Navarro built his entire opposition on a completely new set of non-operational accusations about Dodge supposedly harassing Filipino fuelers and complaints to Menzies about such conduct – allegations that had somehow avoided all mention in the petition or other written complaints about Dodge, in the Complaint, and in discovery – including both Navarro's testimony when asked to identify his evidence and his counsel's questioning of Menzies' witnesses. [SER-46-77.] In addition to its eleventh-hour character, these new allegations in the summary judgment opposition material (which Navarro also uses attempting to frame this appeal) largely depended on inadmissible witness "opinion" or "belief," hearsay, and speculation without foundation and without personal knowledge. [3-ER-477-88; 3-ER-494-501; SER-21-46.] In its reply brief, Menzies made thorough evidentiary objections based on these deficiencies to Navarro's alleged "evidence." [SER-78-95.]

**F.** **After Requesting Supplemental Briefing, The District Court Granted Summary Judgment After Declining To Consider Navarro's New Material Or To Reopen Discovery**

The District Court held a first hearing on Menzies' motion on December 17, 2020. [4-ER-661.] The District Court then directed both parties to provide supplemental briefing on several issues, including whether it could and/or should consider the new allegations Navarro relied on and whether it should reopen discovery. [SER-185-86.]

After each party provided briefs, the District Court issued an Order on February 8, 2021 granting Menzies' Motion for Summary Judgment in its entirety. [1-ER-2-7.] The District Court reiterated in that Order that Navarro had not properly put Menzies on notice of his new allegations during discovery, specifically observing that prior to summary judgment, "in all his filings and all his discovery conduct, Navarro told a consistent story" only to then tell a "new story" in opposition to summary judgment. [1-ER-3-4.] However, according to the District Court, "those allegations were not made in the complaint, nor were they referenced in Navarro's initial disclosures, the depositions taken by Navarro's lawyer, Navarro's own deposition, or any of the other filings made prior to the motion for summary judgment." [1-ER-3-7.] The District Court accordingly found it

would neither consider Navarro's new allegations nor re-open discovery on them, stating that:

> There are three possible explanations for the failure to disclose these noteworthy allegations earlier in the litigation. One is that Navarro's lawyers simply forgot. Another is that they intentionally concealed them with the intent of sandbagging Menzies. A third is that the allegations were themselves fabricated in an attempt to salvage the case in the face of a strong summary judgment motion. Regardless of which explanation is correct (and the Court has no way of telling), it would be unfair to allow Navarro to make such a sharp pivot so late in the litigation. [1-ER-4.]

Explaining the rationale for such unfairness, the District Court observed that "Menzies was not on notice of the allegations until after the close of discovery, and thus had no opportunity to explore them in discovery or investigate them internally." [*Id.*] It then added that "More than two years have passed since Navarro was fired in August 2018, many employees have moved on, and memories have likely faded." [*Id.*] For these reasons, the District Court refused to allow Navarro to circumvent principles of fair notice and the opportunity to discover, present and rebut relevant evidence. [1-ER-3-4.]

Having thus exercised its discretion not to consider Navarro's new material nor permit additional discovery, the District Court found Navarro failed to state a *prima facie* case of either race or national origin discrimination based on the fact that Navarro's only *proper* evidence related to complaints against Dodge for discreet operational concerns only, meaning Navarro could not show Menzies treated similarly situated non-Filipino employees differently. [1-ER-4-5.] The lower court added that even if Navarro could have satisfied his *prima facie* burden, Menzies had valid business reasons for its decision and Navarro failed to introduce proper evidence of pretext. [*Id.*] As for his retaliation and wrongful termination claims, even as the District Court concluded Navarro engaged in protected activity[5], it reiterated Menzies' legitimate business reasons – harassing other Fuelers to sign the petition, rather than the content of the petition itself – for Navarro's termination and the absence of legitimate evidence of pretext. [1-ER-5-6.] These same reasons also supported the

_____

[5] Notably, the District Court did not address Menzies' argument that Navarro's signing of the petition did not constitute protected activity because it consisted of unlawful direct dealing under federal labor laws. [1-ER-5-6.]

District Court's determine that even if Navarro's intentional infliction of emotional distress claim "were not preempted by the California Worker's Compensation Act, Navarro has not shown that his termination was wrongful, much less that it shocks the conscience." [1-ER-6.]

Navarro filed his request to appeal the District Court's Order on February 26, 2021. [4-ER-645-46.]

## SUMMARY OF THE ARGUMENT

This Court should strike Navarro's brief for substantial non-compliance with the Federal Rules of Appellate Procedure and this Circuit's Rules and summarily resolve this appeal in Menzies' favor. Navarro's Opening Brief fails to satisfy multiple provisions of the applicable rules, and such non-compliance provides a valid basis to strike his brief and thereafter dismiss his appeal.

Even if the Court elects to consider Navarro's brief, it should affirm the District Court's grant of complete summary judgment to Menzies. The District Court acted well within its substantial discretion by declining to consider allegations first raised by Navarro in opposition to summary judgment and declining to re-open discovery on such new material because doing so would unfairly prejudice Menzies. Navarro never put such material – which clearly sought to tell a different story than that pled by Navarro and pursued in discovery – at issue in this case at any point prior to summary judgment and he never availed himself of options available to request additional discovery prior to summary judgment. In such circumstances, this Court's authority is clear that the proper action for the District Court to take was to reject consideration of such new material and

rule on summary judgment. As a derivative consequence, such new material should not be considered properly part of the record on appeal and this Court should also decline to consider it.

The District Court correctly granted summary judgment to Menzies on Navarro's race and national origin discrimination cause of action, observing that Navarro could not even carry his *prima facie* burden when he failed to identify a similarly situated non-Filipino employee treated differently by Menzies. And even if he had carried that burden, Menzies clearly had a good faith belief that Navarro engaged in misconduct and therefore had a legitimate business reason for its decision. Navarro could not challenge that reason as pretext for discrimination with nothing beyond his speculation as to Menzies' motives.

Navarro also failed to state a *prima facie* case of retaliation when the conduct he alleged as protected activity in fact ran afoul of federal labor law and policy prohibiting direct dealing with unionized employees and put Menzies at risk of unfair labor practice allegations. Even if Navarro had satisfied his burden to show he engaged in protected activity, Menzies had a good faith belief that Navarro engaged in misconduct and therefore had a legitimate business reason for its decision. As with his

35

discrimination claim, Navarro could not challenge that reason as pretext

for retaliation with nothing beyond his speculation as to Menzies' motives.

Finally, the District Court correctly granted summary judgment on

Navarro's intentional infliction of emotional distress cause of action, both

in suggesting that such a claim is preempted by the California Worker's

Compensation Act and noting that Navarro had not come anywhere close

to establishing extreme and outrageous conduct by Menzies.

## ARGUMENT

### I.    The Court Should Strike Navarro's Brief For Non-Compliance With The Federal Rules Of Appellate Procedure And Ninth Circuit Rules

The Federal Rules of Appellate Procedure and the Ninth Circuit

Rules (together, the "Rules") set forth specific and clear requirements for

the format of an appellant's brief and what that brief must include.  Fed. R.

App. Proc. 28.  Navarro's brief fails to meet multiple of these requirements.

For example, Rule 28 mandates that an appellant's brief contain a

jurisdictional statement which states:

> (A) the basis for the district court's or agency's
> subject-matter jurisdiction, with citations to
> applicable statutory provisions and stating relevant
> facts establishing jurisdiction; (B) the basis for the
> court of appeals' jurisdiction, with citations to
> applicable statutory provisions and stating relevant

> facts establishing jurisdiction; (C) the filing dates
> establishing the timeliness of the appeal or petition
> for review; and (D) an assertion that the appeal is
> from a final order or judgment that disposes of all
> parties' claims, or information establishing the court
> of appeals' jurisdiction on some other basis;

*Id.* at Rule 28(a)(4) (emphasis added). Navarro's jurisdictional statement
fails to contain all the items underlined above. It includes no citations nor
facts to support the District Court's basis for subject matter jurisdiction nor
any facts to support this Court's jurisdiction. Additionally, though Ninth
Circuit Rule 28 plainly requires that an appellant's jurisdictional statement
should include "the date of filing of the notice of appeal or petition for
review," Navarro's statement includes only the date of the final order of
the District Court, but no other dates establishing the timeliness of his
appeal. Ninth Circuit Rule 28-2.2.

The deficiencies with Navarro's brief are not limited to his non-
compliant jurisdictional statement. The applicable Rules also require that
"[p]ertinent constitutional provisions, treaties, statutes, ordinances,
regulations or rules must be set forth verbatim and with appropriate
citation," either following the statement of issues or in an addendum.
Ninth Circuit Rule 28-2.7. Navarro's submission neglects to include such

37

pertinent legal authority either in the body of his brief or as an addendum.
Navarro's brief also fails to properly attest to its length as required by
Ninth Circuit's Certificate of Compliance for Briefs, which demands that a
brief that uses a word count calculation to determine its length "must be
accompanied by Form 8." *Id.* at Rule 32-1(e) (emphasis added). Navarro's
brief does not include this mandatory form.

Moreover, Navarro's brief is devoid of any identification where in the
record each issue on appeal was raised and ruled, as required by Ninth
Circuit Rule 28-2.5. Specifically, the Rule requires the appellant "shall state
where in the record on appeal the issue was raised and ruled and identify
the applicable standard of review." Rather than include such information,
Navarro includes a series of statements including standards of review that
an unnamed "we" should follow. [Navarro's Opening Br. 30-31.]

Compliance with the Rules is mandatory. *Id.* 28-1(a). They set out
clear consequences for non-compliant briefs and allow the Court to strike
briefs that do not comply. *Id.* The Court has a history of dismissing
appeals with briefs that do not comply with the Rules. *See, e.g.*, *Christian
Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010);

*Dela Rosa v. Scottsdale Mem'l Hospital Sys., Inc.*, 136 F.3d 1241, 1243 fn. 1 (9th Cir. 1998); *Stevens v. Sec. Pac. Nat. Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

Independently, while Navarro may argue such deficiencies are minimal, taken in context, they are grounds for dismissal given the amount of time afforded to Navarro to submit his brief. The Court originally set the deadline for Navarro to submit his opening brief as June 7, 2021, and then moved that deadline to June 30, 2021 after releasing the case from the Mediation Program. [SER-188.] Navarro's counsel thereafter requested—and Menzies agreed to accommodate—two additional months for Navarro to file his opening brief. This should have been more than sufficient time for Navarro to complete a brief complying with this Court's requirements. His failure to do so has created additional work for Menzies, as Menzies should not have needed to complete sections in its own brief such as a compliant jurisdictional statement. *See* Ninth Circuit Rule 28-2.2. Accordingly, the Court should strike Navarro's non-compliant opening brief and appeal.

## II. <u>Standards Of Review</u>

This Court reviews both a District Court's decision to not reopen discovery and evidentiary ruling not to consider new material (Issues B

and C in Menzies' Statement Of Issues Presented For Review) first raised in opposition to summary judgment for abuse of discretion. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d. 600, 605 (9th Cir. 2002); *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002). Once a defendant files a summary judgment motion, a district court abuses its discretion only if the party opposing the motion diligently pursued its previous discovery opportunities, and if that party "can show how allowing additional discovery would have precluded summary judgment." *Id.* (quoting *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998)). Under the abuse of discretion standard, this Court will reverse the District Court's decision "only when the appellate court is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000). The issue of whether the District Court should consider the evidence Navarro proffered for the first time on appeal, and whether the District Court should re-open discovery was raised by the Court at its hearing on Menzies's Motion for Summary Judgment and Order for Supplemental Briefing. [SER-185-86.] The Court ruled on this issue in its Order Granting Defendant's Motion for Summary Judgment. [1-ER-3-7.]

This Court reviews a district court's grant of summary judgment (Issues D through I) on a *de novo* basis. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 447 (9th Cir. 2018); *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003). In making this determination, the appellate court must determine "whether the district court correctly applied the relevant substantive law." *Suzuki*, 330 F.3d at 1131-32. However, the Court may affirm summary judgment on "any ground supported by the record." *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir. 2007) (quotation marks and citation omitted). Additionally, while this Court reviews a District Court's decision on summary judgment *de novo*, it does so considering only the material properly in the record (Issue C), and not any additional material improperly raised by the non-moving party or first advanced on appeal. *Partridge v. Reich*, 141 F.3d 920, 926 fn. 4 (9th Cir. 1998); *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988). The issue of summary judgment was raised in Menzies' motion for summary judgment and ruled on in the District Court's Order Granting Defendant's Motion for Summary Judgment. [1-ER-3-7; SER-21-45.]

41

**III.** **The District Court Followed This Court's Authority And Acted Well Within Its Discretion By Refusing To Consider Navarro's New Material And Declining To Reopen Discovery**

When considering whether a District Court abused its decision by declining to consider new material first raised in opposition to summary judgment and declining reopen discovery, the bar is high. A District Court only abuses its discretion "when it makes an error of law." *U.S. v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009). To determine if there was an error of law, "the first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* at 126-62. Then, if the correct legal rule was not applied, the District Court abused its discretion. *Id.* at 1262.

Before the District Court was a decision whether to consider Navarro's evidence on an issue raised for the first time in opposition to Menzies' Motion for Summary Judgment. In making its determination, the District Court looks at if the issue is new or if the plaintiff raised the issue prior to opposing summary judgment. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (looking at complaint); *Stever v. U.S. Bancorp*, 680 F. App'x. 491, 492 (9th Cir. 2017) (looking at discovery). This is exactly the rule that the District Court applied in this case—looking to see if Navarro

42

had previously raised the issues and evidence he proffered in his opposition to Menzies' summary judgment motion.

In determining whether the District Court abused its discretion in deciding not to re-open discovery, the bar is similarly high: "[a] district court abuses its discretion only if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." *Panatronic USA*, 287 F.3d at 846 (internal quotation marks and citation omitted). Even ignoring that Navarro never made a motion to re-open discovery, he comes nowhere near meeting this standard, and given the weight of authority in this Circuit directing courts to do exactly as the District Court did here, Navarro cannot demonstrate any abuse of discretion.

## A. The Material Upon Which Navarro Relied At Summary Judgment Was Clearly "New" And Therefore Improper

Navarro labors to frame the argument differently from what the District Court correctly determined, contending that the allegations first surfacing in opposition to summary judgment were not "new" at all. But the reality and the record make plain that Navarro never put Menzies on

43

proper notice of the allegations that became the central thrust of his opposition to summary judgment (and now of this appeal). [Navarro's Opening Br. 32-34.] And the Court need look no further than Navarro's own language from his Complaint, Initial Disclosures, discovery responses, and deposition testimony to confirm what the District Court identified.

In his Complaint, for example, Navarro alleges that he "received many complaints about Dodge's unprofessional behavior" and that Dodge was "unreliable." [4-ER-626.] Indeed, Navarro alleges that it was Dodge's "behavior"—and behavior alone—about which he complained to Menzies. [*Id.*] Navarro makes not a single statement in his Complaint suggesting that Dodge was harassing, discriminating or retaliating against either Navarro or any person – rather, what is evident is that at most, Dodge was the source of operational complaints only. [4-ER-623-38.]

The information provided by Navarro in written discovery bears this out. While Navarro did identify witnesses in both his Initial Disclosures and Special Interrogatory responses, none of those instruments suggest the type of widespread discriminatory and harassing conduct by Dodge these individuals would later claim in declarations submitted in opposition to summary judgment. [2-ER-18-20; 2-ER-22-30.] For example, in his Initial

44

Disclosures, Navarro only indicated that the witnesses have discoverable information relating to "[Navarro's] termination, [Navarro's] emotional distress due to his termination, and [Navarro's] general day-to-day working conditions." [2-ER-18.] This is a far cry from alerting Menzies to the types of specific allegations that somehow avoided all mention in this litigation until summary judgment. Navarro's interrogatory responses follow the same theme; for each witness other than Dodge that he identifies, Navarro describes the knowledge the witness has as limited to "[Menzies'] <u>discrimination committed against Plaintiff</u> [Navarro]." [2-ER-24.] The description Navarro gives for witness knowledge goes only to discrimination <u>against Navarro</u>, and <u>not in any way against any other person</u> and certainly not anything of the sort of accusations about Dodge's conduct directed either at Navarro or any other Fueler. [2-ER-18-20.]

Navarro of course could have revealed the information concealed until summary judgment at his deposition when asked repeatedly what bases he had for his allegations of race and national origin discrimination and retaliation. [SER-46-77.] Instead, he made no reference to any conduct by Dodge of any sort, nor suggested any purported discrimination or harassment against any person other than himself in his deposition. [2-ER-

45

190-253.]  The closest Navarro got is an offhand remark that "I have a lot of Asian coworkers that when they commit a mistake, they are already terminated."  [2-ER-238.]  Alternatively, Navarro's own discovery could have suggested to Menzies that Navarro had more to say about Dodge other than issues relating to missed breaks, flight delays and other operational concerns.  Yet none of the written discovery propounded by Navarro made any effort to investigate or seek evidence from Menzies on such supposed information, and across five different depositions – including of Dodge himself – his counsel did not ask a single question suggesting the possible existence of the information that became Navarro's primary strategy in opposition to summary judgment.  [2-ER-31-45; SER-15-21.]  To contend that Menzies should have known about accusations of Dodge purportedly abusing Filipino fuelers when Navarro and his counsel did not themselves even attempt to take discovery on that point is baseless.

Even the after-the-fact letter from Vasquez (authored months after Navarro's termination and that Menzies never received), which Navarro argues should have put Menzies on notice of his new claims, does not support an argument that the District Court abused its discretion by declining to consider Navarro's new material and declining to re-open

46

discovery. [3-ER-459-64.] While the letter uses the term "harass," it also continues to re-state the same contentions against Dodge from the petition – in other words, the operational-in-character concerns (such as missed breaks and flight delays) that Menzies investigated and addressed directly with Dodge. [*Id.*] As with everything else Navarro asserted prior to summary judgment, nothing in the Vasquez letter mentions or suggests the type of harassing and discriminatory conduct levied against Dodge in opposition to summary judgment or otherwise indicates that Dodge treated Filipino Fuelers any different than other Fuelers. [*See id.*; SER-46-77.]

**B.    Navarro Cannot Avoid The Consequences Of His Sandbagging By Impugning Menzies' Discovery**

Backed into a corner by his own allegations and discovery responses (and ignoring the fact that he did not even attempt to take discovery on the purported actions of Dodge), Navarro turns to impugning Menzies' discovery, suggesting it should have somehow figured out there was more to this case than Navarro himself decided to make clear. [SER-206-210.] This argument of course ignores the very basic differences between the

roles of plaintiff and defendant and who bears the responsibility for defining the parameters of the issues in controversy.

Consistent with this basic principle, even as Fed. R. Civ. P. 8 creates a liberal pleading standard, it also contains important limits that respect a defendant's right to fair notice of the basis for theories of recovery and what it should understand as the scope of allegations against which it must defend. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). Consequently, a "complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman*, 232 F.3d 1271 at 1292-93. A defendant therefore is not expected to guess at what a plaintiff might be concealing in the course of litigation – rather, the plaintiff has the obligation to disclose the allegations and evidence upon which he will rely, and the failure to do so precludes the plaintiff from relying upon information not fairly revealed in the pleadings and discovery. *Id.* at 1292.

That is <u>exactly</u> what occurred in this matter – Menzies litigated its case and pursued its defenses in response to the scope of allegations that Navarro put forth in his pleadings and discovery responses. And Menzies was diligent in its discovery, seeking responses to interrogatories,

48

requesting and producing documents, and deposing Navarro. As part of those efforts, Menzies asked the type of "general contention" inquiries Navarro claims Menzies somehow failed to do (*see* Navarro's Opening Br. 33), and it was incumbent upon Navarro at that point to disclose all responsive information. Specifically, its interrogatories requested for Navarro to "state with particularity the knowledge that each alleged witness to the Complaint has." [2-ER-24-25.] Menzies also asked Navarro to identify any documents he had in support of any of his claims, and at his deposition, Menzies repeatedly asked Navarro to identify what evidence he believed supported his contentions of discrimination. [2-ER-29-30; 2-ER-234-41.] Nowhere in response to any of these inquiries did Navarro ever suggest the types of information about Dodge's alleged conduct toward Filipino Fuelers that would surface at summary judgment, let alone put Menzies on fair notice of them. [2-ER-24-25; 2-ER-29-30; 2-ER-234-41.] And there is no good-faith basis for Navarro to make excuses for his own discovery concealment by casting aspersions at Menzies' investigation into the scope of the allegations that Navarro created and always controlled.

49

**C.** **The District Court Correctly Exercised Its Discretion, Particularly Given Navarro's Failure To Avail Himself Of Mechanisms Available For Additional Discovery**

When a plaintiff opposes summary judgment relying on undisclosed allegations or claims, a district court should not re-open discovery, and instead should rule on a summary judgment considering only the factual record fairly developed by the plaintiff. *See Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014); *Ward v. Clark Cty.*, 285 F. App'x 412, 412 (9th Cir. 2008) (noting a party may not circumvent Rule 8's requirements by asserting a new allegation in response to a motion for summary judgment); *Pickern*, 457 F.3d at 968-69; *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings"); *Coleman*, 232 F.3d at 1292-93 ("[a] complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations").[6]  Having correctly found Navarro "sandbagged"

--------

[6] District courts in this circuit have consistently followed this rationale and refused to allow plaintiffs to avoid summary judgment by relying on allegations not in the complaint or disclosed during discovery. *Dixon v. Cty. of Sonoma*, No. 18-cv-07137-EMC, 2020 U.S. Dist. LEXIS

Menzies and rejecting his arguments to the contrary (and recycled on appeal), the District Court did exactly what this Circuit has repeatedly instructed should occur in these circumstances. Given what Navarro pled in his Complaint and disclosed in discovery – and perhaps more importantly, what he *did not* plead or disclose – there is simply no good-faith argument, in the face of this Circuit's clear authority – that the District Court abused its discretion in refusing to consider Navarro's new material.

Nor did the District Court abuse its authority by refusing to re-open discovery and noting Menzies would be unfairly prejudice if it allowed such an outcome. For starters, re-opening discovery would run contrary to the above-cited authority and the clear instructions of this Circuit. Nor would it have been a proper exercise for the District Court to allow additional discovery when Navarro himself did not avail himself of

---

191434, at *25 (N.D. Cal. July 1, 2020); *Allergia, Inc. v. Bouboulis*, No. 14-CV-1566 JLS (RBB), 2017 U.S. Dist. LEXIS 90844, *12 (S.D. Cal. June 13, 2017); *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1126 n.8 (N.D. Cal. 2015); *Hernandez v. Creative Concepts, Inc.*, 295 F.R.D. 500, 505 (D. Nev. 2013); *Burrell v. Cty. of Santa Clara*, No. 11-CV-04569-LHK, 2013 U.S. Dist. LEXIS 70555, at *32 (N.D. Cal. May 17, 2013); *Tribble v. Raytheon Co.*, No. CV 07-3058-JFW (SHx), 2009 U.S. Dist. LEXIS 142388, at *14 (C.D. Cal. Sep. 23, 2009).

51

mechanisms available to him to potentially put at issue the allegations that only surfaced in opposition to summary judgment. Indeed, Navarro had options for potential recourse if he felt he had not properly put Menzies on notice of the allegations first raised in opposition to the Motion. *See* Fed. R. Civ. P. 15(d) ("on motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading" alleging new material, potentially even potentially after discovery has closed); *see also* Fed. R. Civ. P. 56(d) (creating an avenue to reopen discovery *prior to filing a substantive opposition* to a summary judgment motion, stating that if the non-movant can show "by affidavit or declaration" specific inability to present facts "essential to justify its opposition," a district court may (but is not required) to allow time for additional discovery); *Pickern*, 457 F.3d at 968. Navarro could have sought relief from the Court using these mechanisms, or could have asked the Court to extend the discovery deadline prior to its closure. He chose not to, and instead attempted to avoid summary judgment by arguing a different case than the one he had alleged against Menzies and litigated up to that point.

The District Court rightly described such tactics as "sandbagging," and in the face of such concealment, it certainly was not an abuse of

discretion to refuse demanding of Menzies what Navarro felt unnecessary to even request – particularly after taking the extra step of ordering supplemental briefing before correctly applying this Circuit's consistent authority to the facts and history of this case. Navarro has not offered this Court anything to support a legitimate challenge to the District Court's exercise in discretion nor reason to disturb its decisions to decline consideration of the new material offered at summary judgment and rule on Menzies' motion without allowing for additional discovery.

## IV. The Material Properly Part Of The Record Makes Clear Navarro Could Not Satisfy His *Prima Facie* Burdens No Overcome Menzies' Legitimate Reasons For His Action As To Any Of His Claims

### A. Even On De Novo Review, This Court Evaluates Summary Judgment From The Material Properly Part Of The Record And Can Affirm On Any Basis Supported By That Record

While this Court reviews *de novo* a district court's grant of summary judgment, that review remains governed by Fed. R. Civ. P. 56. *Suzuki*, 330 F.3d at 1131. Consequently, this Court should only overturn a district court's grant of summary judgment where it finds the material that is properly part of the record on summary judgment shows the lower court acted improvidently. *Partridge*, 141 F.3d at 926 fn. 4; *Kirshner*, 842 F.2d at 1077. As a consequence, material improperly submitted by the non-

moving party in opposition to summary judgment – such as new

allegations never raised during discovery – does not supply a valid, record-

supported basis to challenge a district court's conclusions on appeal. *Id.*

Much as he did in opposition to summary judgment, Navarro

overwhelming hangs his arguments on appeal on the new allegations the

District Court declined to consider. However, if the District Court correctly

applied the law of this Circuit and acted within its discretion by refusing to

consider Navarro's new material and declining to reopen discovery – and it

did, as shown *supra* – that untimely information is effectively not properly

part of the record on appeal. *Id.* As a result, this Court should evaluate the

propriety of summary judgment considering the same information the

District Court evaluated and reject Navarro's invitation to consider

arguments that overwhelmingly depend on material outside the proper

record scope. The District Court, applying this approach and considering

only the evidence properly before it, correctly found Navarro failed to

show any material disputes of fact rendering summary judgment

inappropriate. [2-ER-3-7.]

The inadmissible character of Navarro's new evidence also

demonstrates why it is improper for Navarro to argue the factual story on

54

appeal that he has. Having found it improper to tell a "new story" for the first time at summary judgment and refusing to consider Navarro's new material, the District Court apparently found it unnecessary to consider the additional significant problems with Navarro's untimely submissions. [*Id.*] However, as Menzies noted in its Reply brief containing evidentiary objections, the purported evidence overwhelmingly underlying Navarro's "new story" depended upon opinions, speculation, hearsay, and inference without foundation or personal knowledge. [SER-78-95.] Repeatedly Navarro's witnesses conceded the motives attributed to Menzies are "opinions" and "belief" speculatively drawn from false conclusions that Menzies supposedly never addressed complaints about Dodge's performance. [3-ER-478-81; 3-ER-484-87; 3-ER-494-95.] Given that Fed. R. Civ. P. 56(c) requires that affidavits or declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated", Navarro's eleventh-hour speculative allegations attacking Dodge also could not create any genuine dispute of material fact as to Menzies' good-faith conclusion that Navarro committed misconduct. *See Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th

55

1031, 1038 (2002); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 77

(2001). While the District Court did not rule on any of Menzies' evidentiary

objections given that it correctly found the proffered evidence had no place

in the record, the shoddy character of that proffered evidence offers

additional reasons why it does not constitute any proper part of the record

on appeal and this Court should not consider it.

**B.** **Navarro Failed To Make A *Prima Facie* Discrimination Claim And Offered Nothing To Show Menzies' Legitimate Reasons For His Termination Were Pretextual**

To assert a *prima facie* case of race or national origin discrimination,

amongst other things Navarro had the burden to offer both some valid

indication that he was performing his job satisfactorily and some other

circumstance suggested a discriminatory motive. *See McDonnell Douglas*

*Corp. v. Green* 411 US 792, 802-05 (1973); *McGinest v. GTE Serv. Corp.*, 360

F.3d 1103, 1121-22 (9th Cir. 2004); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317,

379 (2000); *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 380 (2015).

Meeting this burden necessitated that Navarro show Menzies treated a

similarly situated, non-Filipino employee differently than it treated him.

*McGinest*, 360 F.3d at 1121-22.

If, and only if he satisfied this initial burden, then Menzies had a minimal burden to articulate a legitimate, nondiscriminatory reason for the challenged adverse employment action. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 658 (9th Cir. 2002). Meeting this burden did not require Menzies to prove Navarro engaged in misconduct, merely demonstrate that it had a good-faith basis for reaching the conclusions and taking the actions it did. *See Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) ("Under California law, an employer has good cause to terminate an employee if it has 'fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual'") (*quoting Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93 (1998); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (noting that courts only require an employer honestly believed its reasons for it actions, even if its reason is foolish or trivial).

Although the District Court found Navarro failed to meet his prima facie burden, even if he had, with Menzies articulating a legitimate reason for its actions, Navarro could only survive summary judgment by coming forward with proper and substantial evidence that its legitimate reasons

were a pretext for unlawful discrimination. *Aragon*, 292 F.3d at 658-59;

*Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th 798, 806-07 (1999).

Navarro could not carry this burden with only his mere speculation, and if

that is the best he could offer, his claim properly ended in summary

judgment. *Cucuzza*, 104 Cal. App. 4th at 1038 (a showing that only gives

rise to speculation or unreasonable inferences about the employer's

motivation does not create a triable issue); *Morgan*, 88 Cal. App. 4th at 77

(speculative evidence "does not rise to the level of the substantial evidence

of pretext required to avoid summary judgment").

      The District Court correctly concluded Navarro could meet his *prima

facie* burdens, but even if he had, Menzies had an honest and good faith

belief that Navarro engaged in significant misconduct – for which Navarro

made no effort to create a material dispute – which supported its decisions

to suspend him for investigation and then terminate his employment.  And

with no proper evidence of unlawful motive and only his speculation as to

why Menzies took such actions, the District Court correctly found Navarro

would have failed to carry his substantial evidence burden to show pretext.

The Court should accordingly uphold the District Court's decision to grant

summary judgment on Navarro's discrimination cause of action.

### 1. Lacking Evidence Of Disparate Treatment Of Similarly Situated Individuals, Navarro Offered No *Prima Facie* Basis To Even Question Menzies' Good-Faith Actions

The District Court correctly observed that in opposition to summary judgment, Navarro offered no proper evidence that Menzies treated a similarly situated non-Filipino employee differently. The record shows the contrary to be the truth; July Macapagal, another Filipino supervisor also signed the petition but was not terminated, contradicting the argument that Menzies treated Navarro differently because of his Filipino race and national origin. Consequently, Navarro could not even get his discrimination cause of action blending race and national origin theories off the ground absent evidence to support a theory that some circumstance suggested discriminatory motive. *See Guz*, 24 Cal. 4th at 379 (2000); *Nealy*, 234 Cal. App. 4th at 380. Indeed, his testimony made plain this point when he admitted his mere speculation by saying: "No one was telling me, but that's what I feel from what happened." [2-ER-234-39; 2-ER-240-41.]

However, even if the District Court had excused Navarro from his *prima facie* burden, Menzies had legitimate reasons for its decisions to suspend and then terminate Navarro. Menzies received information from multiple sources indicating Navarro's subordinates felt either pressured or

misled by Navarro to sign a petition against Dodge, and additional record evidence showed Fuelers testifying directly to the pressure directed at them by Navarro. [2-ER-172; 2-ER-175; 2-ER-178-79; 2-ER-186; 2-ER-221; 2-ER-227-28; 2-ER-264; 3-ER-303-04; 3-ER-305; 3-ER-239-30; 3-ER-331-32; 3-ER-333; 3-ER-335; 3-ER-337-38; 3-ER-352-53; 3-ER-395-96; 3-ER-397; 3-ER-400-01; 3-ER-402-03.] Navarro made no effort to dispute the fact that Menzies received this information, such that Menzies clearly established its honest belief that Navarro abused his authority and therefore harassed others. *Kodwavi*, 966 F. Supp. 2d at 984 ("the truth of that matter is not relevant to whether the [Employer] had a legitimate, non-discriminatory basis for terminating him. Instead, the key inquiry is whether [it] had a good faith belief in the basis for the action it took""); *Collier v. Windsor Fire Prot. Dist. Bd. of Dirs.*, No. C 08-2582 PJH, 2011 U.S. Dist. LEXIS 115649, at *33 (N.D. Cal. Oct. 6, 2011) ("[T]he court need not determine whether plaintiff actually committed the misconduct that led to his dismissal, but only whether the factual basis on which defendants concluded that a dischargeable act had been committed was reached honestly"). And as the District Court observed, Menzies' reason for Navarro's termination <u>is</u>

clearly articulated in writing in Vargas's email stating "We cannot allow our management team to harass our people in any way." [3-ER-449-54.]

### 2. Navarro's Mere Speculation Created No Material Disputes As To Menzies' Reasons For Termination

With Menzies articulating legitimate reasons for its actions (even though Navarro never satisfied his *prima facie* burden), Navarro had to show such reasons were pretext for discrimination with something beyond his mere speculation. *Aragon*, 292 F.3d at 658-59. As the District Court observed, Navarro responded to this obligation by telling a "new story" at odds with the "consistent story" he had maintained "in all his filings and all his discovery conduct." And because such action was improper, Navarro put nothing in the record to call into question the legitimacy of Menzies' stated reason for his termination. Menzies had information clearly complaining about Navarro pressuring and misleading employees to sign a petition, amounting to a harassing abuse of authority, whereas the information supplied about Dodge related to operational concerns only. These same Fuelers testifying to their harassment at the hands of Navarro explicitly denied both that Dodge engaged in any harassing conduct and that they were complaining about any such purported harassment instead

61

of purely operational issues. [2-ER-172-73; 2-ER-181-82; 2-ER-184; 2-ER-188-89.] Navarro's self-serving speculation, untethered from any proper evidence, thus did not create genuine disputes of material fact as to the reasons for Menzies' decision. The District Court thus correctly granted summary judgment to Menzies on Navarro's race and national origin cause of action, and this Court should affirm that result.

### C. Navarro Never Engaged In Protected Activity, And Even If He Had, He Offered Nothing Legitimate To Challenge Menzies' Reasons For Termination As Pretextual

Navarro's retaliation and wrongful termination claims require the same *McDonnell-Douglas* three-part burden shifting analysis employed to analyze his discrimination allegations. *Nilsson v. City of Mesa*, 503 F.3d 947, 954 (9th Cir. 2007). Accordingly, to establish retaliation (which would be against California public policy sufficient to also allege wrongful termination), Navarro must show: (1) he engaged in a protected activity; and (2) a causal link existed between the protected activity and the adverse employment action. *Id.*; *see Roby v. McKesson Corp.*, 47 Cal. 4th 686, 702 (2009). Assuming he satisfied his prima facie burden, the same follow-up analysis applies in that after Menzies articulated a legitimate, non-

retaliatory reason for its action – Navarro had to overcome the legitimacy of such reasons with substantial, non-speculative evidence of pretext.  *Id.*

### 1.    Navarro Did Not Engage In Protected Activity, But Rather Acted In Violation Of Federal Labor Law

The District Court concluded that Navarro's signing of the petition satisfied his burden to show he engaged in protected activity, but it offered no analysis in response to Menzies' argument that Navarro actually engaged in unlawful conduct – and therefore not protected activity – by signing the petition.  As noted above, Fuelers are represented by the Union and Navarro was a non-Union member of Menzies management.  [2-ER-157-60.]  Federal labor law prohibits managers in such environments from negotiating terms and conditions of employment or otherwise addressing employee grievances directly with represented employees outside the mechanisms established by collective bargaining.  *See, e.g.*, 29 U.S.C. § 159; *see also Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1485 (9th Cir. 1985) (the federal policy of exclusive representation requires the union, rather than third parties, to deal directly with employees regarding grievances).  By signing a petition and pressuring other employees to do the same, Navarro involved himself and dealt directly with unionized employees regarding

workplace grievances and terms and conditions of employment, putting Menzies in jeopardy of accusations of unfair labor practices. See *Stewart v. Leland Stanford Junior Univ.*, No. C 05-04131 JW, 2006 U.S. Dist. LEXIS 20137, at *11 (N.D. Cal. Apr. 5, 2006) (bypassing the collective bargaining representative puts an employer at risk of violating federal labor law). Indeed, that is why the Union complained about Navarro pressuring employees to sign the petition – because doing so violated its exclusive representation rights. [3-ER-303-04; 3-ER-329-30; 3-ER-331-32; 3-ER-333.]

In reality then, Navarro's involvement with the petition were actions violating federal labor policy, not protected activity regarding wage and hour complaints. The District Court found Navarro met his *prima facie* burdens on his retaliation and wrongful termination claims without ever considering this fundamental flaw in Navarro's case. On *de novo* review, this Court can and should evaluate this fundamental flaw and affirm summary judgment as an independent basis supported by the record. Specifically, the Court may affirm summary judgment on any ground supported by the record – even one different than the one relied upon by the District Court, *Campidoglio LLC*, 870 F.3d at 973 – and it should do so.

### 2. Navarro Offered Nothing To Show Pretext To Salvage His Retaliation And Wrongful Termination Claims

Whether the District Court erred in that regard, it nonetheless correctly determined Navarro could not show pretext for all the same reasons applicable to his discrimination claim. Of particular importance is the fact that Menzies did not discipline the other Filipino supervisor, July Macapagal, who also signed the petition because there was no indication that he pressured rank-and-file employees to sign it. As the District Court observed, "That distinction strongly supports the inference that the abuse of power was the ultimate reason for Navarro's termination." In the face of such facts, Navarro again could only offer his own speculation to challenge Menzies' legitimate basis for its actions. The District Court thus rightly granted summary judgment on the retaliation and wrongful termination causes of action, and this Court should affirm that result.

### D. Navarro's Intentional Infliction of Emotional Distress Claim Is Preempted And He Cannot Show Any Outrageous Conduct

It is well settled in California that the Worker's Compensation Act ("WCA") preempts claims for intentional infliction of emotional distress absent evidence of truly egregious conduct. *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 749 (1992); *Cole v. Fair Oaks Fire Prot. Dist.* 43 Cal. 3d 148, 160,

4840-5095-5514.5

(1987); *see also Mueller v. City. of L.A.*, 176 Cal. App. 4th 809, 823 (2009) ("there is no independent recovery for intentional infliction of emotional distress in the employment arena because that injury comes under the exclusive remedy of workers' compensation law"). IIED claims premised upon normal functions of an employment relationship are therefore not actionable and are preempted by the California Workers' Compensation Act. *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990); *Cole*, 43 Cal. 3d at 160; *Mueller*, 176 Cal. App. 4th at 823 California courts have routinely recognized termination decisions and investigations related to the termination occur as part of the normal functions of the employment relationship and are therefore barred by the WCA. *See, e.g.*, *Bracke v. City. of L.A.*, 60 F. App'x 120, 122 (9th Cir. 2003); *Abiola v. ESA Mgmt., LLC*, No. 13-cv-03496-JCS, 2014 U.S. Dist. LEXIS 26918, at *16 (N.D. Cal. Mar. 3, 2014); *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990).

The District Court appeared to recognize the preemptive sweep of worker's compensation applied here, but took it a step further by noting "Even if this claim were not preempted by the California Worker's Compensation Act, Navarro has not shown that his termination was wrongful, much less than [sic] it shocks the conscience." On appeal,

66

Navarro can point to nothing that remotely supports any other conclusion and would permit his claim to survive Worker's Compensation preemption. This Court should therefore affirm summary judgment on Navarro's intentional infliction of emotional distress claim.

## <u>CONCLUSION</u>

This Court can and should affirm the District Court's order granting summary judgment and decline to disturb its proper exercise of discretion in refusing to permit Navarro to oppose summary judgment with a "new story" and declining to re-open discovery. Eliminating from the record the material this Circuit's clear authority never permitted Navarro to introduce in the first place, the evidence leaves little question Navarro failed to satisfy his prima facie burdens on any of his causes of action. And even were that not the case, the District Court correctly articulated Menzies' good-faith reasons for its decision to terminate Navarro and Navarro's inability to create any dispute of material fact or introduce any legitimate evidence of pretext. The District Court reached the proper outcome for this case and entered summary judgment in favor of Menzies, and this Court should affirm that decision in all respects.

Dated:  September 28, 2021        Respectfully submitted,

FOLEY & LARDNER LLP

s/ Christopher G. Ward

Christopher G. Ward
*Attorneys for Defendant-Appellee MENZIES AVIATION, INC., DBA Menzies*

68

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-15355

I am the attorney or self-represented party.

**This brief contains** | 12,697 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

　　○ it is a joint brief submitted by separately represented parties;

　　○ a party or parties are filing a single brief in response to multiple briefs; or

　　○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [　　　　].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Christopher Ward | **Date** | Sep 28, 2021

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

Christopher G. Ward, an attorney, hereby certifies that a true and correct electronic copy of the attached **RESPONDING BRIEF OF DEFENDANT-APPELLEE MENZIES AVIATION, INC., DBA MENZIES** was served upon the following parties as set forth via e-filing service on the 28th day of September 2021:

> ARLO G. URIARTE
> LIBERATION LAW GROUP
> 2760 Mission Street
> San Francisco, California 94110
> Telephone (415) 695-1000 Facsimile (415) 695-1006
> arlo@liberationlawgroup.com

> s/ Christopher G. Ward
> Christopher Ward

1

4840-5095-5514.5