**Case No. 21-15355**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

RENALDO NAVARRO,

*Plaintiff-Appellant,*

v.

MENZIES AVIATION, INC., d/b/a Menzies,

*Defendant-Appellee.*

_____

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*Case No. 3:19-cv-08157-VC · The Honorable Vince Chhabria, District Judge*

## APPELLANT'S REPLY BRIEF

ARLO G. URIARTE
LIBERATION LAW GROUP
2760 Mission Street
San Francisco, California 94110
(415) 695-1000 Telephone
(415) 695-1006 Facsimile
arlo@liberationlawgroup.com

*Attorneys for Appellant,*
*Renaldo Navarro*



COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER



# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

FURTHER JURISDICTIONAL STATEMENT .......................................1

    District Court Jurisdiction ...............................................................1

INTRODUCTION .............................................................................2

I.    NAVARRO'S OPENING BRIEF SHOULD NOT BE
    DISMISSED FOR BEING NON-COMPLIANT. NAVARRO
    DID NOT RECEIVE ANY NOTICE OF NON-
    COMPLIANCE. THE DEFICIENCY RAISED HAVE NOW
    BEEN ADDRESSED .........................................................................3

    A.    The Cases Menzies Cites To Support Dismissal Identifies
    Substantial and Substantive Deficiencies, not Citation
    Issues Nor Formatting Issues that Menzies
    Identifies..............................................................................
    .........................................................................................6

II.    PROCEDURAL BACKGROUND & DISCOVERY
    MISCONSTRUED BY MENZIES .....................................................8

    A.    Navarro's Complaint & Initial Disclosures Provide
    Sufficient Notice to Menzies that Navarro was
    complaining about being Retaliated Against Because of
    His Race & National Origin........................................................8

III.    RESPONSIVE RELEVANT FACTS – DISCRIMINATION &
    RETALIATION – ADDRESSING MISSTATEMENTS BY
    MENZIES.....................................................................................10

    A.    Menzies Distributed Neither the Employment Handbooks
    nor the Code of Conduct to the Fuelers or the Fueling
    Supervisors.............................................................................10

    B.    Between 2017 and 2018 Dodge Repeatedly Violated
    Menzies's Policies and California Law Resulting in
    Numerous Complaints to Navarro, the Union, and
    Menzies' Management..............................................................11

1.     Menzies Received Complaints of Harassment and Abuse By Dodge.  Navarro Complained Against Him Internally .......11

ARGUMENT ...................................................................................13

I.     THE DISTRICT COURT ERRED BY EXCLUDING SOME OF THE EVIDENCE PROFERRED BY NAVARRO IN ITS OPPOSITION TO SUMMARY JUDGMENT MOTION .................13

    A.     The Evidence Submitted in Opposition to Summary Judgment Was Not New ...........................................................15

II.     THERE ARE TRIABLE ISSUES OF MATERIAL FACT – NAVARRO SHOULD BE ALLOWED TO GO TO TRIAL ON HIS CLAIMS...................................................................16

    A.     Navarro Establishes a *Prima Facie* Case of Discrimination Because Dodge is a Similarly Situated Non-Filipino Supervisor Who Was Treated More Favorably .................................................................16

    B.     Menzies' Inadequate Investigation Was a Deficient Basis To Form A Good-Faith Belief that Navarro Engaged in Harassment ............................................................18

    C.     Navarro Can Establish Substantial Evidence of Pretext...........20

    D.     Navarro Establishes a Prima Facie Case of Retaliation Because Navarro's Involvement With the Petition Is The Culmination of A Several Reports Made By Navarro And Other Filipino Fuelers Regarding Dodge's Unlawful Harassment And Constitutes Protected Activity ......................22

    E.     Navarro Established A Claim of Wrongful Termination in Violation of Public Policy Because Menzies Discharged Navarro For Challenging Unlawful Working Conditions .................................................................24

III.     IT WAS ABUSE OF DISCRETION FOR THE DISTRICT COURT NOT TO REOPEN DISCOVERY ..............................................25

CERTIFICATE OF COMPLIANCE........................................................................27

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Bagdadi v. Nazar*,
    84 F.3d 1194 (9th Cir. 1996) ........................................................5

*Castro-Ramirez v. Dependable Highway Express, Inc.*,
    2 Cal.App.5th 1028 (2016) ........................................................24

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................16

*Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*,
    626 F.3d 483 (9th Cir. 2010) .......................................................6

*De la Rosa v Scottsdale Mem'l Hospital Sys., Inc.*
    136 F. 3d 1241 (9th Cir. 1988) ...................................................7

*Flait v. North American Watch Corp.*,
    3 Cal.App.4th 467 (1992)...........................................................23

*Gupta v. Trustees of California State Univ.*,
    40 Cal.App.5th 510 (2019) .........................................................17

*Harris v. City of Santa Monica*,
    56 Cal.4th 203 (2013)................................................................21

*Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*,
    966 F. Supp. 2d 971 (N.D. Cal. 2013).......................................20

*Miller v. Dep't of Corr.*,
    36 Cal.4th 446 (2005)................................................................23

*Mixon v. Fair Employment and Housing Com.*,
    92 Cal.App.3d, 1306 (1987) ......................................................21

*Nazir v. United Airlines, Inc.*,
    178 Cal.App.4th 243 (2009) .......................................................21

*Reeves v. Safeway Stores*,
    121 Cal.App.4th 95 (2004) .........................................................21

*Stevens v Sec. Pac. Nat. Bank*,
    538 F.2d 1387 (9th Cir. 1976) .....................................................7

*Sundby v. Marquee Funding Grp., Inc.,*
    No. 19-CV-00390-GPC-AHG, 2020 WL 1866097
    (S.D. Cal. Apr. 14, 2020)...................................................................26

*Texas Partners v. Conrock Co.,*
    (9th Cir. 1982) 685 F2d 1116 ..........................................................26

*U.S. v. Doe,*
    (9th Cir. 1980) 627 F.2d 181 ...........................................................25

*United States v. Kitsap Physicians Serv.,*
    314 F.3d 995 (9th Cir.2002) ...............................................................6

*Wirtz v. Kansas Farm Bureau Services, Inc.,*
    (D.Kan.2003) 274 F.Supp.2d 1198.....................................................23

*Yanowitz v. L'Oreal USA, Inc.,*
    36 Cal.4th 1028 (2005) .....................................................................22

## COURT RULES

Ninth Circuit Rule 28-2.5 ...........................................................................3

Ninth Circuit Rule 28-2.7 ...........................................................................3

Ninth Circuit Rule 32-1(e) ..........................................................................3

Federal Rules of Appellate Procedure 28(a)(1) ..........................................7

Federal Rules of Appellate Procedure 28(a)(2) ..........................................7

Federal Rules of Appellate Procedure 28(a)(3) ..........................................7

Federal Rules of Civil Procedure 56............................................................13

Federal Rules of Civil Procedure 56(c) .......................................................15

## STATUTES

28 U.S.C. § 1332(a) ......................................................................................1

28 U.S.C. § 1332(b) ......................................................................................1

## FURTHER JURISDICTIONAL STATEMENT

### District Court Jurisdiction

Appellant Renaldo Navarro agrees with the Appellee Menzies Aviation, Inc. that the District Court Jurisdiction is under the provisions of 28 U.S.C. §§ 1332(a) and (b). The amount in controversy is more than $75,000 and Appellee's had demonstrated that there is a diversity of citizenship between then Plaintiff Navarro (California) and Defendant Menzies (Delaware & Texas).

## INTRODUCTION

No new or novel issues have arisen since the granting of summary judgment against Navarro. Time has passed. But this Court must decide whether Navarro must be allowed to proceed to trial. There are at least two version of many of the events and timelines presented by Navarro and Menzies. The District Court believes that Navarro did not alert Menzies about his claims sufficiently so that Menzies could discovery witnesses, information and documents, to defend itself. In reality Menzies knew from the beginning that its white supervisor ("Dodge") was butting heads with the Filipino supervisors, including Navarro, and Filipino fuelers during Dodge's shifts. Navarro defended them and eventually joined them in presenting a petition against Dodge.

Justice requires that Menzies pay attention and abide by its obligations. Menzies cannot make race based decision-making, nor can it retaliate when its employees are raising valid complaints. It must properly investigate. It cannot ignore the complaints of over twenty Filipino fuelers, including Filipino supervisors. We cannot ignore that Menzies' only response was to investigate then terminate the Filipino supervisor who raised the stakes (submitting the petition) hoping Menzies would finally pay attention. Menzies succeeded in perpetuating a chilling effect in the workforce – by terminating Navarro, the Filipino fuelers were silenced. We now ask this Court for assistance.

- 2 -

## I.   NAVARRO'S OPENING BRIEF SHOULD NOT BE DISMISSED FOR BEING NON-COMPLIANT.  NAVARRO DID NOT RECEIVE ANY NOTICE OF NON-COMPLIANCE.  THE DEFICIENCY RAISED HAVE NOW BEEN ADDRESSED.

Menzies argues that Navarro's opening brief should be dismissed for non-compliance with the Federal Rules of Appellate Procedure and Ninth Circuit Rules.  AAB-36.

The jurisdictional statement with regards to the District Court's jurisdiction is now included herein (above ARB-4).  Navarro agrees with the jurisdictional statements and dates provided governing the appeal as indicated by Appellee Menzies.  AAB 1-2.  As cited by Navarro in his opening brief, the date upon which Navarro filed his Notice of Appeal is February 26, 2021.  4-ER-645.

Navarro did not provide verbatim the pertinent court rules as required by Ninth Circuit Rule 28-2.7.  They are hereby included here in an addendum.

The word count as required by Rule 32-1(e) was satisfied by Navarro's Certificate of Compliance. AOB-61.

Menzies raises the absence of a direct citation indicating where each issue on appeal was raised and ruled by the District Court (AAB-38) as required by Ninth Circuit Rule 28-2.5.   Navarro provided the list of issues to be decided (AOB 4-5) and the applicable Standard of Review (30-31).   Below is a list of the issues to be decided as listed on appellant's opening brief.  A citation is provided for where the issue was raised by Navarro and another citation to where the District

- 3 -

Court ruled on the issue. A statement of the standard of review is also provided as to each issue below.

Issue #1: Did the District Court Err in Not Considering the Declarations Provided by Appellant Navarro in Opposition to Summary Judgment Motion?

The Declarations at issue can be found in 3-ER-470-501. The Order of the District Court granting Summary Judgment in 3-ER-3-7. Plaintiff provided a response to the District Court's order to provide supplemental briefing. SER-185-186; SER-204.

Issue #2: Are there genuine issues of material facts supporting Appellant Navarro's claim that he is similarly situated to supervisor Andrew Dodge? Plaintiff's Memorandum Opposing Menzies' Summary Judgment. SER-46. The Order of the District Court granting Summary Judgment in 3-ER-3-7.

Issue #3: Whether genuine issues of material fact exist regarding whether Menzies' investigation of Appellant Navarro was based on faulty assumptions, inadequate and therefore done in bad faith designed only to retaliate and terminate Navarro? Plaintiff's Memorandum Opposing Menzies' Summary Judgment. SER-46. The Order of the District Court granting Summary Judgment in 3-ER-3-7.

Issue #4: Whether Appellant has established by substantial evidence that genuine issues of material facts exist regarding the pretext offered by Menzies?

Plaintiff's Memorandum Opposing Menzies' Summary Judgment. SER-46. The Order of the District Court granting Summary Judgment in 3-ER-3-7.

Issue #5: Whether there are genuine issues of material facts from which a jury could find that Navarro's termination amounts to tortious retaliation for raising concerns against Dodge's failure to provide meal breaks at a minimum, at worst, for raising and assisting in bringing forth the fueler's discrimination concerns? Plaintiff's Memorandum Opposing Menzies' Summary Judgment. SER-46. The Order of the District Court granting Summary Judgment in 3-ER-3-7.

Issue #6: Whether the events that led to Navarro's termination "shocks the conscience", wrongful and therefore not barred by the Workers Compensation exclusive remedy rule? Plaintiff's Memorandum Opposing Menzies' Summary Judgment. SER-46. The Order of the District Court granting Summary Judgment in 3-ER-3-7.

As for issues 1-6 above the proper standard of review is *de novo* as these are all part of arguments found in Menzies' summary judgment motion, Navarro's opposition and/or the District Court's grant of summary judgment in favor of Menzies. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

Issue #7: If the District Court properly found new facts and allegations, was it abuse of discretion for the District Court not to either reopen discovery or deny

- 5 -

summary judgment without prejudice and give Menzies the option to request to reopen discovery or proceed to trial.

The Order of the District Court granting Summary Judgment in 3-ER-3-7. The Court ordered the parties to supplement their briefing on the summary judgment motion. SER-185-186. Navarro provided a response to the District Court's order to provide supplemental briefing. SER-204. As the opening brief stated, the standard for review applicable to a district court's order denying additional discovery is reviewed for abuse of discretion. See *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1000 (9th Cir.2002). AOB-30-31.

### A. The Cases Menzies Cites To Support Dismissal Identifies Substantial and Substantive Deficiencies, not Citation Issues Nor Formatting Issues that Menzies Identifies[1]

In *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu,* 626 F.3d 483 (9th Cir. 2010) the Court there made clear that the opening brief "made no pretext argument, much less at each required juncture. *Id. at 485.* It was not found within the opening brief, nor at oral argument. *Id. at 488.* The opening brief was not dismissed for any failure to follow technical requirements found in Rule 28, instead the Court clearly raised the fact that Appellant there failed to raise the issue presented: "Judges sometimes overlook issues fairly presented by the parties, but that's not what

---

[1] Appellant did not receive any deficiency notice from the Clerk of the Court.

happened here. [Appellant] simply failed to raise this issue the first time around, and it is not entitled to "a second bite at the appellate apple." *Id. citations omitted.*

In *De la Rosa v Scottsdale Mem'l Hospital Sys., Inc.* 136 F. 3d 1241 (9th Cir. 1988) the Court there vacated a sanctions order concerning the Appellant's attorney's failure to file compliant excerpts of record. The Court there did not dismiss the appeal based on Rule 28.

In *Stevens v Sec. Pac. Nat. Bank, 538 F.2d 1387* (9th Cir. 1976) the Court dismissed the appeal on several substantive grounds. In its final paragraph it added: "Moreover, the appellant has filed briefs in this court which fail to comply with Fed.R.App.P. 28(a)(1), (2), & (3). This ground alone would justify dismissal of the appeal." *Id. at 1389.* The Court there did not discuss the grounds but the citations point to a failure to file a brief with a disclosure statement, a table of contents and table of authorities. Navarro's opening brief includes all of these components.

- 7 -

## II.   PROCEDURAL BACKGROUND & DISCOVERY MISCONSTRUED BY MENZIES

The complaint in this matter was filed in the San Francisco County Superior Court on October 23, 2019.  The filing was five days after the National Mediation Board denied the NLRB jurisdiction.  NMB is a forum between the Union and Management.[2]   So the insinuation that somehow Navarro delayed his civil filing is not true.

### A.   Navarro's Complaint & Initial Disclosures Provide Sufficient Notice to Menzies that Navarro was complaining about being Retaliated Against Because of His Race & National Origin

Navarro's complaint contains four causes of action: (1) Race and National Origin Discrimination; (2) Retaliation; (3) Wrongful Termination Against Public Policy; and (4) Intentional Infliction of Emotional Distress.  See appellant's brief for a detailed discussion in this topic.  AOB 20-26.

Navarro states in his Complaint that he received a lot of complaints against Dodge's unprofessional behavior.  Navarro specifically provides that he complained to his supervisors, including Renil Lai and Qually, but that he was ignored.  Complaint ¶¶ 6, 13-21, 4-ER-624-625.  The facts section continues to tell us of a

---

[2] The National Mediation Board (NMB), established by the 1934 amendments to the Railway Labor Act of 1926, is an independent U.S. federal government agency that facilitates labor-management relations within the nation's railroad and airline industries. https://nmb.gov/NMB_Application/index.php/mission-organization/

petition that by August 14, 2018, the fuelers asked Navarro to sign. Only Navarro was suspended for signing the petition. Complaint ¶¶ 22-27, 4-ER-626-627.

Navarro alleges that Menzies displayed favoritism for Dodge over Filipino fueling supervisors. Complaint ¶ 28, 4-ER-627. The Complaint further states that Navarro complained several times about favoritism to Defendant, but Menzies never instituted "corrective action". *Id*. at ¶ 30. Navarro unequivocally states that he was suspended, retaliated against, and terminated by Menzies because of his Filipino race and Philippines is his national origin. *Id.* His **Right to Sue Notice**, attached to the Complaint, similarly states that Menzies took adverse action against Navarro and that the company discriminated and retaliated against him. Menzies' favoritism based on race and national origin is also described in the Right to Sue Notice. 4-ER-635-638.

The cause of action includes FEHA discrimination, for race and national origin, stating that Menzies failed to take reasonable, immediate, and appropriate corrective action to stop discrimination despite their actual and constructive knowledge of the discriminatory acts. Complaint ¶36. In the FEHA retaliation cause of action Navarro alleges that Menzies was aware of the discrimination because he complained. Complaint ¶¶44-46, 4-ER-629.

Initial Disclosures were exchanged by the Parties in March 2020. 2-ER-18. Therein, Navarro provided Menzies witness information, particularly the contact

information for the witnesses who provided declarations in question here, Jezen Canlas and Rafael Vazquez.

Bate stamp 0009, is a letter authored by Rafael Vazquez dated November 18, 2018. 2-ER-21. This letter states that he spoke to Raul Vargas on three separate occasions. Vargas is Menzies' Director of Aviation Fueling and the person who ultimately decided to terminate Navarro. In the aforementioned letter, Vasquez writes:

> "I have spoken to…Raul Vargas on three separate occasions regarding Andrew Dodge, who continuous to abuse his authority and at times harass Fuelers under his charge."

## III. RESPONSIVE RELEVANT FACTS – DISCRIMINATION & RETALIATION – ADDRESSING MISSTATEMENTS BY MENZIES

### A. Menzies Distributed Neither the Employment Handbooks nor the Code of Conduct to the Fuelers or the Fueling Supervisors.

Menzies again allege that the Code of Conduct and the Employment Handbook should have alerted Navarro of prohibited intimidation, abuse, and harassment, which justifies his termination. ARB- 2; 3-ER-413-433.

However, at the time Menzies took over ASIG operations at San Francisco International Airport ("SFO") in February 2017, Menzies revised its employment handbook and **did not provide the Fuelers and Fueling Supervisors any copies and proper training.** 3-ER-298, 481, 487, 491, 473. Menzies production of documents to Navarro did not contain Navarro's signature acknowledging his

receipt. In fact, all acknowledgment forms produced by Menzies' in Navarro's personnel file have a blank signature line. 3-ER-469; also see AOB-7-8.

**B.    Between 2017 and 2018 Dodge Repeatedly Violated Menzies's Policies and California Law Resulting in Numerous Complaints to Navarro, the Union, and Menzies' Management.**

Navarro, together with the Union Steward, and the Fuelers repeatedly communicated their complaints about Dodge to Menzies' management. 3-ER-472. Navarro testified that around a year before the petition, he reported the Fuelers' complaints regarding Dodge to Menzies' management, including Renil Lal, John Qually, Nicco Bernadino, and Tracy Aguilera. 2-ER-215-216.

**1.    Menzies Received Complaints of Harassment and Abuse By Dodge.  Navarro Complained Against Him Internally.**

Navarro alleges in the Complaint that he complained to Menzies about how they displayed favoritism for Dodge over Filipino fueling supervisors. Complaint ¶ 28, 4-ER-627. The Complaint further states that Navarro complained several times about favoritism to Defendant, but Menzies never instituted "corrective action". *Id*. at ¶ 30.

Employees and Navarro testified that Dodge engaged in abusive, hostile, and threatening conduct toward the Fuelers. In addition to Navarro's complaints, the Fuelers made multiple complaints to the Union regarding Dodge. 3-ER-478. Shop Steward Rafael Vasquez declared between 2017 and 2018, the Fuelers made

- 11 -

multiple complaints to the Union regarding an abusive supervisor named Andrew Dodge. *Id.* ¶ 3.

Fuelers complained about Dodge, including discrimination. 3-ER-478; 3-ER-485; 3-ER-472; 3-ER-497-499, 3-ER-472-473. Further, Vasquez confirmed in a written letter dated November 18, 2018, that "I have spoken to the Menzies' Aviation Fueling Director Raul Vargas on three separate occasions regarding Andrew Dodge, who continuously abuse his authority and at times harass Fuelers under his charge." 3-ER-459. Aguilera testified in 2020 that Dodge never received a reprimand of any kind. 2-ER-110. This is interesting in that if they received the Vazquez communication, about harassment, yet Dodge was never investigated.

Navarro escalated complaints that the Fuelers brought to him regarding Dodge's harassment and informed Renil Lal, John Qually, Nicco Bernardino, Tracy Aguilera. 2-ER-215-217. 3-ER-473.

Mr. Vargas indicated that reports of harassment are important—however conveniently ignored when it came to Dodge. 3-ER-340. Despite the petition from the fuelers, the underlying concerns were never investigated. 3-ER-340-344. HR department had no issues with Dodge despite the petition. 2-ER-106. Dodge says he never got investigated on the petitions. 3-ER-397.

It is clear from the evidence at this point that Menzies had already decided to focus its attention on Navarro and noticeably ignored the underlying complaints

found in the petition. Vargas testified that after he received the petition and reviewed the contents, he talked to Aguilera "to have the investigation..." into "how the petition was put together." 3-ER-561. 3-ER-473. Although Vargas had in his possession the signed petition of the twenty-six Fuelers complaining of Dodge's unprofessional conduct and denial of Fuelers meal and rest periods, he testified that he did not instruct Aguilera to investigate anything further than "how the petition was created." 3-ER-561, 562.

## ARGUMENT

## I. THE DISTRICT COURT ERRED BY EXCLUDING SOME OF THE EVIDENCE PROFERRED BY NAVARRO IN ITS OPPOSITION TO SUMMARY JUDGMENT MOTION

Navarro's position is that it provided declarations precisely under Fed. Rule of Civ. Proc. 56, these are pieces of evidence, affidavits, he is burdened to produce to overcome Summary Judgment. Allegations the District Court indicated should be in the Complaint are found in the complaint. The District Court chose a very strict/narrow reading of the facts and allegations.

Complaint ¶ 28: alleges favoritism for Dodge over Filipino fueling supervisors. 4-ER-627.

Complaint ¶ 30: Navarro complained several times but Menzies never instituted corrective action; Navarro unequivocally states that he was suspended, retaliated against, and terminated by Menzies because of his Filipino race and

- 13 -

Philippines national origin. His Right to Sue Notice, attached to the Complaint, similarly states that Menzies took adverse action against Navarro and that the company discriminated and retaliated against him. Menzies' favoritism based on race and national origin is also described in the Right to Sue Notice: Respondent displayed favoritism for a Caucasian supervisor over the Filipino supervisors like the complainant. Respondent suspended, retaliated, and terminated complainant because of his race and national origin. 4-ER-624. Also see AOB 35-40.

Menzies chose not to explore witnesses and allegations provided, but Navarro should not be prevented from going to trial because he can only provide declarations for want of Menzies deposing his witnesses.[3] To say that Menzies was not aware that there were allegations that it ignored the fuelers' complaint cannot be true as the complaint makes a point in saying that their two petitions were ignored.

The District Court believed that Navarro did not allege that Menzies sided with Dodge when it fired Navarro, but he said as much during his deposition. 2-ER-52-69. His complaint states that Menzies favored Dodge over him many times because of his race and national origin. Complaint ¶¶ 22-30, 4-ER-635-638. The depositions of Menzies witnesses centered on the idea that it was odd and unfair that

---

[3] It is not logical for Menzies to claim it had no clue that Navarro was complaining about harassment and discrimination during Navarro's employment. John Qually, Navarro's supervisor, in his own statement dated Aug. 23, 2018, indicated that supposedly Navarro threatened to file a suit for bias and harassment. 3-ER-442.

it was Navarro being fired when the two petitions complained of Dodge, and nothing was done to Dodge, no investigations, despite numerous complaints and two petitions.

### A. The Evidence Submitted in Opposition to Summary Judgment Was Not New

Navarro was not attempting to allege a new cause of action, nor a civil conspiracy, instead it was only providing evidence to carry its burden under the *McDonnell Douglas* burden shifting scheme. Here, Navarro did not raise any new cause of action in his opposition to the Summary Judgment. Instead, the District Court balked at evidence being presented to support his claims asserted in the complaint. 1-ER-3. But isn't this exactly what Fed. Rule of Civ. Proc. 56 contemplates. That the non-moving party provide declarations that established genuine disputes of materials facts.[4]

---

[4] We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## II.  THERE ARE TRIABLE ISSUES OF MATERIAL FACT – NAVARRO SHOULD BE ALLOWED TO GO TO TRIAL ON HIS CLAIMS

### A.  Navarro Establishes a *Prima Facie* Case of Discrimination Because Dodge is a Similarly Situated Non-Filipino Supervisor Who Was Treated More Favorably.

Navarro belongs to a protected class (Filipino national origin) and he was terminated, and he can establish that he was performing his job satisfactorily and that others outside his protected class were treated more favorably. *St. Mary's Honor Center,* 509 U.S. 506, 113 S.Ct. 2742.  Both Navarro and Dodge are fueling supervisors.  They both supervise fuelers, many of whom are Filipino fuelers. Navarro was terminated for "code of conduct" violation. 2-ER-137.  According to Aguilera, Navarro was terminated for unprofessional behavior by a supervisor. 3-ER-555.  The petitions submitted against Dodge complain about "unprofessional behavior" by Dodge.  3-ER-437.  Yet no investigation was conducted against Dodge. According to the complaint and his deposition, Navarro complained several times against Dodge but to no avail.  Navarro testifies in his deposition that when Filipino fuelers and supervisors make mistakes, they are terminated, but despite numerous complaints against Dodge, there were no consequences, much less an investigation. The Complaint further states that Navarro complained several times about favoritism to Defendant, but Menzies never instituted "corrective action". Complaint ¶ 30, 4-ER-627.

- 16 -

Navarro testified that he believes he was subjected to discrimination because Menzies took no action against Dodge, a White supervisor, but fired Navarro instead for reporting valid problems to management concerning Dodge's misconduct. 2-ER-237. Such comparator evidence is probative of pretext. Evidence that an employer treated "similarly situated employees outside the Plaintiff's protected class more favorably is probative of the employer's discriminatory or retaliatory intent. Guz, supra, 24 Cal.4th at 366, internal quotations removed; *McDonnell Douglas Corp*., supra, 411 U.S. at 804 (holding that evidence that white employees who engaged in comparable conduct were retained or rehired while the plaintiff, who is black, was laid off); and see *Gupta v. Trustees of California State Univ*., 40 Cal.App.5th 510, 519 (2019).

Menzies' position is that it terminated Navarro because they concluded that Navarro solicited signatures and intimidated employees. AAB-19. However, as Vargas testified, "One person, just one person complaining about supervisor harassment is enough to take action." 2-ER119-120. While Menzies claims that it only received complaints regarding Dodge's harassment after Navarro was terminated, this assertion is contradicted by testimony of several Fuelers who report complaining to management on numerous occasions for over a year prior to Navarro's termination regarding Dodge's abusive and harassing conduct toward Fuelers. Navarro's complaint indicates that he complained several times to

management about Dodge. Complaint ¶¶ 13-21; 30, 4-ER625-627. Likewise, Navarro testified that he has observed discriminatory terminations of Asian coworkers, whereas White employees, including Dodge, faced no repercussions for violating company policies. 2-ER-237. 3-ER-472, 3-ER-539. Other Fuelers also testified that Menzies perpetuated a harassing and discriminatory treatment toward Filipino employees by Dodge, Aguilera, and Menzies management. 3-ER-478; 3-ER-485; 3-ER-472-473, 3-ER-499. The petition themselves allege Dodge engaging in unprofessional behavior. At the very least, a genuine, material dispute of fact exists as to whether Menzies' received complaints of discrimination, harassment against Dodge. According to Aguilera any type of harassment demands an investigation, but we know that Dodge was not investigated for such. 2-ER-110-112; 3-ER-539.

## B. Menzies' Inadequate Investigation Was a Deficient Basis To Form A Good-Faith Belief that Navarro Engaged in Harassment

Navarro advances specific evidence—beyond his own denials— demonstrating that Vargas and Aguilera's basis for believing that Navarro harassed Fuelers was based on a pre-determined investigation and not in good-faith. AOB-15; 44.

In reality, Menzies only investigated Dodge's statement concerning Navarro and never investigated the petition's underlying reports that Dodge was acting unprofessionally and denying meal breaks to Fuelers. Further, Menzies claims that

its investigation was also prompted by a Union complaint is unsubstantiated and subject to genuine dispute. 3-ER-479.

Despite Menzies attempt to obfuscate the timeline, the record clearly shows that once Dodge verbally reported concerns regarding Navarro, Menzies acted promptly to initiate an investigation by first asking Dodge to write a statement summarizing his concerns. 3-ER-435. Consistently, Safety and Security Manager Kevin Blumberg was thereafter tasked with investigating. 3-ER-479, 3-ER-550-551.

Blumberg did not attempt to talk with the Union regarding the petition. 3-ER-450. His email summarizing the evidence collected and findings of his investigation confirms that he only relied on the statements of Fuelers Isaiah Banks and Charles Lawrence stating Navarro made them ***uncomfortable*** by signing the petition, on his conversation with Navarro, and on Dodges statements and texts. 3-ER-551, 553, 555. His email findings make no mention of findings with respect to the petition's underlying complaints concerning Dodge. *Id.* In relation to this, Aguilera and Vargas testified that no other written conclusions regarding the investigation exist concerning the underlying reports about Dodge. 3-ER-554-555.

Menzies chose not to interview numerous individuals who deny that Navarro asked or pressured fuelers to sign. Accordingly, the petition was signed by twenty-

four Fuelers—seventeen of whom are Filipino while two are Filipino supervisors—

and yet, Menzies did not interview any of those signatories. 3-ER-473; 3-ER-450.

For Menzies to establish that its decision makers held a good faith belief that

Navarro engaged in terminable conduct, the basis for that conclusion must be honest

and impartial. The case *Kodwavi v. Intercontinental Hotels Grp. Res., Inc*., 966 F.

Supp. 2d 971, 984 (N.D. Cal. 2013) held that the employer demonstrated a good-

faith, honest basis for terminating plaintiff based on "a thorough investigation,

speaking to ***scores of witnesses***, and reviewing Plaintiff's entire personnel file."

Here, Menzies' investigation ignored key witnesses, presumably because they would

support Navarro, and came to the conclusory finding that Navarro's conduct

amounted to harassment. Evidently, Menzies' investigation does not satisfy the

good-faith standard articulated by the court in *Kodwavi.* Therefore, Menzies fails to

establish that it held a legitimate, non-discriminatory reason to terminate Navarro.

## C. Navarro Can Establish Substantial Evidence of Pretext.

Even assuming that Menzies believed that Navarro asked employees to sign

the petition—and if that further formed a good-faith belief that Navarro violated

Menzies' Code of Conduct—Navarro can establish substantial evidence that Menzies' purported reason is pre-text to mask a discriminatory motive. [5]

Finally, Menzies' investigation into Navarro's conduct was conclusory and did not interview additional Fuelers or the Union Representative responsible for starting the petition. When an employer's investigation of an employee is used to justify the employee's termination and the employer's failure to interview witnesses for potentially exculpatory information, it is evidence that the termination was a pretext. *Reeves v. Safeway Stores*, 121 Cal.App.4th 95, 120–121; *Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243, 280 (2009).

---

[5] Even assuming that Menzies believed that Plaintiff improperly pressured employees to sign the petition was a factor in their decision to terminate his employment, Plaintiff can still prevail upon showing that discrimination was the ***substantial motivating factor.*** Under FEHA, Plaintiff is only required to show that discrimination was a ***substantial motivating factor*** behind the adverse action to affix employer liability, even if other factors would have led the employer to make the same decision at the same time. See *Harris v. City of Santa Monica,* 56 Cal.4th 203, 229 (2013). A complainant need not prove that discriminatory animus was the sole motivation behind a challenged action. *Mixon v. Fair Employment and Housing Com*., 92 Cal.App.3d, 1306, 1319 (1987). *Id.* In so doing, California courts recognize that discrimination need not be a "but for" cause in the employment decision to find liability. See *Harris, supra,* 56 Cal.4th at 232.

**D.    Navarro Establishes a Prima Facie Case of Retaliation Because Navarro's Involvement With the Petition Is The Culmination of A Several Reports Made By Navarro And Other Filipino Fuelers Regarding Dodge's Unlawful Harassment And Constitutes Protected Activity.**

Menzies' attempts to skirt liability by claiming that the complaints they received regarding Dodge concerned only operational issues and did not contain reports of harassment or abuse. Menzies's narrow focus on the words of the petition itself, concerning Dodge's unprofessional behavior and denying Fuelers meal and rest breaks, conveniently ignores the repeated reports by Navarro and the Union prior to the petition complaining of Dodge's misconduct and harassment of Filipino Fuelers to Menzies management.[6] This claim is unsupported by the evidentiary record and constitutes a fact subject to genuine dispute. Indeed, the petition was the culmination of these efforts that went largely ignored by Menzies. 3-ER-485. Such narrow focus of protected activity is not supported by California law. Rather, to prevail in establishing protected activity under FEHA, "an employee is not required to use legal terms or buzzwords when opposing discrimination. The court will find opposing activity if the employee's comments, ***when read in their totality***, oppose discrimination." *Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1047 (2005)

---

[6]  Interesting that Aguilera attributes Navarro's actions as "unprofessional behavior" leading to his termination.  While Vargas connotes "harassment" in describing actions by Navarro making fuelers sign the petition against Dodge. Then finally, the termination notice states "code of conduct" as the reason for Navarro's termination.

*quoting Wirtz v. Kansas Farm Bureau Services, Inc*. (D.Kan.2003) 274 F.Supp.2d 1198, 1212, fn. Omitted. This enactment aids enforcement of the FEHA and promotes communication and informal dispute resolution in the workplace. *Miller v. Dep't of Corr.*, 36 Cal.4th 446, 472 (2005) (quoting *Flait v. North American Watch Corp.*, 3 Cal.App.4th 467, 476–477 (1992)).

Navarro testified that he reported to Renil Lal and John Qually about the way Dodge treated Filipino fuelers. 3-ER-473. Other Fuelers also testified that Navarro's involvement was one of many reports to management regarding Dodge's mistreatment of Filipino Fuelers. Thus, Menzies' claim that the only complaint of harassment regarding Dodge was a letter received from Union Steward Rafael Vasquez after Navarro's termination is erroneous and is even contradicted by the content of Vasquez's letter itself. The November 18, 2018 letter states that Vasquez reported Dodge's harassment and abuse to Raul Vargas **on three prior occasions.** This is echoed in the testimony of other Fuelers. Likewise, Union members testified that they attended regular meetings with management which they reported Dodge's harassing and abusive conduct toward Filipino Fuelers. 3-ER-479; 3-ER-486.

Here, the evidentiary record, of which Navarro was an integral part, demonstrates **a long history of complaints** to management regarding Dodge. In addition, Employees' belief that they are complaining about prohibited conduct "may be inferred from the ***nature and content of their repeated complaints.***" Thus,

to put it simply, the issue of a Navarro's subjective, good faith belief involves questions of credibility and ordinarily cannot be resolved on summary judgment." *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal.App.5th 1028, 1047 (2016) (quotations omitted).

### E. Navarro Established A Claim of Wrongful Termination in Violation of Public Policy Because Menzies Discharged Navarro For Challenging Unlawful Working Conditions.

Here, for over a year, Navarro was attempting to put into focus the illegal activities that Andrew Dodge engaged in.  The straw that broke Menzies' back, and therefore schemed to terminate him, was his support of the Fuelers in the efforts to enforce meal break rights and to put an end to the "unprofessional behavior" of Dodge.  When the petition put the actions of Andrew Dodge towards the fuelers into focus, which upon investigation included harassment, abuse of power and discrimination, instead of performing their duties under the law, Menzies schemed against Navarro to shield Dodge, pushed the fuelers back and eventually made the problem go away.[7]

---

[7] The District Court indicated that "against the weight of the evidence" no reasonable jury could find that the substance of the petition was the real reason for his termination.  This is another way of admitting that there are genuine issues of material fact.

### III. IT WAS ABUSE OF DISCRETION FOR THE DISTRICT COURT NOT TO REOPEN DISCOVERY.

Pursuant to the District Court's order to submit supplemental briefs (SER-185) Plaintiff submitted its brief indicating it was proper for the Court to reopen additional discovery. See footnote 1: "This matter is now one year old – yet the parties have had to engage in discovery during the pandemic. Given that no trial date is currently set and it would be amiss to say that the pandemic has not had an effect in this litigation, it would be reasonable to adjust the pretrial order given this new reality." SER-205. That it was improper to exclude the evidence without reopening discovery. SER-211. While it was also Plaintiff's position that the only reason that additional discovery is needed because it was Menzies litigation strategy that led to their supposed "ignorance" of the facts, and in such circumstances, reopening discovery is not required, that Menzies should live with such circumstances. SER-212.

In responding to whether the Court had the power to reopen discovery, Navarro indicated that the Court's "power to administer the court calendar and to control the time and conduct of trial is broad. Scheduling of discovery, motions, and trial must be left to the discretion of trial judges. A trial judge's discretion must be guided by fairness and reason." *U.S. v. Doe (9th Cir. 1980)* 627 F.2d 181, 183–184. SER-213-214. Navarro also argued that reopening discovery would have no prejudice to Menzies. SER-214.

- 25 -

The cited reasons for not reopening discovery does not convince. See AOB-57-60. Cited delay in litigation is not prejudicial, the witnesses are available and have produced declarations. Reopening discovery here, especially since there is no trial date scheduled, and because there has been COVID delays, is the appropriate measure. The summary judgment ruling was premature. *Texas Partners v. Conrock Co*. (9th Cir. 1982) 685 F2d 1116. In a more recent District Court case, *Sundby v. Marquee Funding Grp., Inc*., No. 19-CV-00390-GPC-AHG, 2020 WL 1866097, at *3 (S.D. Cal. Apr. 14, 2020), the District Court there indicated that "delaying the hearing and briefing as to Plaintiff's motion serves several important objectives. First, insofar as the depositions may yield information material to summary judgment in this matter, the Court cannot fairly adjudicate Plaintiff's motion without permitting for additional time to conduct, review, and incorporate the depositions.

Date: October 20, 2021                 Liberation Law Group, PC


                              /s/ Arlo Uriarte
                              Arlo Uriarte
                              *Attorneys for Appellant,*
                              *Renaldo Navarro*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  21-15355

I am the attorney or self-represented party.

**This brief contains 5,365 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[xx] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
   Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select
   only one)*:

   [ ] it is a joint brief submitted by separately represented parties;

   [ ] a party or parties are filing a single brief in response to multiple briefs; or

   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**  /s/ Arlo Uriarte                    **Date**  October 20, 2021

# ADDENDUM

# FEDERAL RULES OF CIVIL PROCEDURE

Rule 8. General Rules of Pleading

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

(b) DEFENSES; ADMISSIONS AND DENIALS.

(1) *In General.* In responding to a pleading, a party must:

(A) state in short and plain terms its defenses to each claim asserted against it; and

(B) admit or deny the allegations asserted against it by an opposing party.

(2) *Denials—Responding to the Substance.* A denial must fairly respond to the substance of the allegation.

(3) *General and Specific Denials.* A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

(4) *Denying Part of an Allegation.* A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

(5) *Lacking Knowledge or Information.* A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

(6) *Effect of Failing to Deny.* An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

(c) AFFIRMATIVE DEFENSES.

    (1) *In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

- accord and satisfaction;

- arbitration and award;

- assumption of risk;

- contributory negligence;

- duress;

- estoppel;

- failure of consideration;

- fraud;

- illegality;

- injury by fellow servant;

- laches;

- license;

- payment;

- release;

- res judicata;

- statute of frauds;

- statute of limitations; and

- waiver.

    (2) *Mistaken Designation.* If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

(d) PLEADING TO BE CONCISE AND DIRECT; ALTERNATIVE STATEMENTS; INCONSISTENCY.

    (1) *In General.* Each allegation must be simple, concise, and direct. No technical form is required.

ADD-2

(2) *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

(e) CONSTRUING PLEADINGS. Pleadings must be construed so as to do justice.

Rule 15. Amended and Supplemental Pleadings

(a) AMENDMENTS BEFORE TRIAL.

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

(3) *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

(b) AMENDMENTS DURING AND AFTER TRIAL.

(1) *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

(2) *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

(c) RELATION BACK OF AMENDMENTS.

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

ADD-4

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

(2) *Notice to the United States.* When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

(d) SUPPLEMENTAL PLEADINGS. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

   (1) give an opportunity to properly support or address the fact;

   (2) consider the fact undisputed for purposes of the motion;

   (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

   (4) issue any other appropriate order.

(f) JUDGMENT INDEPENDENT OF THE MOTION. After giving notice and a reasonable time to respond, the court may:

   (1) grant summary judgment for a nonmovant;

   (2) grant the motion on grounds not raised by a party;or

   (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) FAILING TO GRANT ALL THE REQUESTED RELIEF. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

(h) AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1937

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. *Report of the Commission on the Administration of Justice in New York State* (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) §14260) and Illinois (Ill.Rev.Stat. (1937) ch. 110, §§181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment* (1929), 38 Yale L.J. 423.

*Note to Subdivision (d)*. See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the *Note* thereto.

*Note to Subdivisions (e) and (f)*. These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

## FEDERAL RULES OF APPELLATE PROCEDURE 4(A)(1)

Rule 4. Appeal as of Right—When Taken

(a) Appeal in a Civil Case.

    (1) Time for Filing a Notice of Appeal.

        (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

        (B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

        (i) the United States;

        (ii) a United States agency;

        (iii) a United States officer or employee sued in an official capacity; or

        (iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

        (C) An appeal from an order granting or denying an application for a writ of error coram nobis is an appeal in a civil case for purposes of Rule 4(a).

Rule 28. Briefs

(a) Appellant's Brief. The appellant's brief must contain, under appropriate headings and in the order indicated:

(1) a disclosure statement if required by Rule 26.1;

(2) a table of contents, with page references;

(3) a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the brief where they are cited;

(4) a jurisdictional statement, including:

> (A) the basis for the district court's or agency's subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

> (B) the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

> (C) the filing dates establishing the timeliness of the appeal or petition for review; and

> (D) an assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis;

(5) a statement of the issues presented for review;

(6) a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (see Rule 28(e));

(7) a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

(8) the argument, which must contain:

(A) appellant's contentions and the reasons for them, with citations to the

ADD-10

authorities and parts of the record on which the appellant relies; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(9) a short conclusion stating the precise relief sought; and

(10) the certificate of compliance, if required by Rule 32(g)(1).

(b) Appellee's Brief. The appellee's brief must conform to the requirements of Rule 28(a)(1)–(8) and (10), except that none of the following need appear unless the appellee is dissatisfied with the appellant's statement:

(1) the jurisdictional statement;

(2) the statement of the issues;

(3) the statement of the case; and

(4) the statement of the standard of review.

(c) Reply Brief. The appellant may file a brief in reply to the appellee's brief. Unless the court permits, no further briefs may be filed. A reply brief must contain a table of contents, with page references, and a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the reply brief where they are cited.

## FEDERAL RULE OF APPELLATE PROCEDURE – NINTH CIRCUIT

FRAP 28. BRIEFS

(a) Appellant's Brief. The appellant's brief must contain, under appropriate headings and in the order indicated:

    (1) a disclosure statement if required by Rule 26.1;

    (2) a table of contents, with page references;

    (3) a table of authorities—cases (alphabetically arranged), statutes, and other

authorities—with references to the pages of the brief where they are cited;

    (4) a jurisdictional statement, including:

        (A) the basis for the district court's or agency's subject-matter jurisdiction,

with citations to applicable statutory provisions and stating relevant facts

establishing jurisdiction;

        (B) the basis for the court of appeals' jurisdiction, with citations to applicable

statutory provisions and stating relevant facts establishing jurisdiction;

        (C) the filing dates establishing the timeliness of the appeal or petition for

review; and

        (D) an assertion that the appeal is from a final order or judgment that disposes

of all parties' claims, or information establishing the court of appeals'

jurisdiction on some other basis;

ADD-12

Ninth Circuit Rule 28-2.2

28-2.2. Statement of Jurisdiction

In a statement preceding the statement of the case in its initial brief, each party shall demonstrate

the jurisdiction of the district court or agency and of this Court by stating, in the following order:

(a) The statutory basis of subject matter jurisdiction of the district court or agency;

(b) The basis for claiming that the judgment or order appealed from is final or otherwise

appealable, and the statutory basis of jurisdiction of this Court. (Rev. 12/1/09)

(c) The date of entry of the judgment or order appealed from; the date of filing of the notice

of appeal or petition for review; and the statute or rule under which it is claimed the

appeal is timely.

If the appellee agrees with appellant's statement of one or more of the foregoing matters, it will

be sufficient for the appellee to state such agreement under an appropriate heading.

ADD-13

Ninth Circuit Rule 28-2.5  Reviewability and Standard of Review

As to each issue, appellant shall state where in the record on appeal the issue was raised and ruled on and identify the applicable standard of review.

In addition, if a ruling complained of on appeal is one to which a party must have objected at trial to preserve a right of review, e.g., a failure to admit or to exclude evidence or the giving of or refusal to give a jury instruction, the party shall state where in the record on appeal the objection and ruling are set forth. (Rev. 12/1/09)

**FEDERAL RULES OF EVIDENCE 803** Exceptions to the Rule Against Hearsay

Rule 803. Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


 /s/ Kirstin E. Largent